**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| **CHARLES & COLVARD, LTD.** | ) | **Case No. 26-00969-5-DMW** |
| **Debtor.** | ) | **Chapter 11** |

**DECLARATION OF DISINTERESTEDNESS OF GINA CHAPIN IS SUPPORT OF THE ORDINARY COURSE RETENTION OF DELOITTE TAX LLP AS TAX SERVICES PROVIDER FOR THE DEBTORS**

I, Gina Chapin, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct:

1. I am a tax Managing Director of the firm of Deloitte Tax LLP ("**Deloitte Tax**"), which has an office at 1015 2nd Avenue, Seattle, WA 98104. I am duly authorized to make and submit this declaration (the "**Declaration**") on behalf of Deloitte Tax pursuant to the *Order Approving Motion of the Debtor for an Order Authorizing Employment and Compensation of Ordinary Course Professionals* [Docket No. 61] (the "**OCP Order**"). Pursuant to the terms of the OCP Order, the Debtor seeks to retain Deloitte Tax to provide the services set forth herein.

2. The Debtor seeks to retain and employ Deloitte Tax pursuant to the terms and conditions set forth in that certain engagement letter between Deloitte Tax and the Debtor, dated September 10, 2025, to provide certain tax return preparation services for 2024 federal and state income tax returns (the "**Engagement Agreement**"). A copy of the Engagement Agreement is attached hereto as **<u>Exhibit 1</u>**.

3. The statements set forth in this Declaration are based upon my personal knowledge, upon information and belief, and/or client matter records kept in the ordinary course of business that were reviewed by me or other personnel of Deloitte Tax or its affiliates.

**Deloitte Tax's Qualifications**

4. Deloitte Tax is a professional services firm with offices across the United States. Deloitte Tax has significant experience in providing the tax services described herein in large and complex chapter 11 cases on behalf of debtors throughout the United States. Such experience renders Deloitte Tax well qualified and able to provide services to the Debtor during the pendency of this chapter 11 case (the "**Chapter 11 Case**") in a cost effective, efficient, and timely manner. Deloitte Tax's services fulfill an important need and are not provided by any of the Debtor's other professionals.

5. In addition, since approximately 2009, Deloitte Tax has provided certain professional services to the Debtor. In providing such prepetition professional services to the Debtor, Deloitte Tax is familiar with the Debtor and its businesses, including the Debtor's financial affairs, debt structure, operations, and related matters. Having worked with the Debtor's management, Deloitte Tax has developed relevant experience and knowledge regarding the Debtor that will assist it in providing effective and efficient services during these Chapter 11 Case. Accordingly, Deloitte Tax is both well qualified and able to provide the aforementioned services for the Debtor in the Chapter 11 Case in an efficient and timely manner.

**Disinterestedness**

A. ***Background Information***

6. Deloitte Touche Tohmatsu Limited ("**DTTL**") is a UK private company limited by guarantee. DTTL itself does not provide services to clients. Each of the member firms of DTTL (each a "**DTTL Member Firm**") is a legally separate and distinct entity. The DTTL

Member Firms are primarily organized on an individual country or regional basis and operate within the legal and regulatory framework of their particular jurisdiction(s). The DTTL Member Firm structure reflects the fact that the DTTL Member Firms are not affiliates, subsidiaries or branch offices of each other or of a global parent. Rather, they are separate and independent firms that have come together to practice under a common brand and shared methodologies, client service standards, and other professional protocols and guidelines. DTTL Member Firm partners and/or principals are generally the sole owners of their respective DTTL Member Firms. There is no overlap with respect to a partner's or principal's ownership in its respective DTTL Member Firm and any other DTTL Member Firm. Profits are not shared between or among the DTTL Member Firms.

7. In the United States, Deloitte LLP is a DTTL Member Firm. Like DTTL, Deloitte LLP does not provide services to clients. Rather, Deloitte LLP has operating affiliates that perform services for clients, including Deloitte Tax, Deloitte & Touche LLP ("**Deloitte & Touche**"), Deloitte Financial Advisory Services LLP ("**Deloitte FAS**"), Deloitte Consulting LLP ("**Deloitte Consulting**"), and Deloitte Transactions and Business Analytics LLP ("**DTBA**") (Deloitte LLP and each of the foregoing, and together with their respective direct and indirect subsidiaries, the "**Deloitte U.S. Entities**"). The partners and/or principals of each operating affiliate of Deloitte LLP are owners of their respective affiliate along with, directly or indirectly, Deloitte LLP. Generally, each affiliate's respective partners and principals are also partners and principals, as applicable, of Deloitte LLP.

B. ***Conflicts Check Process***

8. Subject to the foregoing, except as set forth herein and in the attachments hereto, to the best of my information, knowledge, and belief based on reasonable inquiry: (a) neither I, Deloitte Tax, nor any partner, principal, or managing director of Deloitte Tax that is

anticipated to provide the services for which Deloitte Tax is to be retained (the "**Deloitte Tax Engagement Partners/Principals/Managing Directors**") holds any interest adverse to the Debtor with respect to the matters on which Deloitte Tax is to be retained in their Chapter 11 Case; and (b) Deloitte Tax has no relationship to the Debtor, their significant creditors, certain other parties-in-interest, or to the attorneys that are known to be assisting the Debtor in their Chapter 11 Case, except as stated herein or in any attachment hereto.

9. In connection with Deloitte Tax's retention by the Debtor in its Chapter 11 Case, Deloitte Tax undertook searches to determine, and to disclose, whether it or its affiliates, is or has been employed by or has other relationships with the Debtor or their affiliates, subsidiaries, directors, or officers, or any of the Debtor's significant creditors, customers, equity security holders, professionals, or other entities with significant relationships with the Debtor (the "**Potential Parties-in-Interest**"), whose specific names were provided to Deloitte Tax by the Debtor, listed on **Schedule 1** attached hereto. To check upon and disclose possible relationships with significant Potential Parties-in-Interest in these Chapter 11 Case, Deloitte Tax researched its client databases and performed reasonable due diligence to determine whether it or its affiliates had any relationships with the Debtor or its affiliates, subsidiaries, directors, or officers, or significant Potential Parties-in-Interest.

10. As described herein, for the most part, the conflicts searches conducted by Deloitte Tax involve checking client and other databases of the Deloitte U.S. Entities. Given the separateness of the various DTTL Member Firm as described above, the Deloitte U.S. Entities do not have the capability to directly check the client or other databases of any of the non-U.S. DTTL Member Firms or their respective affiliates or subsidiaries. However, notwithstanding the separateness of the DTTL Member Firms, the Deloitte U.S. Entities' checking procedures in

bankruptcy cases do result in the gathering of certain information related to the DTTL Member Firms, as described below.

11. When any of Deloitte LLP's operating affiliates, such as Deloitte Tax, is to be the subject of an application to be retained in a chapter 11 case, a process commences regarding checking connections to the debtor, its affiliates and the debtor's parties in interest (as provided by the debtors). With the assistance of the Deloitte U.S. Entities' conflicts team (the "**Conflicts Team**"), a series of conflicts checking procedures are undertaken, including checking a number of Deloitte U.S. Entities' databases for their connections. Additionally, the Conflicts Team performs procedures to identify certain relationships of other DTTL Member Firms, as described below:

i. With respect to the debtor and debtor affiliates, the Conflicts Team will:

a) Initiate cross border check requests to the DTTL Member Firm(s) where the debtor or debtor affiliate is domiciled (i.e., the country of incorporation or the entity's headquarters, as the case may be) based upon information provided by the debtors and research by the Conflicts Team of publicly available information. The DTTL Member Firm(s) will then search applicable local databases to identify client or non-client relationships in their jurisdiction (such as lender, vendors, business relationship entities or third parties associated with a client engagement).

b) Perform a search of the cross border conflict check requests the Conflicts Team has previously received from other DTTL Member Firms, which are submitted when a DTTL Member Firm seeks to commence an engagement with or involving a U.S. entity.[1] This search is conducted to identify whether those prospective engagements involved the debtor or its affiliates domiciled in the U.S. as the engaging client or non-client relationship (such as business relationship entities or third parties associated with a client engagement).

c) Perform a search of the database system associated with audit and other related independence requirements (the "**Independence Database**") to identify possible connections with debtor and debtor affiliates with respect to whom such requirements are actually or potentially implicated. Each DTTL Member Firm is required to input

[1] These cross-border conflict check requests are pursuant to a policy adopted by DTTL Member Firms.

its respective audit and attest clients into the Independence Database, and all DTTL Member Firms have access to the Independence Database.[2] Each entity in the Independence Database has a designated partner who is responsible for approving and monitoring services for entities included in its corporate tree. The Independence Database includes audit and attest clients of the various DTTL Member Firms, as well as certain other non-clients thereof.

ii. With respect to the debtor's parties in interest, the Conflicts Team will:

(a) Perform a search of the cross-border conflict check requests the Conflicts Team has previously received from other DTTL Member Firms (described above) to identify whether those prospective engagements involved a U.S.-domiciled party in interest as a direct attest or litigation client or business relationship entity.

(b) Perform a search of the Independence Database to determine whether a party in interest is identified therein.

12. Deloitte Tax and/or its affiliates have relationships with thousands of clients, some of which may be creditors of the Debtor or other Potential Parties-in-Interest. Accordingly, Deloitte Tax and/or its affiliates have or may have provided professional services, may currently provide professional services, and/or may in the future provide professional services in matters unrelated to the Chapter 11 Case to certain of the Potential Parties-in-Interest. Additionally, certain of these Potential Parties-in-Interest have or may have provided goods or services, may currently provide goods or services, and/or may in the future provide goods or services to Deloitte Tax and/or its affiliates and the Deloitte Tax Engagement Partners/Principals/Managing Directors in matters unrelated to the Chapter 11 Case. A listing of parties with such connections to Deloitte Tax and/or its affiliates is attached to this Declaration as **Schedule 2**.

13. With respect to Deloitte Tax's conflicts checks conducted in the Chapter 11 Case, if a database query identified a potential connection between a Potential Party-in-Interest and

---

[2] Inputting audit and attest clients into the Independence Database is a policy followed by DTTL Member Firms so that such relationships are tracked in connection with such firms' independence requirements.

a Deloitte U.S. Entity or DTTL Member Firm, an email was sent to certain of the Deloitte U.S. Entity's and/or DTTL Member Firm's individuals, as applicable, associated with such Potential Party-in-Interest to confirm whether or not the relationship with such Potential Party-in-Interest related or currently relates to the Chapter 11 Case. Responses to these emails were consolidated and subsequently reviewed. As stated in this Declaration, these processes result in the disclosures that are set forth herein, including the disclosure of certain connections with Potential Parties-in-Interest that do not relate to the Chapter 11 Case. The identified potential connections to the Potential Parties-in-Interest are included on **Schedule 2** appended hereto, and such connections do not relate to the Chapter 11 Case.

14. Deloitte Tax believes that the relationships described herein or reflected on **Schedule 2** have no bearing on the services for which Deloitte Tax's retention is being sought by the Debtor in the Chapter 11 Case. Furthermore, such relationships do not impair Deloitte Tax's disinterestedness, and Deloitte Tax does not represent an adverse interest in connection with the Chapter 11 Case.

15. To the best of my knowledge, based on the searches discussed above, Deloitte Tax has determined that certain relationships should be disclosed as follows.

a. Deloitte Tax and its affiliates provide services in matters unrelated to the Chapter 11 Case to certain of the Debtor's largest unsecured and secured creditors and other Potential Parties-in-Interest or their affiliates listed on **Schedule 2**.

b. Law firms identified on **Schedule 2**, including K&L Gates and Smith Anderson LLP, have provided, currently provide and may in the future provide legal services to Deloitte Tax or its affiliates in matters unrelated to their Chapter 11 Case, and/or Deloitte Tax or its affiliates have provided, currently provide and may in the future provide services to such firms or their clients.

c. In the ordinary course of its business, Deloitte Tax and its affiliates have business relationships in unrelated matters with its principal competitors, which together with their affiliates may be Potential Parties-in-Interest in the Chapter 11 Case. For example, from time to time, Deloitte Tax and one or more of such entities

may work on assignments for the same client or may otherwise engage each other for various purposes.

d. Certain financial institutions or their respective affiliates listed on **Schedule 2** (including American Express Corporate Services and American Express Travel Services) (i) are lenders to an affiliate of Deloitte & Touche (Deloitte & Touche is a guarantor of such indebtedness) and/or (ii) have financed a portion of the capital and/or capital loan requirements of various managing partners and principals, respectively, of Deloitte & Touche and its affiliates.

e. Certain Potential Parties-in-Interest may be adverse to and/or involved in litigation matters with Deloitte Tax or its affiliates in connection with matters unrelated to the Chapter 11 Case.

f. Deloitte & Touche has provided and continues to provide audit services to certain Potential Parties-in-Interest and/or their affiliates, in matters unrelated to the Chapter 11 Case. In its capacity as independent auditor, Deloitte & Touche also provides such clients with ordinary course auditing services and conducts typical audit procedures that may arise from such Potential Parties-in-Interests' business arrangements with the Debtor. Similarly, Deloitte Tax has provided and continues to provide ordinary course tax services to certain Potential Parties-in-Interest and/or their affiliates, in matters unrelated to the Chapter 11 Case. Such services may arise from, or reflect, such Potential Parties-in-Interests' business arrangements with the Debtor.

16. Furthermore, through reasonable inquiry, I do not believe there is any connection between the personnel of Deloitte Tax or its affiliates who are anticipated to provide services to the Debtor and the United States Bankruptcy Judge presiding in this Chapter 11 Case, the Bankruptcy Administrator for the Eastern District of North Carolina, and the attorney(s) therefor assigned to the Chapter 11 Case.

17. Despite the efforts described above to identify and disclose Deloitte Tax's connections with the Potential Parties-in-Interest in the Chapter 11 Case, because Deloitte Tax is a nationwide firm with thousands of personnel, and because the Debtor are a large enterprise, Deloitte Tax is unable to state with certainty that every client relationship or other connection has been disclosed. In this regard, if Deloitte Tax discovers additional material information that it determines requires disclosure, it will file a supplemental disclosure promptly with the Court.

18. Except as may be disclosed herein, to the best of my knowledge, information, and belief, Deloitte Tax and the Deloitte Tax Engagement Partners/Principals/Managing Directors do not hold or represent any interest adverse to the Debtor, and I believe that Deloitte Tax is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code, as modified by Section 1107(b) of the Bankruptcy Code.

**Scope of Services**

19. As set forth more fully in the Engagement Agreement, Deloitte Tax has agreed to provide certain tax compliance services for the Debtor in accordance with the terms and conditions set forth in the Engagement Agreement, and as requested by the Debtor and agreed to by Deloitte. Deloitte Tax will provide the Debtor with tax return preparation services for the Debtor's 2024 federal and state income tax returns identified in Exhibit A to the Engagement Agreement. Deloitte Tax will also assist in calculating the amounts of extension payments and preparing the extension requests for the 2024 tax returns identified in such Exhibit A.

**Professional Compensation**

20. Deloitte Tax's retention by the Debtor is conditioned upon its ability to be retained in accordance with its terms and conditions of employment, including the proposed compensation arrangements and indemnification provisions, set forth in the Engagement Agreement.

21. Pursuant to the terms of the Engagement Agreement, Deloitte Tax's fees for the preparation of the remaining tax year 2024 federal and state tax returns, including services related to extensions, are approximately $20,000, excluding expenses.

22. In addition to the fees set forth above, actual, reasonable, and necessary expenses including, but not limited to, expenses incurred on account of travel and lodging, report production, delivery services, and other expenses incurred in providing Deloitte Tax's services, and

other expenses incurred in providing Deloitte Tax's services will be included in the total amount billed.

23. Some services incidental to the tasks to be performed by Deloitte Tax in the Chapter 11 Case may be performed by personnel now employed by or associated with affiliates of Deloitte Tax, such as Deloitte & Touche, Deloitte FAS, DTBA, and Deloitte Consulting, or their respective subsidiaries, including subsidiaries located outside of the United States. In particular, Deloitte Tax may subcontract a portion of tax services to its indirect subsidiary, Deloitte Tax India Private Limited ("**Deloitte Tax India**"). In such case, a specifically assigned team of personnel from Deloitte Tax India assists in such services under the supervision, and with the input, of personnel of Deloitte Tax. The hourly rates charged to the clients by Deloitte Tax for services performed by Deloitte Tax India personnel are comparable to the rates charged for similar services by Deloitte Tax, but do not directly correlate with the hourly rates attributed to such services by Deloitte Tax India. The connections of Deloitte Tax India (along with the connections of Deloitte Tax and its other affiliates) to the parties in interest searched by Deloitte Tax are set forth on **Schedule 2** attached hereto.

24. Prior to the Petition Date, Deloitte Tax provided professional services to the Debtor. In the ninety (90) days prior to the Petition Date, the Debtor paid Deloitte Tax no amounts on account of invoices issued prior to such date. As of the Petition Date, approximately $40,900 was outstanding with respect to invoices issued by Deloitte Tax prior to such date, of which $15,000 was a pre-bill for services to be performed.

25. Prior to the Petition Date, Deloitte & Touche provided professional services to the Debtor. In the ninety (90) days prior to the Petition Date, the Debtor paid Deloitte & Touche

no amounts on account of invoices issued prior to such date. As of the Petition Date, no amounts were outstanding with respect to invoices issued by Deloitte & Touche prior to such date.

26. Deloitte Tax has received no promises regarding compensation in these Chapter 11 Case other than in accordance with the Bankruptcy Code and as set forth in this Declaration. Deloitte Tax has no agreement with any nonaffiliated or unrelated entity to share any compensation earned in these Chapter 11 Case.

**No Duplication of Services**

27. To my knowledge, I believe that the services Deloitte Tax provides to the Debtor will not duplicate the services that other professionals will be providing to the Debtor in the Chapter 11 Case. Specifically, I believe that Deloitte Tax will perform unique services and will use reasonable efforts to coordinate with the Debtor to avoid the unnecessary duplication of services.

[*Remainder of Page Intentionally Left Blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: April __, 2026

By: *__/s/ Gina Chapin______*
Gina Chapin
Managing Director
Deloitte Tax LLP

# EXHIBIT A

**Engagement Agreement**

Deloitte.

**Deloitte Tax LLP**
650 South Tryon Street
Charlotte, NC 28202
USA

Tel: +1 704 887 1500
www.deloitte.com

September 10, 2025

Mr. Clint Pete
Chief Financial Officer
Charles & Colvard, Ltd.
170 Southpoint Drive
Morrisville, NC 27560

Dear Mr. Pete:

Thank you for choosing Deloitte Tax LLP ("Deloitte Tax" or "our") to provide tax return preparation services ("Services") for **Charles & Colvard, Ltd** and its subsidiaries and/or affiliates ("Client"). This engagement letter ("Engagement Letter") describes the scope of the Services, the respective responsibilities of Deloitte Tax and Client relating to this engagement, and the fees Deloitte Tax expects to charge for such Services.

## SCOPE OF SERVICES

Deloitte Tax will prepare the 2024 federal and state income tax returns ("tax returns") identified in Exhibit A, Listing of Income Tax Returns Included in Engagement, attached to this Engagement Letter and incorporated herein by reference.

### Extensions

In addition to the preparation of Client's 2024 tax returns, Deloitte Tax will assist in calculating the amounts of extension payments and preparing the extension requests for the 2024 tax returns identified in Exhibit A.

### Estimated Taxes

Deloitte Tax has not been engaged to prepare any quarterly estimated tax payment calculations for the 2024 tax year. You have assumed responsibility for the preparation of these calculations and filings. If you need assistance with these filings, please notify Deloitte Tax and a separate fee estimate for these services can be provided.

### Foreign Bank Account Reporting

If Client has foreign bank accounts, investment accounts, partnerships or similar assets, or if Client has signature or similar authority over these types of accounts or investments (whether owned by Client or by others), Client may have to file a FinCEN Form 114, Report of Foreign Bank and Financial Accounts. Unless outlined above or the subject of a separate engagement letter, the Deloitte Tax return preparation Services that are the subject of this Engagement Letter do not include the preparation of any FinCEN Forms 114, which must be received by the Department of Treasury by September 15, 2025 with an automatic extension available until April 15, 2025. If assistance with these filings is needed, please notify Deloitte Tax and a separate fee estimate for these services can be provided.

Electronic Return Filing

Client has engaged Deloitte Tax to electronically file ("e-file") its federal and state income tax returns. Deloitte Tax will transmit the tax return(s) in the form of electronic files as authorized by the Client. In order for Deloitte Tax to e-file Client's returns, Client must provide [a] signed e-file authorization[s] to Deloitte Tax at least seven (7) days prior to transmission to the IRS and states indicated. Upon receipt of the signed e-file authorization[s], Deloitte Tax will transmit the electronic files without modification other than as necessary to resolve diagnostic or other errors generated as a result of the transmission. The receipt of the signed e-file authorization[s] will be deemed by Deloitte Tax as authorization by Client to e-file Client's return[s]. Client retains responsibility for compliance with any electronic fund transfer requirements that may apply to the payment of applicable taxes.

State Tax Return Apportionment Information

Deloitte Tax will prepare state tax returns based upon the state information, apportionment data provided by the client and the apportionment methodologies utilized by Client on its 2023 tax returns. Client will address and correct instances where apportionment data is incomplete, inaccurate or does not reconcile to the book and tax balances reflected on the federal tax return. In the course of performing the Services, if Deloitte Tax becomes aware of such incomplete or inaccurate data, Deloitte Tax will inform Client. Deloitte Tax will discuss with and obtain Client's input for addressing apportionment methodologies used in 2023 that may be inappropriate to utilize for the 2024 tax returns.

Engagement Technology

In providing the Services, we expect to utilize our innovative cloud-based solution, Intela, to facilitate efficient communication between Client's team and ours and streamline the process associated with requesting and receiving the data necessary for our Services. For additional information about Intela, please contact your Deloitte Tax engagement team.

Potential state/local nexus considerations

State/local jurisdictions continue to enact nexus rules that impose filing obligations based on sales made into jurisdictions or other economic presence. Client may need to periodically revisit positions it may have historically taken regarding income/franchise tax nexus. As a result, the scope of our Services may need to be expanded to include a nexus review for additional filings. Deloitte Tax has not been engaged to perform a nexus review or consulting services. If you need assistance with these services, please notify Deloitte Tax and a separate fee estimate for these services can be provided.

Tax Consulting Services

Additionally, Deloitte Tax may perform consulting services throughout the year, for which a separate engagement letter should generally be issued. If Client and Deloitte Tax fail to execute a separate engagement letter with respect to such consulting services, the terms of this Engagement Letter will apply to all consulting services rendered with respect thereto. Unless otherwise agreed, Deloitte Tax will bill for these consulting services at mutually agreed-upon hourly rates.

OTHER MATTERS

Tax Positions, Potential Penalties, Taxing Authority Audits

In accordance with our professional standards, while in the course of performing our Services should Deloitte Tax become aware of tax return positions for which either you or Deloitte Tax may be subject to potential penalties by taxing authorities, Deloitte Tax will discuss with you these positions including how any such penalties may be avoided through adequate disclosures to taxing authorities. You should be aware that as a tax return preparer, Deloitte Tax may be required to satisfy disclosure requirements that may exceed those applicable to you. In those instances where Deloitte Tax is aware of tax return positions that may trigger an accuracy-related

tax preparer penalty under Internal Revenue Code ("IRC") sections 6662 or 6694 (or comparable state provisions), Deloitte Tax will include in the returns we prepare the disclosures necessary to avoid such penalties.

Our Services do not include representation of you in administrative taxing authority proceedings. However, Deloitte Tax would generally be willing to represent you in such proceedings for an additional fee that is mutually agreed upon.

## CONSENT FOR DISCLOSURE AND USE OF TAX RETURN INFORMATION

Client authorizes that any and all information (i) furnished to Deloitte Tax for or in connection with the Services under this Engagement Letter, (ii) derived or generated by Deloitte Tax from the information described in (i) above, or (iii) associated with prior years' tax return information in the possession of Deloitte Tax may, for a period of up to eight (8) years from the end of the tax year to which the Services relate, be disclosed to and considered and used by any Deloitte Tax affiliate, related entity (or its affiliate) or subcontractor, in each case, whether located within or outside the United States, engaged directly or indirectly in providing Services or administrative support under this Engagement Letter, tax planning or preparation of tax returns, audited financial statements or other financial statements or financial information as required by a government authority, municipality or regulatory body. Disclosures under this paragraph may consist of all information contained in Client's tax returns; if Client wishes to request a more limited disclosure of tax return information, Client must inform Deloitte Tax. Client acknowledges that Client's tax return information may be disclosed to Deloitte Tax affiliates, related entities (or their affiliates) or subcontractors located outside of the United States.

## FEES AND EXPENSES

The Deloitte Tax fees for the preparation of the tax return[s], [including services related to extensions are $29,750. Deloitte Tax will also bill you (i) reasonable out-of-pocket expenses and (ii) an allocation of estimated administrative and technology costs incurred (e.g., tax technology and processing support activities, research materials, etc.) equal to eight (8) percent of professional fees. If Deloitte Tax finds that there is an increased level of complexity or if additional services are necessary in order to complete the returns outlined in Exhibit A, Deloitte Tax will contact you to discuss the billing arrangement related to such out-of-scope services.

Deloitte Tax will bill 50% of the fees for the Services referred to above upon commencement of the Services, and the remainder will be billed every four weeks as the Services progress.

### Impact on Fees Due to Failure to Provide Requested Information

Deloitte Tax assumes that Client will provide timely and complete information as requested, including complete trial balances and reconciliations of the trial balances to the audited financial statements, state apportionment information that reconciles to Client trial balances, state payment/overpayment carryforward information (including adjustments for notices), depreciation reports and timely approval and authorization for a particular task. In the event that Client is unable to provide requested information in a manner suitable to prepare the returns or approval and authorization for a particular task by agreed-upon deadlines, Deloitte Tax may incur additional time necessary to analyze the required information or perform the particular task, resulting in an increase to our overall fees. To the extent the charges for these additional services will exceed 10% of the overall fees for this engagement, Deloitte Tax will inform Client prior to incurring such additional time.

## UNANTICIPATED OUT-OF-SCOPE SERVICES

In the event there is a mutually agreed upon change in the scope of our services for any other reason (e.g., new legislation, changes in the number of entities or tax returns included in the engagement, a need to file amended federal or state tax returns, analysis and calculation of Administrative Adjustment Requests (AAR) for a partnership subject to the centralized partnership audit regime (BBA), calculation of push-out adjustments from lower-tier partnerships into current tax year calculations, specified tax reporting for transactions arising in the

year such as dispositions and acquisitions and internal entity realignment or reorganizations (including relevant elections and statements), significant intercompany transactions, debt modifications, reportable transactions, expansion of the requirements or complexities with electronically filing tax returns, regulatory changes in filing requirements, analysis and tracking of state attributes that have carryover amounts (e.g., NOLs, 163(j), 174), separate computations of attribute allocations to joining and departing members of the consolidated group and/or the limitations thereon, or other items that would impact the amount of time incurred to perform the Services as currently contemplated), it may be necessary to discuss a change in our fee estimate with you. Our fees for such out-of-scope services will generally be based on the amount of professional time incurred and our agreed-upon hourly rates, which vary depending upon the experience level of the professionals involved. Deloitte Tax will bring these items to Client's attention and will discuss the associated additional fees for such out-of-scope services prior to proceeding.

Additionally, state or local tax jurisdictions may continue to modify their laws to address tax law changes and mandated informational reporting. It is possible that a state may adopt retroactive legislation after the filing of the 2024 tax returns. Therefore, consideration may need to be given to filing an initial original return followed by an amended state return once the state has issued final guidance.

### Section 174 expenditure calculation

Any calculations or analyses related to the mandatory amortization of section 174 expenditures for taxable years beginning after December 31, 2021, as per the Tax Cuts and Jobs Act ("TCJA") are specifically excluded from our scope of services. For any such assistance a separate Engagement letter or Work Order should be executed.]

## ACCEPTANCE

This Engagement Letter including all exhibits, together with the General Business Terms attached hereto, constitutes the entire agreement between Client and Deloitte Tax with respect to this engagement, supersedes all other oral and written representations, understandings or agreements relating to this engagement, and may not be amended except by the mutual written agreement of the Client and Deloitte Tax.

Please indicate your acceptance of this agreement by signing in the space provided below and returning a copy of this Engagement Letter to our office. Your signature constitutes Client's consent to disclosure and use of Client's tax return information in the manner described above. Your signature also constitutes acknowledgment of receipt of the attached Privacy Notice.

Thank you for giving Deloitte Tax the opportunity to serve you. If you have any questions regarding the tax Services described in this Engagement Letter, or any other assistance that Deloitte Tax may provide to you, please feel free to contact me (704) 887-1509 or Gina Chapin at (919) 645-6286.

Very truly yours,

DELOITTE TAX LLP

By: Helen Hollifield
Helen Hollifield
Managing Director

AGREED AND ACCEPTED

**Charles & Colvard**, on behalf of itself and its subsidiaries and/or affiliates

By: Clint Pete
Clint Pete

Title: Chief Financial Ofifcer

Date: 11-Sep-2025 | 10:25:34 AM EDT

Enclosures

Exhibit A – Charles & Colvard, Ltd

Listing of Federal and State Income Tax Returns Included in Engagement

| Entity Name | Jurisdiction | Form Number | Form Name |
|---|---|---|---|
| Charles & Colvard, Ltd. & Subsidiaries | Federal | 1120 | U.S. Corporation Income Tax Return |
| Charles & Colvard, Ltd. & Subsidiaries | Federal | 5471 | Information Return of US Persons with Respect to Certain Foreign Corporations |
| Charles & Colvard, Ltd. & Subsidiaries | Arizona | 120 | Arizona Corporation Income Tax Return |
| Charles & Colvard, Ltd. & Subsidiaries | California | 100W | California Corporation Franchise or Income Tax Return – Water's-Edge Filers |
| Charles & Colvard, Ltd. & Subsidiaries | Illinois | IL-1120 | Illinois Corporation Income and Replacement Tax Return |
| Charles & Colvard, Ltd. & Subsidiaries | Kentucky | 720U | Kentucky Unitary Combined Corporation Income Tax and LLET Return |
| Charles & Colvard, Ltd. & Subsidiaries | Massachusetts | 355U | Massachusetts Excise for Taxpayers Subject to Combined Filing |
| Charles & Colvard, Ltd. & Subsidiaries | Minnesota | M4 | Minnesota Corporation Franchise Tax |
| Charles & Colvard, Ltd. & Subsidiaries | Missouri | MO-1120 | Missouri Corporation Income Tax Return |
| Charles & Colvard, Ltd. & Subsidiaries | New Jersey | CBT-100U | New Jersey Corporation Business Tax Unitary Return |
| Charles & Colvard, Ltd. & Subsidiaries | New York | CT-3-A | New York General Business Corporation Combined Franchise Tax Return |
| Charles & Colvard, Ltd. & Subsidiaries | Rhode Island | RI-1120C | Rhode Island Business Corporation Tax Return |
| Charles & Colvard, Ltd. & Subsidiaries | Texas | 05-158 | Texas Gross Margins Franchise Tax Return |
| Charles & Colvard, Ltd. & Subsidiaries | Texas | 05-102 | Texas Franchise Tax Report |
| Charles & Colvard, Ltd. & Subsidiaries | Wisconsin | Form 6 | Wisconsin Combined Corporation Franchise or Income Tax Return |
| Charles & Colvard, Ltd. | Florida | F-1120 | Florida Corporate Income/Franchise Tax Return |
| Charles & Colvard, Ltd. | North Carolina | CD-405 | North Carolina Corporation Tax Return |
| Charles & Colvard, Ltd. | Louisiana | CIFT-620-2D | Louisiana Corporation Income Tax Return |

| | | | |
|---|---|---|---|
| Charles & Colvard, Ltd. | Pennsylvania | RCT-101 | PA Caproate Net Income Tax |
| Charles & Colvard, Ltd. | Tennessee | FAE 170 | Tennessee Franchise and Excise Tax Return |
| Charles & Colvard Direct, LLC | North Carolina | CD-405 | North Carolina Corporation Tax Return |
| CharlesandColvard.com, LLC | Louisiana | CIFT-620-2D | Louisiana Corporation Income Tax Return |
| CharlesandColvard.com, LLC | North Carolina | CD-405 | North Carolina Corporation Tax Return |

DELOITTE TAX LLP GENERAL BUSINESS TERMS

1. **Contract and Parties.**

(a) The engagement letter and any appendices and exhibits other than these General Business Terms ("Engagement Letter") issued by Deloitte Tax LLP ("Deloitte Tax") and addressed to the Client, a particular work order associated with such Engagement Letter ("Work Order"), if any, and these General Business Terms (together, the "Contract") constitute the whole agreement between the Client and Deloitte Tax in relation to the services, delivered work product (including Advice as defined below) described in the Contract to be provided by Deloitte Tax (the "Services") and Deloitte Tax's responsibilities for providing the Services. Capitalized terms not defined in these General Business Terms shall have the meaning given to them in the Engagement Letter.

(b) This Contract is between the Client and Deloitte Tax. For the purposes of this Contract:

"Client" shall mean the entity specified in the Engagement Letter and shall include such of the Client's subsidiaries and/or affiliates as identified in the Engagement Letter and/or Work Order or, if none is identified, all of the Client's subsidiaries and affiliates. The signatory of the Engagement Letter represents and warrants that it has the power and authority to (i) sign the Contract, and (ii) to bind, itself and its subsidiaries and/or affiliates.

"Advice" shall mean all advice, opinions, reports and other work product in any form (including Deliverables) provided by or on behalf of Deloitte Tax and/or its Subcontractors as part of the Services.

"Content" means any publications, thought pieces or other content or materials that are provided by Deloitte Tax or through the Deloitte Technologies that are not an output of the Services.

"Deliverables" means any and all tangible work outputs of the Services to be delivered by Deloitte Tax as part of the Services, including written returns, reports, documents and other materials.

(c) Deloitte Tax may subcontract any Services under this Contract to any other Deloitte Entity and/or to any other third party, in either case whether within or outside of the United States (collectively "Subcontractor"). Additionally, Deloitte Tax may utilize other Deloitte Entities and third parties (in either case whether within or outside the United States) to provide administrative, infrastructure, hosting, the use of cloud-based solutions and other support services to Deloitte Tax (including with respect to the Deloitte Technologies). The Client's relationship is solely with Deloitte Tax as the entity contracting to provide the Services. Each party to the Contract is an independent contractor and neither party is, nor shall be considered to be, the other's agent, distributor, partner, fiduciary, joint venturer, co-owner, or representative.

(d) Deloitte Tax remains responsible to the Client for all of the Services performed or to be performed under this Contract, including Services performed by its Subcontractors. Accordingly, to the fullest extent possible under applicable law (i) none of the Deloitte Entities (except Deloitte Tax) will have any liability to the Client; (ii) the Client will not bring any claim or proceedings of any nature (whether in contract, tort, breach of statutory duty or otherwise, and including, but not limited to, a claim for negligence) in any way in respect of or in connection with this Contract against any of the Deloitte Entities (except Deloitte Tax); and (iii) the Client will also ensure that no Client subsidiary or affiliate which is not a party to the Contract brings any claim or proceedings of any nature (whether in contract, tort, breach of statutory duty or otherwise, and including, but

not limited to, a claim for negligence) in any way in respect of or in connection with this Contract against any of the Deloitte Entities.

(e) "Deloitte Entities" means Deloitte Touche Tohmatsu Limited, a UK private company limited by guarantee ("DTTL"), its member firms and their respective subsidiaries and affiliates (including Deloitte Tax), their predecessors, successors and assignees, and all partners, principals, members, owners, directors, employees, subcontractors (including the Subcontractors) and agents of all such entities. Neither DTTL nor, except as expressly provided herein, any member firm of DTTL, has any liability for each other's acts or omissions. Each member firm of DTTL is a separate and independent legal entity operating under the names "Deloitte", "Deloitte & Touche", "Deloitte Touche Tohmatsu" or other related names; and services are provided by member firms or their subsidiaries or affiliates and not by DTTL.

2. Responsibilities of the Client and of Deloitte Tax.

(a) Responsibilities of the Client

(i) The Client shall cooperate with Deloitte Tax and its Subcontractors in connection with the performance of the Services, including, without limitation, providing Deloitte Tax and its Subcontractors with reasonable facilities and timely access to data, information and personnel of the Client. The Client shall be responsible for the performance of its personnel and third parties retained by the Client, for the timeliness, accuracy and completeness of all data and information (including all financial information and statements) provided to Deloitte Tax and its Subcontractors by or on behalf of the Client and for the implementation of any Advice provided. Deloitte Tax and its Subcontractors may use and rely on information and data furnished by the Client or others without verification. The performance of the Services is dependent upon the timely performance of the Client's responsibilities under the Contract and timely decisions and approvals of the Client in connection with the Services. Deloitte Tax and its Subcontractors shall be entitled to rely on all decisions and approvals of the Client.

(ii) The Client shall be solely responsible for, among other things: (A) making all management decisions, performing all management functions and assuming all management responsibilities; (B) designating one or more individuals who possess suitable skill, knowledge, and/or experience, preferably within senior management to oversee the Services; (C) evaluating the adequacy and results of the Services; (D) accepting responsibility for implementing the results of the Services; and (E) establishing and maintaining internal controls, including, without limitation, monitoring ongoing activities. The provisions in the preceding sentence are not intended to and do not alter, modify or change in any manner the duties and obligations of Deloitte Tax as agreed to and set forth in this Contract. With respect to the data and information provided by the Client to Deloitte Tax or its Subcontractors for the performance of the Services, the Client shall have all rights required to provide such data and information and shall do so only in accordance with applicable law and with any procedures agreed upon in writing.

(b) Responsibilities of Deloitte Tax

(i) The Services provided are not binding on tax or other governmental or regulatory authorities or the courts and do not constitute a representation, warranty, or guarantee that the tax or other governmental or regulatory authorities or the courts will concur with any Advice. Any Services provided by or on behalf of Deloitte Tax will be based upon the law, regulations, cases, rulings, and other tax authority in effect at the time the specific Services are provided. Subsequent changes in or to the foregoing (for which Deloitte Tax shall have no responsibility to advise the Client) may result in the Services provided by or on behalf of Deloitte Tax being rendered invalid.

(ii) Except as specifically agreed to in writing, Deloitte Tax shall not provide Advice regarding the financial accounting treatment of any transaction implemented from the Services and will not assume any responsibility

for any financial reporting with respect to the Services. Deloitte Tax shall have no responsibility to address any legal matters or questions of law, other than tax law in relation to the Services.

(iii) In formulating any Advice as part of the Services, Deloitte Tax may discuss ideas with the Client orally or show the Client drafts of such Advice. To the extent that the content of drafts or oral Advice are expected to be finalized and confirmed to the Client in writing, such confirmed Advice shall supersede any previous drafts or oral Advice and Deloitte Tax shall not be responsible if the Client or others choose to rely on, act or refrain from acting on the basis of any drafts or oral Advice.

(iv) Deloitte Tax will use its reasonable endeavors, acting in a commercially prudent manner, to carry out the Services in accordance with any timetable specified in the Contract. However, it is agreed that any dates specified in the Contract for the performance of any part of the Services, including delivery of any Advice, are estimated dates for planning purposes only. Deloitte Tax will notify the Client promptly if it expects or encounters any significant delays which will materially affect achievement of any timetable for delivery of the Services.

(v) Unless expressly agreed otherwise in writing, each item of Advice will be deemed accepted (and the Services or relevant part completed) when such Advice has been delivered in its final form and no material objection to the Advice or its content is notified by the Client to Deloitte Tax in writing within fourteen (14) days of delivery or when first use of the Advice is made by or on behalf of the Client, whichever occurs first.

3. Payment of Invoices.

Deloitte Tax's invoices are due and payable by the Client upon presentation. If payment of an invoice is not received within thirty (30) days of the invoice date ("Due Date"), Deloitte Tax reserves the right to charge interest at the rate of (i) 1½% per month or, if higher, (ii) the rate mandated or allowable by law, in each case compounded monthly to the extent allowable by law. Without limiting its other rights or remedies, Deloitte Tax shall have the right to suspend or terminate the Services entirely or in part if payment is not received by the Due Date. The Client shall be responsible for all taxes, such as VAT, sales and use tax, gross receipts tax, withholding tax, and any similar tax, imposed on or in connection with the Services, other than Deloitte Tax's income and property taxes. If any portion of an invoice is disputed, the Client shall notify Deloitte Tax within fifteen (15) days of receipt of the disputed invoice and pay the undisputed portion of that invoice by the Due Date.

4. Term.

(a) This Contract or any Work Order hereunder, may be terminated in whole or in part by either party at any time, without cause, by giving written notice to the other party not less than thirty (30) days before the effective date of termination.

(b) Either party may terminate this Contract or any Work Order hereunder in whole or in part by written notice to the other on or at any time after the occurrence of any of the following events: (i) a material breach by the other party of an obligation under the Contract or any respective Work Order hereunder and, if the breach is capable of remedy, the defaulting party failing to remedy the breach within 30 days of receipt of notice of such breach; (ii) the other party becomes insolvent or goes into liquidation; (iii) the other party has a resolution passed or a petition presented for its winding-up or dissolution (other than for the purpose of a solvent amalgamation or reconstruction); (iv) the making of an administration order in relation to the other party, or the appointment of a receiver over, or an encumbrancer taking possession of or selling, an asset of the other party; (v) the other party making an arrangement or composition with its creditors generally or making an application to a court of competent jurisdiction for protection from its creditors generally; or (vi) any event analogous to those set out in (ii) to (v) in any relevant jurisdiction.

(c) Deloitte Tax may terminate this Contract or any Work Order hereunder in whole or in part, with immediate effect upon written notice to the Client if Deloitte Tax determines that (i) a governmental, regulatory, or professional entity, or other entity having the force of law has introduced a new, or modified an existing, law, rule, regulation, interpretation, or decision, the result of which would render Deloitte Tax's performance of any part of the Contract illegal or otherwise unlawful or in conflict with independence or professional rules; or (ii) circumstances change (including, without limitation, changes in ownership of the Client or of its affiliates) so that Deloitte Tax's performance of any part of the Contract would be illegal or otherwise unlawful or in conflict with independence or professional rules.

(d) Upon termination of the Contract or any Work Order hereunder for any reason, the Client will compensate Deloitte Tax in accordance with the terms of the Contract for the Services performed and expenses incurred through the effective date of termination.

(e) Termination of any part of the Contract shall not affect the remainder of the Contract. These General Business Terms shall continue to apply to any Work Order in force that has not itself been terminated in accordance with the provisions of Paragraphs 4(a), (b) or (c).

5. Ownership of Deloitte Property & Work Products.

(a) To the extent that any property (whether tangible or intangible) of any Deloitte Entity is used or developed in connection with this Contract, such property, including work papers, shall remain the property of the relevant Deloitte Entity. Subject to payment of all of Deloitte Tax's fees due in connection with the Services and this Contract, the Client shall obtain a perpetual, royalty-free, non-exclusive, non-transferable license to use any Advice for the purpose set out in the Contract (or in the Advice) and in compliance with the provisions of this Contract. Deloitte Tax shall have ownership (including, without limitation, copyright and other intellectual property ownership) of the Advice and all rights to use and disclose its ideas, concepts, know-how, methods, techniques, processes and skills, and adaptations thereof in conducting its business, and the Client shall ensure that it and its subsidiaries and/or affiliates do not assert or cause to be asserted against any Deloitte Entity any prohibition or restraint from so doing. Any intellectual property and other proprietary rights in the material and data provided by the Client for performing the Services shall remain the property of the Client.

(b) Deloitte Tax and its Subcontractors, in connection with performing the Services, may develop or acquire general experience, skills, knowledge and ideas. Any Deloitte Entity may use and disclose such experience, skills, knowledge and ideas subject to the obligations of confidentiality set out in Paragraph 10.

(c) The Client shall also be entitled to have access to and use of those Deloitte Technologies supplied solely for the purposes of receiving the Services, and for no other purposes, in accordance with and subject to the provisions of the terms of use and licenses that may be applicable to such Deloitte Technologies as notified by Deloitte Tax and agreed by the Client (acting reasonably). Client shall be responsible for all personnel (including other third parties, such as advisors) that Client and Deloitte Tax have agreed shall have access to the Deloitte Technologies in connection with the Services. As between the Client and Deloitte Tax, and for the benefit of the respective Deloitte Entity owning the Deloitte Technologies, Deloitte Tax and/or the respective Deloitte Entity will own and retain ownership of all intellectual property rights and other proprietary rights of any kind in the Deloitte Technologies that are used or developed in connection with this Contract.

(d) To the extent any Deloitte Technologies provided to Client hereunder constitute inventory within the meaning of section 471 of the Internal Revenue Code, such Deloitte Technologies are licensed to Client by Deloitte Tax as agent for Deloitte Tax Products Company LLC on the terms and conditions contained herein. The rights granted in this Paragraph 5 do not apply to any intellectual property that is subject to a separate mutually executed license agreement between Client and any third party (including Deloitte Tax's affiliates).

(e) "Deloitte Technologies" means all know-how and software, system interfaces, templates, methodologies, ideas, concepts, techniques, tools, processes, Content and technologies, including cloud-based technologies and algorithms owned by, licensed to or developed by any Deloitte Entity and used by Deloitte Tax and its Subcontractors in performing the Services or its other obligations.

6. Limitations on Damages.

(a) Deloitte Tax shall not be liable to the Client for any claims, liabilities, losses, damages, costs or expenses arising under or in connection with the Contract ("Claims") for an aggregate amount in excess of the fees paid under the Contract, or the fees paid under a particular Work Order for Claims arising under such Work Order, by the Client to Deloitte Tax, for that part of the Services giving rise to the Claim, except to the extent it is finally determined to have resulted primarily from the intentional fraud, intentional misconduct or bad faith of Deloitte Tax, any Deloitte Entity or any Subcontractor retained for providing the Services to the Client.

(b) In no event shall any Deloitte Entity (including Deloitte Tax and its Subcontractors) be liable whether in contract, tort or otherwise for any losses incurred as a result of loss of use, contracts, data, goodwill, revenues or profits (whether or not deemed to constitute direct Claims) or any consequential, special, indirect, incidental, punitive or exemplary loss, damage, or expense arising under or in connection with the Contract.

(c) In circumstances where all or any portion of the provisions of this Paragraph 6 are finally determined to be unavailable, the aggregate liability of Deloitte Tax, any other Deloitte Entity (including Subcontractors) and their respective personnel for any Claim shall not exceed an amount which is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim.

(d) Deloitte Tax's responsibility for the Services is solely toward the Client identified in the Contract or Advice to be entitled to rely on the Services, and not toward any other subsidiary or affiliate of the Client. If more than one Client subsidiary or affiliate is a party to the Contract or is identified in the Contract, Deloitte Tax's responsibility is solely toward the Client for whose benefit the Services were provided.

(e) The liability cap in Paragraph 6(a) applies in aggregate to each and all Claims which from time to time arise under or in connection with the Contract and the Services, whether such Claims are made at the same or different times or by the Client entity and/or other persons. The liability cap in Paragraph 6(a) also applies to any and all Claims against any other Deloitte Entities, including the Subcontractors, if and only to the extent that it is judicially determined that any of them have any liability under or in connection with the Contract or the Services.

(f) If the liability exclusion for other Deloitte Entities provided in Paragraph 1(d) is for any reason not effective, then the limitations on liability provided for in this Paragraph 6 shall apply to the other Deloitte Entities (including Subcontractors) as if they were named therein.

(g) The provisions of Paragraph 6 shall not apply to any liability which by the governing law of the Contract is unlawful to limit or exclude.

7. Limitation on Warranties.

THIS IS A SERVICES AGREEMENT. DELOITTE TAX WARRANTS THAT IT SHALL PERFORM THE SERVICES IN GOOD FAITH AND WITH DUE PROFESSIONAL CARE AND SKILL. TO THE FULLEST EXTENT PERMITTED BY LAW, DELOITTE TAX DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

8. Force Majeure.

Neither party shall be liable for any delays or nonperformance resulting from circumstances or causes beyond its reasonable control, including, without limitation, acts or omissions or the failure to cooperate by the other party (including, without limitation, entities or individuals under its control, or any of their respective officers, directors, employees, other personnel and agents), fire or other casualty, act of God, epidemic, strike or labor dispute, war or other violence, or any law, order, or requirement of any governmental agency or authority.

9. Limitation on Actions.

No action, regardless of form, relating to the Contract or the Services, may be brought by either party more than two years after the cause of action has accrued under applicable law, except that an action for non-payment of Deloitte Tax's invoices by the Client may be brought at any time.

10. Confidentiality.

(a) To the extent that, in connection with the Contract, Deloitte Tax comes into possession of any tax or other information related to the Services, trade secrets or other proprietary information relating to the Client which is either designated by the disclosing party as confidential or is by its nature clearly confidential ("Confidential Information"), Deloitte Tax shall not disclose such Confidential Information to any third party without the Client's consent. The Client hereby consents to Deloitte Tax disclosing such Confidential Information (i) to contractors for use in providing administrative, infrastructure, hosting, cloud-based solutions and other support services to Deloitte Tax, as well as to any Deloitte Entity (including any Subcontractors) and their respective personnel, in any case, whether located within or outside of the United States, provided that such contractors and Subcontractors adhere to confidentiality obligations similar to those in this Paragraph 10; (ii) to Client's legal advisors, auditors, and insurers; and (iii) as may be required by law, regulation, judicial or administrative process, or in accordance with applicable professional standards, or in connection with potential or actual mediation, arbitration or litigation. To the extent permitted by applicable law or regulation, Deloitte Tax shall provide the Client with prompt written notice of disclosures required by law, regulation, judicial or administrative process. The obligation of confidentiality shall not apply to the extent such Confidential Information (A) is or becomes publicly available (including, without limitation, any information filed with any governmental agency and available to the public) other than as the result of a breach by Deloitte Tax; (B) becomes available to any Deloitte Entity on a non-confidential basis from a source other than the Client which Deloitte Tax reasonably believes is not prohibited from disclosing such Confidential Information to Deloitte Tax by an obligation of confidentiality to the Client; (C) is known by any Deloitte Entity prior to its receipt from the Client without any obligation of confidentiality; or (D) is developed by any Deloitte Entity independently of Confidential Information disclosed by the Client.

(b) The Client shall not disclose to any third party any Advice without the express written consent of Deloitte Tax, except (i) disclosure may be made to the extent mandatory laws, applicable regulations, rules and professional obligations prohibit limitations on disclosure; (ii) if the Client or its affiliates have securities registered with the United States Securities and Exchange Commission and any Deloitte Entity is the auditor of the Client or any of its affiliates, in which case no restrictions or limitations are placed by Deloitte Tax on the Client's disclosure of the tax treatment or tax structure associated with the tax Services or transactions described in the Contract and the Client acknowledges that none of its other advisors has imposed or will impose restrictions or limitations with such tax treatment or tax structure; (iii) to the extent the United States Internal Revenue Code and applicable Internal Revenue Service guidance relating to confidential tax shelters (or comparable law or guidance from other taxing authorities in other jurisdictions) apply, in which case there are no restrictions or limitations on the disclosure of the tax treatment or tax structure; (iv) to the extent legislation

or regulations of any jurisdiction provide for the reporting to the tax authorities of certain tax arrangements or transactions, there shall be no restrictions or limitations on the disclosure of any such arrangements or transactions provided as part of the Advice; (v) the Client may disclose the Advice on a need to know basis to any affiliate that is not a member of the Client for information purposes only, provided that the Client ensures and the recipient undertakes to keep such Advice confidential and not to bring any claim of any kind against any Deloitte Entity in relation to the Advice or the Services; and (vi) on a need to know basis to statutory auditors of the Client in their capacity as such.

(c) The Client shall use the Advice, solely for the purposes specified in the Contract or Advice and, without limitation, shall not, without the prior written consent of Deloitte Tax, use any Advice, in connection with any business decisions of any third party or for advertisement purposes. All Services are intended only for the benefit of the Client identified in the Contract or Advice as being entitled to rely on the Advice. The mere receipt of any Advice (or any information derived therefrom) by any other persons is not intended to create any duty of care, professional relationship or any present or future liability of any kind between those persons and Deloitte Tax.

11. Assignment.

Neither party may assign or otherwise transfer this Contract without the prior express written consent of the other. Neither party will directly or indirectly agree to assign or transfer to a third party any Claim against the other party arising out of this Contract.

12. Indemnification.

The Client shall indemnify and hold harmless Deloitte Tax, and any other Deloitte Entity from all third-party Claims, except to the extent finally determined to have resulted primarily from the intentional fraud, intentional misconduct or bad faith of Deloitte Tax, or any other Deloitte Entity. In circumstances where all or any portion of the provisions of this paragraph are finally determined to be unavailable, the aggregate liability of Deloitte Tax and all other Deloitte Entities (including their respective personnel) for any Claim shall not exceed an amount which is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim.

13. Electronic Communications.

(a) Except as instructed otherwise in writing, Deloitte Entities and the Client are authorized to receive properly addressed fax, e-mail (including e-mails exchanged via Internet media) and voicemail communication for both sensitive and non-sensitive documents and other communications concerning this Contract, as well as other means of communication used or accepted by the other. Deloitte Entities may also communicate electronically with tax and other authorities.

(b) It is recognized that the internet is inherently insecure and that data can become corrupted, communications are not always delivered promptly (or at all) and that other methods of communication may be appropriate. Electronic communications are also prone to contamination by viruses. Each party will be responsible for protecting its own systems and interests and, to the fullest extent permitted by law, will not be responsible to the other on any basis (contract, tort or otherwise) for any loss, damage or omission in any way arising from the use of the internet or from access by any Deloitte Entity personnel to networks, applications, electronic data or other systems of the Client.

14. Other Clients.

Nothing in this Contract will prevent or restrict any Deloitte Entity, including Deloitte Tax, from providing services to other clients (including services which are the same or similar to the Services) or using or sharing for any

purpose any knowledge, experience or skills used in, gained or arising from performing the Services subject to the obligations of confidentiality set out in Paragraph 10 even if those other clients' interests are in competition with the Client. Also, to the extent that Deloitte Tax possesses information obtained under an obligation of confidentiality to another client or other third party, Deloitte Tax is not obliged to disclose it to the Client, or use it for the benefit of the Client, however relevant it may be to the Services.

15. Staff.

Deloitte Tax and the Client each agree not to directly or indirectly solicit, employ or engage any personnel of the other party who within six (6) months of such action has been involved directly with the provision of the Services or otherwise directly connected with this Contract, except where an individual responds directly to a general recruitment campaign.

16. Destruction of Working Papers.

Deloitte Tax may retain copies of documents and files provided by the Client in connection with the Services for purposes of compliance with professional standards and internal retention policies. Any documents and files retained by Deloitte Tax on completion of the Services subject to the obligations of confidentiality set forth in Paragraph 10(a) (including documents legally belonging to the Client) may routinely be destroyed in accordance with Deloitte Entities' policies applying from time to time.

17. Marketing Material & Use of Name.

Neither the Deloitte Entities nor the Client shall use the other's name, trademarks, service marks, logos, and/or branding in external publicity material without such other party's prior written consent.

18. Spreadsheets, Models and Tools.

In the course of providing the Services, Deloitte Tax may make reference to spreadsheets, models or tools (together "Models") that the Client provides to Deloitte Tax or requests Deloitte Tax to rely upon ("Client Models") or that Deloitte Tax otherwise uses in connection with the Services ("Deloitte Models"). All Models have limitations and may not produce valid results for all possible combinations of input data with the result that actual and potential errors are not detected. Unless otherwise expressly agreed in the Contract: (i) Deloitte Tax will not be responsible for reviewing, testing or detecting any errors in any Client Models; (ii) no Deloitte Model will be provided or treated as Advice; and (iii) where Deloitte Tax provides any Deloitte Model by way of explanation or illustration of any Advice, Deloitte Tax makes no representation, warranty or undertaking (express or implied) of any kind about the accuracy, suitability or adequacy of any such Deloitte Model for the Client's own needs.

19. Data Protection.

(a) Definitions:

"Personal Information" means any information received from, or on behalf of, Client by Deloitte Tax in its performance of the Services that is capable of individually identifying a natural person or otherwise defined as "personal information" under applicable privacy laws.

"Personal Information Breach" means Deloitte Tax's confirmation of unauthorized access to, or unauthorized use or disclosure of, Personal Information under Deloitte Tax's possession or control that compromises the security, confidentiality or integrity of such Personal Information.

"Process", "Processed" or "Processing" means any operation or set of operations performed on Personal Information, such as accessing, obtaining, storing, retaining, selling, sharing, combining, transmitting, using, maintaining, disclosing or disposing of Personal Information.

(b) Deloitte Tax Obligations. Deloitte Tax shall comply with the privacy laws applicable to it in connection with the performance of the Services. Deloitte Tax shall only Process Personal Information in connection with its performance of the Services, or as otherwise permitted under the Contract or as required by applicable law or professional standards. Taking into account the nature of the Personal Information being Processed, Deloitte Tax shall have in place reasonable technical and organizational measures designed to (i) provide a level of security appropriate to the risks, and (ii) assist Client in responding to consumer rights requests. Upon written request, Deloitte Tax shall make available information with respect to Deloitte Tax's Processing of Personal Information to: (x) demonstrate Deloitte Tax's compliance with its obligations under this Paragraph 19, which may take the form of an independent third-party certificate or audit report, or other relevant documentary information; and (y) reasonably cooperate with Client in fulfilling its obligations under applicable privacy laws, such as responding to Personal Information requests of individuals, maintaining the security of Personal Information, conducting privacy impact assessments, and consulting with applicable regulatory authorities. Unless otherwise required in connection with the Services, Deloitte Tax agrees that it will not re-identify any de-identified data it receives from or on behalf of Client. Deloitte Tax agrees that, upon written notice, Client may take reasonable and appropriate steps to stop and remediate Deloitte Tax's unauthorized use of Personal Information. Deloitte Tax will notify Client, to the extent required by law, if Deloitte Tax makes a determination that it can no longer meet its obligations with respect to Personal Information under applicable privacy laws. To the extent required by applicable privacy law, Deloitte Tax certifies that it understands and agrees to comply with its privacy obligations set forth herein.

(c) Personal Information Breach Notification. In the event of a Personal Information Breach, Deloitte Tax shall promptly and within any timeframe governing Deloitte Tax's notification obligation under applicable law inform Client's primary business contact for the Services of such Personal Information Breach and shall provide to Client additional information relating to the Personal Information Breach reasonably requested by Client, to the extent then known by Deloitte Tax, including information required for Client to provide any notices required by applicable law.

(d) Subprocessors. Deloitte Tax shall require that its personnel and subprocessors which Process Personal Information are subject to duties of confidentiality consistent with these terms. Deloitte Tax may not use subprocessors to Process Personal Information without the prior written consent of Client. Client hereby consents to the Processing of Personal Information by the following subprocessors: (i) Subcontractors and (ii) contractors to the extent necessary in connection with their provision of ancillary administrative, infrastructure and other support services to Deloitte Tax. Deloitte Tax shall enter into a written contract with each of its subprocessors consistent with the privacy obligations in this Paragraph 19.

(e) Deletion or Return of Personal Information. Upon Client's written request, Deloitte Tax shall delete or return Personal Information that it maintains. Notwithstanding the foregoing, Deloitte Tax shall have the right to retain copies of such Personal Information to the extent required by applicable law or professional standards, provided that Deloitte Tax complies with the privacy obligations in this Paragraph 19.

(f) Description of Processing. See the attached Appendix, Annex I, Section B (Description of Transfer) for details on Deloitte Tax's Processing of Personal Information under this Contract.

(g) Each party shall comply with its respective obligations under the applicable privacy and data protection laws to the extent that, in connection with the Contract and the Services, a party stores, processes and transfers any Personal Information.

(h) The Client confirms that it has obtained all legally required authorizations to disclose and/or transfer any Personal Information to Deloitte Tax and its Subcontractors, including across borders and outside the territory of the European Economic Area ("EEA").

(i) Deloitte Tax collects data directly from the Client, other Deloitte Entities, third parties and the data subject directly. Deloitte Tax may for purposes of the collection, use, storage or processing thereof, transfer the Client's and/or the data subject's Personal Information to: (i) an administrative contractor, including the use of cloud-based solutions; (ii) another country for legitimate purposes; (iii) another Deloitte Entity.

(j) The provisions of 19(k) and 19(l) of this Paragraph 19 and Paragraphs 19.1 and 19.2 shall apply, and the provisions of 19(a) through 19(f) of this Paragraph 19 shall not apply, in each case, only to the extent that Deloitte Tax processes Personal Information in or transferred from the EEA in its performance of the Services and the EU General Data Protection Regulation 2016/679 ("GDPR") applies to Deloitte Tax.

(k) In this Paragraph 19, "Data Protection Legislation" means GDPR, together with all other applicable legislation relating to privacy or data protection including any statute or statutory provision which amends, extends, consolidates or replaces the same. The terms "personal data" (also referred to herein as "Personal Data"), "data subject," "controller," "processor" and "process" (and its derivatives) shall have the meanings given to them in the Data Protection Legislation.

(l) The parties acknowledge that certain of the Services may be performed by Deloitte Tax acting as a controller and certain Services may be performed by Deloitte Tax acting as a processor. The Contract shall identify whether it is the understanding of the parties that Deloitte Tax carries out the particular Services as a controller or a processor. In the absence of any such indication, the capacity in which Deloitte Tax acts shall be determined in accordance with the Data Protection Legislation. When acting as a controller, the provisions of Paragraphs 19(g) to (l) and Paragraph 19.1 shall apply. When acting as a processor, the provisions of Paragraphs 19(g) to (l) and Paragraph 19.2 shall apply. Where Deloitte Tax acts as a processor, the Contract shall set out the scope of the processing carried out by Deloitte Tax in relation to the Services.

### 19.1 If Deloitte Tax Is Acting As Data Controller

(a) Each of the Client and Deloitte Tax shall be considered to be a controller in respect of Personal Data disclosed to Deloitte Tax by or on behalf of the Client and processed in connection with the Contract and the Services and each of the Client and Deloitte Tax shall comply with its obligations as a controller under the Data Protection Legislation in respect of Personal Data processed by it in connection with the Contract and the Services.

(b) In addition, the Client acknowledges that Deloitte Tax may process Personal Data as a controller for the purpose of, or in connection with the Services to comply with: (i) applicable legal, professional or regulatory requirements; (ii) requests and communications from competent authorities as permitted by law; and (iii) administrative, financial accounting, risk analysis, client relationship and other reasonable business purposes.

(c) The Client shall collect any necessary permission, provide any necessary notice and do all such other things as are required under the Data Protection Legislation in order for it to disclose Personal Data to Deloitte Tax for the purposes described in Paragraph 19.1(b) and such other purposes as may be described in the Contract.

(d) Deloitte Tax shall process the Personal Data as reasonably required to provide the Services, meet its legal or regulatory obligations or for its other reasonable business purposes (including quality control and administration) and may disclose Personal Data to any third parties including its Subcontractors, regulators and any party based in any jurisdiction including a jurisdiction outside the EEA provided that such disclosure is reasonably required in connection with such purposes and is at all times in compliance with the Data Protection Legislation that applies to Deloitte Tax in its performance of the Services.

19.2 If Deloitte Tax Is Acting As Data Processor

(a) Where Deloitte Tax may process Personal Data as a processor Deloitte Tax shall: (i) only process Personal Data: (A) to the extent necessary to provide the Services; (B) in accordance with the specific reasonable instructions of the Client (except to the extent, in the reasonable opinion of Deloitte Tax, such instructions infringe the Data Protection Legislation or other applicable law, in which case Deloitte Tax shall notify the Client); or (C) as required by any competent authority or law that applies to Deloitte Tax in its performance of the Services; (ii) implement appropriate technical and organizational measures designed to provide a level of security appropriate to the risk relating to its processing of the Personal Data and any security measures specified in the Contract; (iii) keep, and require that its personnel and agents keep, Personal Data confidential in accordance with Deloitte Tax's confidentiality obligations contained in Paragraph 10(a); (iv) notify the Client in writing without undue delay, and provide reasonable cooperation after becoming aware of a personal data breach (that is, a breach of security leading to the accidental or unlawful destruction, loss, alteration, unauthorized disclosure of, or access to, Personal Data processed by Deloitte Tax) relating to Personal Data in Deloitte Tax's possession or control; (v) provide reasonable cooperation and assistance to the Client in relation to any request by a data subject to have access to Personal Data held about them or in relation to a reasonable request, allegation or complaint by a competent authority or data subject, including notifying the Client in writing without undue delay of receipt of any such request (except to the extent prevented from doing so by applicable law); (vi) be entitled to recover any reasonable costs incurred in complying with Paragraph 19.2(a)(v) above, or as result of assisting the Client in meeting its obligations under the Data Protection Legislation; and (vii) subject to applicable legal, professional or regulatory requirements or business practices, at the reasonable request of the Client, delete or return all Personal Data to the Client on termination or expiry of the Contract and in such circumstance the provisions of Paragraph 19.1 apply.

(b) To the extent required by Data Protection Legislation applicable to Deloitte Tax in its performance of the Services, Deloitte Tax shall maintain a record of its processing activities and provide such cooperation and information to the Client as is reasonably necessary for the Client to demonstrate compliance with its obligations pursuant to Data Protection Legislation. Such cooperation shall include permitting the Client, at the Client's sole cost and expense, to audit Deloitte Tax's compliance with this Paragraph 19.2 provided that (unless expressly required otherwise by any competent authority): (i) reasonable notice of not less than thirty (30) days is given of any proposed audit and the parties shall, acting reasonably, agree to the scope and parameters of any such audit; (ii) to the extent the audit scope is covered in any audit carried out for Deloitte Tax by an independent third party auditor within twelve (12) months prior to the Client's audit request and there have been no material changes to the controls audited, Deloitte Tax may share the report to the extent relevant to the Client and the disclosure of such report shall be deemed to satisfy the audit request made by the Client; (iii) where, acting reasonably, a specific audit is still required by the Client, such audit shall be conducted during regular business hours, subject to Deloitte Tax's policies and confidentiality requirements and may not unreasonably interfere with Deloitte Tax's business activities; (iv) the audit shall be subject to Deloitte Tax's duties of confidentiality owed to any of its clients, personnel or other parties; and (v) the rights granted in this Paragraph 19.2(b) may not be conducted more than once in any calendar year.

(c) The Client authorizes Deloitte Tax to use any Subcontractor, including any Deloitte Entity, to process Personal Data as a subprocessor of Deloitte Tax provided that Deloitte Tax shall (i) procure that such processing

is subject to a written contract or other legal act with such subprocessor containing data protection obligations no less onerous than those set out in this Paragraph 19.2; and (ii) remain liable for the acts and omissions of any such subprocessor with respect to the processing of Personal Data to the same extent Deloitte Tax would be liable if it had caused such acts or omissions. Deloitte Tax's material subprocessors who have been engaged to perform Services for Client, if any, are listed in the Contract.

(d) Deloitte Tax shall be entitled to (i) transfer Personal Data to, and (ii) process Personal Data in, any jurisdiction including a jurisdiction outside the EEA, including to any Subcontractor, provided that such transfer is either permissible or legitimized by a valid transfer mechanism under Data Protection Legislation or as otherwise permitted under the Contract.

19.3 EU Standard Contractual Clauses.

To the extent that Personal Data is transferred from the EEA, Switzerland, or the United Kingdom to Deloitte Tax in a country that has not been designated as adequate by the relevant authorities in the EEA, Switzerland or the United Kingdom, and the transfer of Personal Data is not covered by an alternative transfer mechanism that is recognized by such relevant authorities as providing an adequate level of protection (such as Binding Corporate Rules), then the parties agree that Paragraphs 19 (a)-(f), 19.1, 19.2 (a), and 19.2 (c)-(d) of these General Business Terms shall not apply, and the parties agree to incorporate the EU Standard Contractual Clauses pursuant to EU Commission Decision 2021/914/EU (the "Clauses") by reference into the Contract in accordance with the terms below:

(a) in the event both parties are controllers, Module 1 shall apply, in the event Client is a controller and Deloitte Tax is a processor, Module 2 shall apply, and in the event both parties are processors, Module 3 shall apply;

(b) Clause 7 of the Clauses does not apply;

(c) the option in Clauses 11a of the Clauses does not apply;

(d) before disclosing a copy of the Clauses per Clause 8.3 of the Clauses, the disclosing party must redact all commercial terms including without limitation liability terms, Annex II, and any other detailed security terms;

(e) the references to local law in the Clauses include applicable professional standards;

(f) to the extent Modules 2 and 3 apply, per Clause 9(a) of the Clauses, Client hereby provides, or has obtained from the controller, a general authorization for the processing of Personal Data as set forth in Paragraph 19(i) above and by any other Subcontractor, and Deloitte Tax shall specifically inform Client in writing of any intended changes through the addition or replacement of sub-processors at least 10 days in advance;

(g) to the extent Module 3 applies, Client shall, on behalf of Deloitte Tax, communicate with controller with respect to matters that require communication to controller per Clause 9 of the Clauses;

(h) to the extent Modules 2 and 3 apply, the parties choose Option 1 of Clause 17 of the Clauses;

(i) the Clauses shall be governed by the law of the country (i.e., the EU Member State, Switzerland or the United Kingdom) in which the data exporter is established;

(j) per Clause 18(b) of the Clauses, disputes arising under the Clauses shall be resolved in the courts of the same EU Member State;

(k) the audit provisions in the Clauses are subject to Paragraph 19.2(b) hereof;

(l) Annex I of the Appendix to this Contract shall serve as Annex I to the Clauses, and Annex II of the Appendix to this Contract shall serve as Annex II to the Clauses; and

(m) for the avoidance of doubt, any limitations of liability, including limitations on indemnities, set forth in the Contract apply with respect to liability arising under the Clauses.

(n) United Kingdom Addendum

To the extent that Personal Data is transferred from the United Kingdom to Deloitte Tax in a country that has not been designated as adequate by the relevant authorities in the United Kingdom, and the transfer of Personal Data is not covered by an alternative transfer mechanism that is recognized by such relevant authorities as providing an adequate level of protection (such as Binding Corporate Rules), then the parties agree to incorporate the UK ICO's International Data Transfer Addendum to the EU Commission Standard Contractual Clauses, Version B1.0, in force March 21, 2022 (the "UK Addendum") by reference into the Contract, subject to the following in accordance with the terms below:

(i) the UK Addendum is appended to the EU SCCs;

(ii) the information set forth in this Contract and the Annexes shall be used to complete Part 1 of the UK Addendum; and

(iii) data importer or data exporter may end the UK Addendum as set out in Paragraph 19 of the UK Addendum for convenience upon written notice to the other party.

## 20. Anti-corruption and Sanctions.

(a) Deloitte Tax understands that the Client may be subject to laws that prohibit bribery and/or providing anything of value to government officials with the intent to influence that person's actions in respect of the Client. Deloitte Tax may be subject to similar laws and codes of professional conduct and has its own internal policies and procedures which prohibit illegal or unethical behaviors. In providing the Services, Deloitte Tax undertakes not to offer, promise or give financial or other advantage to another person with the intention of inducing a person to perform improperly or to reward improper behavior for the benefit of the Client, in each case, in violation of applicable law.

(b) Each party shall comply with all economic sanctions, export control, and import laws and regulations applicable to it in (or having an impact on) providing and receiving the Services under this Contract. The parties recognize that such laws and regulations restrict the export and reexport of the Services and Deliverables to jurisdictions subject to territorial economic sanctions (currently, e.g., Russia).

## 21. Disclosure Laws.

The Deloitte Entities may be obligated to notify relevant authorities of certain types of arrangements and of proposals to implement such arrangements. The decision to make such a notification, its timing and content, is a matter that the Deloitte Entities reserve entirely to their sole discretion. The Deloitte Entities may also be obligated to notify those authorities of the participants in those arrangements. The Client may also have obligations under the same legislation to give notification of such arrangements. Where there are other current or future laws or regulations in any jurisdiction that require disclosure relevant to the Deloitte Entities Services,

the Deloitte Entities will also comply with those disclosure requirements. For the avoidance of doubt nothing in this Contract restricts the Client from disclosing any Deliverables or other Advice to any relevant authority.

22. Counterparts and Language.

This Contract may be signed in any number of counterparts (whether such counterparts are original or fax or in the form of a pdf attachment to an e-mail). Each signed counterpart shall be deemed to be an original thereof, but all the counterparts shall together constitute one and the same instrument. Where there are versions of the Contract in the English language and another language, in the event of any discrepancies between versions, the English language version shall prevail.

23. Entire Agreement, Modification and Effectiveness.

Nothing discussed prior to execution of the Contract induced, nor forms part of, the Contract except to the extent repeated in this Contract. This Contract supersedes any previous agreement, understanding or communication, written or oral, relating to its subject matter. No variation to the Contract shall be effective unless it is documented in writing and signed by authorized representatives of both parties, provided, however, that the scope of the Services may be changed by agreement of the parties in writing, including by e-mail or fax. If Deloitte Tax has already started work (e.g., by gathering information, project planning or giving initial advice) at the request of the Client then the Client agrees that this Contract is effective from the start of such work.

24. Survival and Interpretation and Third-Party Beneficiary.

(a) Any provisions of the Contract which either expressly or by their nature extend beyond the expiration or termination of this Contract shall survive such expiration or termination.

(b) If any provision of the Contract is found by a court of competent jurisdiction or other competent authorities to be unenforceable, in whole or in part, such provision or the affected part shall not affect the other provisions, but such unenforceable provision shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein. **Each of the provisions of the Contract or any Work Order shall apply to the fullest extent of the law, whether in contract, statute, tort (including without limitation negligence), or otherwise, notwithstanding the failure of the essential purpose of any remedy.** Any references herein to the term “including” shall be deemed to be followed by “without limitation”.

(c) Deloitte Entities are intended third-party beneficiaries of the Contract. Each such Deloitte Entity may in its own right enforce such terms, agreements and undertakings.

25. Governing Law and Submission to Jurisdiction.

This Contract, and all matters relating to it (including non-contractual obligations) shall be governed by, and construed in accordance with, the laws of the State of New York (without giving effect to the choice of law principles thereof). Any action or proceeding arising out of or relating to this Contract or the Services shall be brought and maintained exclusively in New York County, the State of New York. Subject to Paragraph 26, the parties hereby expressly and irrevocably: (i) submit to the exclusive jurisdiction of such courts for the purposes of any such action or proceeding and (ii) waive, to the fullest extent permitted by law, any defense of inconvenient forum to the venue and maintenance of such action in any such courts. Nothing in this paragraph will prevent either party, at any time before or after the dispute resolution procedures are invoked, from commencing legal proceedings to protect any intellectual property rights, trade secrets or confidential information or to preserve any legal right or remedy. **DELOITTE TAX AND THE CLIENT HEREBY IRREVOCABLY**

WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM RELATING TO THE CONTRACT.

26. Dispute Resolution.

The parties agree to attempt in good faith to resolve any dispute or claim arising out of or in connection with the Contract promptly through negotiations between senior management. If the matter is not resolved through negotiation, then either party may request that a good faith attempt is made to resolve the dispute or claim by participating in an Alternative Dispute Resolution ("ADR") procedure. If the dispute or claim has not been resolved within sixty (60) days of a request being made for reference to ADR, then legal proceedings may be commenced in respect of the matter. Nothing in this paragraph prevent either party, at any time before or after the dispute resolution procedures are invoked, from commencing legal proceedings to protect any intellectual property rights, trade secrets or confidential information or to preserve any legal right or remedy.

27. Third Parties and Internal Use.

Deloitte Tax acknowledges that Deloitte Tax has not placed any limitations on the Client's disclosure of the tax treatment or tax structure associated with the tax services or transactions described in the Contract. Nothing in this paragraph shall be construed as limiting or restricting disclosure of the tax treatment or tax structure of the transaction as described in Rule 3501(c)(i) of PCAOB Release 2005-014, or IRC sections 6011 and 6111 and related IRS guidance. The Client acknowledges that none of its other advisors have imposed or will impose any conditions of confidentiality with respect to the tax treatment or tax structure associated with the tax services or transactions described in the Contract. All Services shall be solely for the Client's informational purposes and internal use, and this engagement does not create privity between Deloitte Tax and any person or party other than the Client ("third party"). This engagement is not intended for the express or implied benefit of any third party. Unless otherwise agreed to in writing by Deloitte Tax, no third party is entitled to rely, in any manner or for any purpose, on the advice, opinions, reports, or other Services of Deloitte Tax. In the event of any unauthorized reliance, the Client agrees to indemnify and hold harmless Deloitte Tax and its personnel from all third-party claims, liabilities, costs and expenses.

*APPENDIX*

*ANNEX I*

A. LIST OF PARTIES

**Data exporter(s)**

1. Name: See first page of the Engagement Letter or applicable Work Order.

Address: See first page of the Engagement Letter or applicable Work Order.

Contact person's name, position and contact details: Individual signing the Engagement Letter or applicable Work Order on behalf of Client.

Activities relevant to the data transferred under these Clauses: See Annex I, Section B below and the Engagement Letter or applicable Work Order.

Signature and date: See signature to Engagement Letter or applicable Work Order.

Role (controller/processor): controller or processor

**Data importer(s)**

1. Name: Deloitte Tax LLP

Address: 30 Rockefeller Plaza, New York, NY 10112

Contact person's name, position and contact details: Individual signing the Engagement Letter or applicable Work Order on behalf of Deloitte Tax LLP.

Activities relevant to the data transferred under these Clauses: See Annex I, Section B below and the Contract and applicable Work Order.

Signature and date: See signature to Engagement Letter or applicable Work Order. Role (controller/processor): controller (global employment services, FATCA services and/or FBAR services) or processor (all other services).

B. DESCRIPTION OF TRANSFER

*Categories of data subjects whose personal data is transferred*

Employees of Client; dependents, beneficiaries, spouses, and domestic partners of employees of Client; and clients and customers of Client.

*Categories of personal data transferred*

All categories of personal data related to the Processing associated with the Services provided by Deloitte Tax for or on behalf of Client.

*Sensitive data transferred (if applicable) and applied restrictions or safeguards that fully take into consideration the nature of the data and the risks involved, such as for instance strict purpose limitation, access restrictions*

*(including access only for staff having followed specialized training), keeping a record of access to the data, restrictions for onward transfers or additional security measures.*

One or more of the categories of personal data revealing racial or ethnic origin, political opinions, religious or philosophical beliefs, or trade union membership, and the processing of genetic data, biometric data for the purpose of uniquely identifying a natural person, data concerning health or data concerning a natural person's sex life or sexual orientation. Applied restrictions and safeguards include limiting access to such personal data only to people who have a business need to access it, confidentiality training of our personnel, data minimization, and additional security measures set forth in Annex II.

*The frequency of the transfer (e.g., whether the data is transferred on a one-off or continuous basis).*

Continuous basis while Deloitte Tax is providing the Services.

*Nature of the processing*

Deloitte Tax processes personal data in the context of providing the Services to data exporter as further described in the Engagement Letter or applicable Work Order.

*Purpose(s) of the data transfer and further processing*

The purpose of the data transfer and further processing is to enable Deloitte Tax to provide the Services to Client as set forth in the Engagement Letter or applicable Work Order.

*The period for which the personal data will be retained, or, if that is not possible, the criteria used to determine that period*

While performing the Services and as required by applicable laws.

*For transfers to (sub-) processors, also specify subject matter, nature and duration of the processing*

Processing by (sub)-processors in support of Deloitte Tax related to the provision of the Services to data exporter as set forth in the Engagement Letter or applicable Work Order.

C. COMPETENT SUPERVISORY AUTHORITY

*Identify the competent supervisory authority/ies in accordance with Clause 13*

The supervisory authority/ies of the following countries:
The country where the data exporter is established.

*ANNEX II*

*TECHNICAL AND ORGANIZATIONAL MEASURES INCLUDING TECHNICAL AND ORGANIZATIONAL MEASURES TO ENSURE THE SECURITY OF THE DATA*

Description of the technical and organizational measures implemented by the data importer(s) (including any relevant certifications) to ensure an appropriate level of security, taking into account the nature, scope, context and purpose of the processing, and the risks for the rights and freedoms of natural persons.

*Please contact the Deloitte Tax engagement team for a copy of Deloitte's Information Security Statement dated May 20, 2024.*

# Deloitte Tax LLP Privacy Statement

Last revised: February 13, 2025

**Introduction**

This Privacy Statement explains what personal information we may collect about you in connection with our services engagement and how this personal information may be used and shared. This Privacy Statement also sets out your rights in relation to your personal information and tells you who you can contact if you have questions.

**To whom does this Privacy Statement apply and what does it cover?**

**This Privacy Statement applies to Deloitte Tax LLP (also referred to as "Deloitte Tax", "we", "us", and "our"), an entity within the Deloitte Network.** As used in this Privacy Statement, the "Deloitte Network" refers to one or more of Deloitte Touche Tohmatsu Limited, a UK private company limited by guarantee ("DTTL"), its network of member firms and their related entities. DTTL and each of its member firms are legally separate and independent entities. Please see deloitte.com/about for a detailed description of the legal structure of Deloitte Touche Tohmatsu Limited and its member firms.

This Privacy Statement sets out how we will process your personal information as part of our provision of tax, social security and (in certain jurisdictions outside of the United States) immigration related services as may be relevant to you. Deloitte Tax is providing these services either under a direct contract with you or via a contract with another person (such as a company or a partnership or a trustee) who has asked us to provide the services.

Your personal information will be protected and handled with consideration for its confidentiality and Deloitte Tax will only disclose it as set out in the "To whom will we disclose your personal information?" section below.

In this Privacy Statement, we refer to handling, collecting, protecting and storing your personal information as "processing".

**What personal information do we collect?**

Deloitte Tax may collect personal information relating to you such as:

- name
- contact details (such as work or home address, email and phone numbers)
- date of birth
- government identifiers (such as social security number and passport details)
- financial information
- calendar data (where applicable)

In order to provide services to you, Deloitte Tax may receive and also need to process personal information about you that may be considered special category (or "sensitive") personal information under certain U.S. State laws. Special category personal information includes information about your social security, driver's license, state identification card, or passport numbers; non-Deloitte account username or number or financial account, debit card, or credit card number in combination with credentials allowing access to such accounts; racial or ethnic origin; national origin; immigration or citizenship status; religious or philosophical beliefs; trade union membership; genetic or biometric data; precise geolocation; political opinions; status as victim of a crime; medical or health conditions/status (including data related to pregnancy, abortion, or reproductive or sexual health); researching, obtaining, or seeking gender affirming health care, or reproductive or sexual health services; status as transgender or non-binary; or sex life or sexual orientation. Special category personal information also includes the contents of your personal mail, email, or text messages unless we are the intended recipient. Special category personal information about you includes information that may be reasonably inferred from other information that we receive.

Where we receive special category personal information or other information from which special category personal information can be reasonably inferred, we will, where required by law, obtain your explicit consent in order to process it.

**How do we collect personal information?**

Deloitte Tax may collect personal information about you in different ways:

- you may provide it directly to us
- we may obtain it because of the services that Deloitte Tax provides or has previously provided
- we may receive it from other members of the Deloitte Network or from third parties, such as your employer/partnership, or a tax authority and/or other relevant authority/administrative bodies
- we may observe or infer it from the information you provide to us and/or the way you interact with us

This personal information can be received in any manner, including in-person discussions, telephone conversations, and electronic or other written communications.

Without access to all the personal information that we need, we may be unable to provide or complete the services.

Where another party (such as a company or a partnership or any third parties acting on your or their behalf) provides your personal information to us, they must also comply with their obligations under the relevant privacy laws and regulations. If you believe that the entity for which you work or other third party has not provided you with details of the personal information that it holds about you and/or has not obtained your authority to provide us with that personal information for processing as described in this Privacy Statement, then please contact such entity directly.

**How do we use your personal information?**

Deloitte Tax processes personal information about you to:

- establish or maintain our relationship with you
- provide services to you and/or your family member(s) or to the entity that has engaged us to provide the services

We may also use your personal information for the purposes of, or in connection with:

- compliance with applicable legal, regulatory or professional requirements
- protecting our rights and/or property

**Do we sell your personal information?**

We do not sell your personal information.

**How long will we keep your information?**

We retain your personal information for as long as the information is reasonably needed for the purposes described in this Privacy Statement. We also may retain your personal information to comply with our legal or professional obligations, enforce our agreements, or resolve disputes.

**To whom will we disclose your personal information?**

In connection with one or more of the purposes outlined in this Privacy Statement, we may disclose your personal information to:

- other members of the Deloitte Network
- those with whom you have requested us to share information, such as your spouse or civil partner
- competent authorities, including courts and authorities regulating us or another member of the Deloitte Network, in each case to comply with legal, regulatory or professional obligations or requests
- vendors and administrative, support, infrastructure and other service providers handling your information on our behalf; in each case, such vendors and service providers will be contractually bound by confidentiality and privacy obligations consistent with the obligations in this Privacy Statement
- third parties to whom we disclose information in the course of providing services to you or to the entity that has engaged us to provide the services

Any personal information that we have referenced above under "What personal information do we collect?" may be disclosed to the third parties identified in this section for the purposes set forth herein.

Please note that some of the recipients of your personal information referred to above may be based in countries or regions without data protection rules similar to those in effect in your area of residence. In such cases, adequate safeguards will be in place to protect your personal information.

For further details about the transfers described above and the adequate safeguards used by Deloitte Tax with respect to such transfers, please contact us using the details below.

**Disclosing personal information to us relating to third parties**

If any personal information which you provide to us relates to any third party, for example a spouse or civil partner, individuals (including children) who depend on you financially, or a joint account holder or a beneficiary or trustee of a trust, then by providing us with their personal information you will need to ensure that you have obtained any necessary permissions from those persons to the use of their personal information in the way set out in this Privacy Statement, or you are otherwise permitted to give us this personal information. You should share a copy of this Privacy Statement with those other individuals before disclosing any personal information about them to us.

© 2025 For information, contact Deloitte Touche Tomatsu Limited.

# Deloitte Tax LLP Privacy Statement

Last revised: February 13, 2025

**On what basis do we process personal information about you?**

This Privacy Statement sets out the grounds upon which we rely in order to process your personal information.

We may use your personal information for the purposes outlined above because:

- where relevant, we have a contract with you to provide services and processing your personal information is necessary for the performance of such contract; or
- we have a legitimate interest in processing your personal information, which may be to:
  - provide services to you and/or to the entity that has engaged us to provide the services;
  - support the management of our client engagements;
  - evaluate, develop or improve our services or products; or
  - protect our business interests; or
- we are subject to legal, regulatory or professional obligations which require the processing of your personal information.

**What are your rights in relation to your personal information?**

You may have various rights in relation to your personal information. In particular, you have a right to:

- obtain confirmation that we are processing your personal information and request a copy of the personal information we hold about you
- ask that we update the personal information we hold about you, or correct such information that you think is inaccurate or incomplete

Depending on the jurisdiction in which you are located, you may also have the right to:

- ask that we delete personal information that we hold about you, or restrict the way in which we use your personal information
- withdraw consent to our processing of your personal information (to the extent our processing is based on your consent)
- ask us to stop or start sending you marketing messages at any time
- obtain and/or move your personal information to another service provider
- object to our processing of your personal information
- request that we provide the following information regarding the personal information we hold about you:
  - The categories and/or specific pieces of personal information we collected
  - The categories of sources from which personal information is collected
  - The business or commercial purpose for collecting personal information
  - The categories of third parties with whom we shared personal information

Where our processing of special category personal information is reliant on your consent and you withdraw that consent, we will cease processing the relevant information for the purposes of providing our services and the effect may be that we are no longer able to provide the services.

However, we may still retain a copy of the relevant information for as long as necessary to comply with applicable laws or professional standards, or as long as the period in which litigation or investigations might arise in respect of our services.

To exercise any of your rights under applicable law described above regarding your personal information, complete our Personal Information Request Form (https://datasubject.deloitte.com/) or call us at this toll-free number +1.844.919.0711. When calling us, please provide your full name, mailing address, email address, and the specific type of request you are making. You may also have a right to appeal a denial of your request by completing the Personal Information Request Appeal Form (https://datasubject.deloitte.com/appeal-form).
For individuals in the EU, Switzerland and the United Kingdom, you may contact your European, Swiss or United Kingdom data protection authority regarding our processing of your personal information.

We will not discriminate against you for exercising any of your rights with respect to your personal information.

**How do we verify your identity when you submit a data subject request?**

For certain personal information requests, we must first verify your identity before processing your request. To do so, we may ask you to provide us with your full name, contact information, and relationship to Deloitte. Depending on your request, we may ask you to provide additional information. Once we receive this information, we will then review it and determine whether we are able to match it to the information Deloitte maintains about you to verify your identity.

**How do we process third party requests?**

If you are submitting a personal information request on behalf of someone other than yourself, please complete our Personal Information Request Form (https://datasubject.deloitte.com/) and include proof that you are authorized to make the request. This may be in the form of a written authorization signed by the person whom you are acting on behalf of or a valid power of attorney.

**Data Privacy Framework Notice**

Deloitte LLP and its United States affiliates, including Deloitte Tax, comply with the EU-U.S. Data Privacy Framework and the UK Extension to the EU-U.S. Data Privacy Framework and the Swiss Data Privacy Framework as set forth by the U.S. Department of Commerce (each, a "Data Privacy Framework") with respect to personally identifiable information that is transferred from the European Economic Area, the United Kingdom and Switzerland to the United States within the scope of their Data Privacy Framework certifications. To learn more, see our Data Privacy Framework Notice (https://www2.deloitte.com/us/en/footerlinks1/privacy-shield.html).

**Washington State Consumer Health Data Privacy Policy**

For information about how we use consumer health data that is subject to the Washington State My Health My Data Act, see our Washington State Consumer Health Data Privacy Policy (https://www2.deloitte.com/us/en/footerlinks1/wa-consumer-health-data-privacy-policy.html).

**How do we keep your personal information secure?**

We have in place reasonable commercial standards of technology and operational security to protect your personal information from loss, misuse and unauthorized access, disclosure, alteration or destruction. Only authorized personnel, with appropriate awareness of privacy obligations, are provided access to your personal information.

**Changes to this Privacy Statement**

In addition to describing our current privacy practices, this Privacy Statement also describes the categories of personal information we collected, disclosed, or sold during the preceding 12 months. We may modify or amend this Privacy Statement from time to time at our discretion. When we make changes to this Privacy Statement, we will amend the revision date at the top of this page and the modified or amended Privacy Statement shall apply to you and your personal information as of that revision date. We encourage you to review the Privacy Statement on our website periodically to be informed about how we are protecting your personal information.

**Contact us**

If you have any questions or concerns regarding this Privacy Statement or your personal information, please contact our data protection officer by email at USPrivacyQuestions@deloitte.com or call us at **+1.844.919.0711**. Our European Union representative, Deloitte Tax EU Privacy Rep Limited, can be contacted by email at EURepresentative@deloitte.com.

© 2025 For information, contact Deloitte Touche Tomatsu Limited.

docusign

## Certificate Of Completion

Envelope Id: 54C3110C-FDB4-4216-8195-59CA3F84DFFE — Status: Completed

Subject: 25_CC_TY24 Compliance EL.docx

APPID: 1001

OriginalSender: hhollifield@deloitte.com

Source Envelope:

| | | |
|---|---|---|
| Document Pages: 27 | Signatures: 2 | Envelope Originator: |
| Certificate Pages: 5 | Initials: 0 | Deloitte Enterprise Document Management |
| AutoNav: Enabled | | Two Jericho Plaza 3rd Floor |
| EnvelopeId Stamping: Enabled | | ATTN: Accounts Payable |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | Jericho, NY 11753 |
| | | IP Address: 35.153.14.105 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original<br>9/10/2025 1:57:17 PM | Holder: Deloitte Enterprise Document Management | Location: DocuSign |

## Signer Events

| Signer Events | Signature | Timestamp |
|---|---|---|
| Helen Hollifield<br><br>Security Level:<br>.Email<br>ID: fddc4e00-c37c-41b3-b32e-60f3f523adbf<br>9/10/2025 1:57:21 PM | Helen Hollifield<br><br>Signature Adoption: Uploaded Signature Image<br>Using IP Address: 24.239.178.21 | Sent: 9/10/2025 1:57:19 PM<br>Viewed: 9/10/2025 1:57:25 PM<br>Signed: 9/10/2025 1:57:50 PM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 2/18/2021 6:36:12 AM<br>ID: aeded718-1bd4-4785-b7cb-a68efcbf92a6<br>Company Name: Deloitte | | |
| Clint Pete<br><br>CFO<br>Security Level: Email, Account Authentication (None) | Clint Pete<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 45.26.2.181 | Sent: 9/10/2025 1:57:55 PM<br>Viewed: 9/10/2025 4:38:41 PM<br>Signed: 9/11/2025 7:25:34 AM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 9/10/2025 4:38:41 PM<br>ID: eeecc2aa-8a10-431c-8fe3-b0bbf83400da<br>Company Name: Deloitte | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Chapin, Gina<br><br>Security Level: Email, Account Authentication (None) | COPIED | Sent: 9/11/2025 7:25:35 AM |

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

**Electronic Record and Signature Disclosure:**
Not Offered via Docusign

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 9/10/2025 1:57:19 PM |
| Certified Delivered | Security Checked | 9/10/2025 4:38:41 PM |
| Signing Complete | Security Checked | 9/11/2025 7:25:34 AM |
| Completed | Security Checked | 9/11/2025 7:25:35 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

**DISCLOSURE**
From time to time, Deloitte USA LLP, Deloitte LLP and their respective subsidiaries (collectively, “we”, “us” or “Company”) may be required by law to provide to you certain written notices or disclosures related to the use of DocuSign and/or electronic signatures (“Disclosures”). Described below are the terms and conditions for providing to you such Disclosures electronically through the DocuSign, Inc. (DocuSign) electronic signing system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to these terms and conditions, please confirm your agreement by clicking the 'I agree' checkbox.

**Getting paper copies**
At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after signing session and, if you elect to create a DocuSign signer account, you may access them for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.0000 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

**Withdrawing your consent**
If you decide to receive Disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required Disclosures only in paper format. How you must inform us of your decision to receive future Disclosures in paper format and withdraw your consent to receive Disclosures electronically is described below.

**Consequences of changing your mind**
If you elect to receive required Disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required Disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper Disclosures. To indicate to us that you are changing your mind, you must withdraw your consent using the DocuSign 'Withdraw Consent' form on the signing page of a DocuSign envelope instead of signing it. This will indicate to us that you have withdrawn your consent to receive required Disclosures electronically from us and you will no longer be able to use the DocuSign system to receive required Disclosures electronically from us or to sign electronically documents from us.

**All Disclosures will be sent to you electronically**
Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all Disclosures that are required to be provided or made available to you. To reduce the chance of you inadvertently not receiving any Disclosures, we prefer to provide all of the required Disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the Disclosures electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the Disclosures electronically from us.

**How to contact Deloitte:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive Disclosures electronically as follows:

**To advise Deloitte of your new e-mail address**

To let us know of a change in your e-mail address where we should send Disclosures electronically to you, you must send an email message to us at Deloitte Global eSignature Support and in the body of such request you must state: your previous e-mail address and your new e-mail address. We do not require any other information from you to change your email address. In addition, you must notify DocuSign, Inc. to arrange for your new email address to be reflected in your DocuSign account by following the process for changing e-mail in the DocuSign system.

**To request paper copies from Deloitte**

To request delivery from us of paper copies of the Disclosures previously provided by us to you electronically, you must send us an e-mail to Deloitte Global eSignature Support and in the body of such request you must state your e-mail address, full name, US Postal address, and telephone number.

**To withdraw your consent with Deloitte**

To inform us that you no longer want to receive future Disclosures in electronic format you may:

i. decline to sign a document from within your DocuSign session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an e-mail to Deloitte Global eSignature Support and in the body of such request you must state your e-mail, full name, US Postal Address, and telephone number. We do not need any other information from you to withdraw consent. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process.

**Required hardware and software**

| | |
|---|---|
| Operating Systems: | Windows® 2000, Windows® XP, Windows Vista®; Mac OS® X |
| Browsers: | Final release versions of Internet Explorer® 6.0 or above (Windows only); Mozilla Firefox 2.0 or above (Windows and Mac); Safari™ 3.0 or above (Mac only) |
| PDF Reader: | Acrobat® or similar software may be required to view and print PDF files |
| Screen Resolution: | 800 x 600 minimum |
| Enabled Security Settings: | Allow per session cookies |

** These minimum requirements are subject to change. If these requirements change, you will be asked to re-accept the disclosure. Pre-release (e.g. beta) versions of operating systems and browsers are not supported.

**Acknowledging your access and consent to receive materials electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic Disclosures that we will provide to you, please verify that you were able to read this electronic disclosure and that you also were able to print on paper or electronically save this page for your future reference and access or that you were able to e-mail this disclosure and consent to an address where you will be able to print on paper or save it for your future reference

and access. Further, if you consent to receiving Disclosures exclusively in electronic format on the terms and conditions described above, please let us know by clicking the 'I agree' button below.

By checking the 'I agree' box, I confirm that:

- I can access and read this Electronic CONSENT TO ELECTRONIC RECEIPT OF ELECTRONIC CONSUMER DISCLOSURES document; and
- I can print on paper the disclosure or save or send the disclosure to a place where I can print it, for future reference and access; and
- Until or unless I notify Deloitte as described above, I consent to receive exclusively through electronic means all Disclosures that are required to be provided or made available to me by Deloitte.

# Schedule 1

## Potential Parties-in-Interest List

| |
|---|
| Aaron Shum Jewelry Ltd. |
| Acceleration Partners, LLC |
| Accentuate Staffing Inc. |
| ACNielsen Corporation |
| Adobe Inc. |
| Adwar Casting Company |
| Affirm, Inc. |
| Afterpay US, Inc. |
| Agio Inc. |
| American Express Corp Services |
| American Express Travel Services |
| Ammante Jewells LLP |
| Anna Craven |
| Arctic Wolf Networks, Inc. |
| Arizona Dept. of Revenue |
| Art Tec Jewelry Designs LTD |
| Barcode Warehouse |
| BDO USA LLP |
| Beehive Industries Ltd. |
| Benjamin Fraknlin |
| Brex Treasury LLC |
| Broadridge ICS |
| Butler Advisors LLC |
| California Dept. of Revenue |
| Cannella Media, LLC |
| Canon Financial Services, Inc. |
| Charles & Colvard Direct, LLC |
| Charles & Colvard Ltd |
| Cherry Bekaert Advisory LLC |
| Cisco Systems, Inc. |
| CISION US INC |
| Citrix Systems, Inc. |
| ClickUp |
| Cloudnexa Inc. |
| Dcarbon Inc |
| Digital Media Innovations, LLC |
| Duc Pham |
| Ede Consulting |
| Equiniti Trust Company, LLC |

| |
|---|
| Essential Lab Grown Diamonds Inc. |
| Ethara Capital LLC |
| Evoqua Water Technologies, LLC |
| FactGlobal Private Limited |
| Federal Express Corporation |
| Feedonmics LLC |
| First Insurance Funding Corp |
| Flanagan Law, PLLC |
| Florida Dept. of Revenue |
| Fremada Gold Inc. |
| Genesys Cloud Services, Inc. |
| Gerald Groon, Jr. |
| GM Casting House Inc. |
| Google LLC |
| GS1 US, Inc. |
| Hat Stack Marketing, LLC |
| Heartland Video Systems, Inc. |
| Hendren Redwine & Malone, PLLC |
| Honest Stone House |
| iHeart Communications, Inc. |
| iHeartmedia + Entertainment, Inc. |
| Illinois Dept. of Revenue |
| Impact Tech, Inc. |
| Insightsoftware, LLC |
| Internal Revenue Service |
| International Gemological Institute |
| Internetwork Service Inc. |
| Iron Mountain |
| Jason Taylor |
| Jewelers Bond of Trade |
| Jones & Hale LLP |
| Joseph Castings Inc. |
| Joshua Averbeck |
| K&L Gates LLP |
| Karen Delfin |
| Kentucky Department of Revenue |
| Kira Jewels Inc. |
| Level 3 Communications |
| Litmus Software Inc |
| Lividini & Company LLC |
| Lloyd Sems |
| Louisiana Dept. of Revenue |
| Lucy E. Hill |

| |
|---|
| Lumen Technologies Group |
| Malca Amit Canada Inc |
| Mango Technologies, Inc |
| Mary Beth LLC |
| Massachusetts Dept. of Revenue |
| Mediant Communications Inc. |
| MERCER INC |
| Mimecast North America Inc |
| Minnesota Department of Revenue |
| Missouri Department of Revenue |
| MKE Squared LLC |
| Moissaniteoutlet.Com, Llc |
| Morris Kandinov LLP |
| NBC Universal LLC |
| nClouds Inc. |
| Neal Goldman |
| Nestor Alfonso |
| New Jersey Dept. of Revenue |
| New York State Dept. of Taxation |
| North Carolina Department of Revenue |
| Overnight Mountings Inc |
| Pacific Northern Inc |
| Paycor Inc |
| PayPal, Inc. |
| Peninsula International Manufacturing LLC |
| Pennsylvania Department of Revenue |
| Presidio Networked Soutions Group |
| Prime Driect Limited |
| Quadient Leasing USA Inc. |
| Rakuten Marketing LLC |
| RAS Accountax Services LLP |
| Rebecca Lindahl |
| Rhode Island Division of Taxation |
| Richard T. Petrillo |
| Riskified, Inc. |
| Rithum Corporation |
| Rivers Agency LLC |
| Riverstyx Capital Management |
| Rosenthal Jewelers Supply Corp |
| Royal Chain Inc |
| SBP Office Owner, LP |
| Securitas Technology Corporation |
| Shannon Systems, LLC |

| |
|---|
| Sheer ID Inc |
| Shopify Inc. |
| Smith Anderson LLP |
| Southport Graphics LLC |
| SPS Commerce, Inc.. |
| Stella Rising Inc |
| Stephen Gould |
| Sterling Seacrest Pritchard Inc |
| Stripe, Inc. |
| Sua Sponte Security, LLC |
| Taxually International Ltd. |
| Tealium Inc. |
| Ted F. Mitchell |
| Tennessee Dept of Revenue |
| Tennis Connection |
| The NASDAQ Stock Market LLC |
| Three Fives Consulting LLC |
| TOPPAN MERRILL LLC |
| Tosyali International LTD |
| U.S. Attorney, Eastern District of North Carolina |
| U.S. Securities and Exchange Comm. |
| Uline Inc. |
| United Parcel Services |
| United States Bankruptcy Administrator for the Eastern District of North Carolina |
| UPS Supply Chain Solutions Inc. |
| Vaco LLC |
| Vaco Raleigh LLC |
| Validity Inc |
| Valor Gems |
| VATGLOBAL |
| Victor Settings |
| Vimeo.com, Inc. |
| Virtual Graffiti Inc |
| W R Cobb Company |
| Wake County Dept. of Revenue |
| WC Inc dba Western Computer |
| Webfargo Data Security Inc |
| Wisconsin Dept. of Revenue |
| Wolcott Group, LLC |
| Wolfspeed, Inc. |
| Women's Marketing Inc |
| Wunderkind Corporation |

| |
|---|
| Wyrick Robbins Yates & Ponton, LLC |
| Yotpo Inc |

## Schedule 2

Potential Parties-in-Interest or their affiliates for whom Deloitte Tax LLP or its affiliates has provided or is currently providing services in matters unrelated to these chapter 11 cases, except as set forth above, or with whom such parties have other relationships, including banking relationships.

| |
|---|
| ACNielsen Corporation |
| Adobe Inc. |
| Affirm, Inc. |
| Afterpay US, Inc. |
| American Express Corp Services |
| American Express Travel Services |
| Arctic Wolf Networks, Inc. |
| Arizona Dept. of Revenue |
| BDO USA LLP |
| Beehive Industries Ltd. |
| Brex Treasury LLC |
| Broadridge ICS |
| California Dept. of Revenue |
| Canon Financial Services, Inc. |
| Charles & Colvard Direct, LLC |
| Charles & Colvard Ltd |
| Cherry Bekaert Advisory LLC |
| Cisco Systems, Inc. |
| CISION US INC |
| Citrix Systems, Inc. |
| ClickUp |
| Digital Media Innovations, LLC |
| Equiniti Trust Company, LLC |
| Evoqua Water Technologies, LLC |
| Federal Express Corporation |
| Florida Dept. of Revenue |
| Genesys Cloud Services, Inc. |
| Google LLC |
| GS1 US, Inc. |
| iHeart Communications, Inc. |
| iHeartmedia + Entertainment, Inc. |
| Illinois Dept. of Revenue |
| Impact Tech, Inc. |
| Insightsoftware, LLC |
| Internal Revenue Service |

| |
|---|
| International Gemological Institute |
| Internetwork Service Inc. |
| Iron Mountain |
| Jason Taylor |
| K&L Gates LLP |
| Kentucky Department of Revenue |
| Level 3 Communications |
| Litmus Software Inc |
| Louisiana Dept. of Revenue |
| Lumen Technologies Group |
| Mango Technologies, Inc |
| Massachusetts Dept. of Revenue |
| Mediant Communications Inc. |
| MERCER INC |
| Mimecast North America Inc |
| Minnesota Department of Revenue |
| Missouri Department of Revenue |
| Moissaniteoutlet.Com, Llc |
| NBC Universal LLC |
| New Jersey Dept. of Revenue |
| New York State Dept. of Taxation |
| North Carolina Department of Revenue |
| Paycor Inc |
| PayPal, Inc. |
| Pennsylvania Department of Revenue |
| Presidio Networked Soutions Group |
| Quadient Leasing USA Inc. |
| Rakuten Marketing LLC |
| Rhode Island Division of Taxation |
| Riskified, Inc. |
| Rithum Corporation |
| SBP Office Owner, LP |
| Securitas Technology Corporation |
| Sheer ID Inc |
| Shopify Inc. |
| Smith Anderson LLP |
| SPS Commerce, Inc. |
| Stephen Gould |
| Stripe, Inc. |
| Tealium Inc. |
| Tennessee Dept of Revenue |
| The NASDAQ Stock Market LLC |
| U.S. Securities and Exchange Comm. |

| |
|---|
| Uline Inc. |
| United Parcel Services |
| UPS Supply Chain Solutions Inc. |
| Vaco LLC |
| Vaco Raleigh LLC |
| Validity Inc. |
| Vimeo.com, Inc. |
| Wake County Dept. of Revenue |
| Wisconsin Dept. of Revenue |
| Wolfspeed, Inc. |
| Wunderkind Corporation |
| Yotpo Inc. |