**SO ORDERED.**

**SIGNED this 13 day of April, 2026.**



_____
**David M. Warren**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| **CHARLES & COLVARD, LTD.** | )   **Case No. 26-00969-5-DMW** |
| | ) |
| Debtor. | )   **Chapter 11** |
| | ) |

### FINAL ORDER APPROVING DEBTOR-IN-POSSESSION
### FINANCING AND APPROVING SECURITY INTERESTS, LIENS, AND
### ENCUMBRANCES TO VAN LANG JEWELRY LLC

THIS MATTER came on for hearing before the Court on April 13, 2026 upon the

_Emergency Motion for Authorization of Debtor-in-Possession Financing and Approval of Security_

_Interests, Liens, and Encumbrances to Van Lang Jewelry LLC_ (the "DIP Financing Motion") filed

by Charles & Colvard, Ltd. (the "Debtor") seeking entry of an Order pursuant to 11 U.S.C. §§

105(a), 363(b) and 364 of the Bankruptcy Code, on a final basis, for approval of, and authorization

to obtain, debtor-in-possession financing and credit from Van Lang Jewelry LLC ("VLJ") upon

the terms and conditions set forth in the DIP Financing Motion in the maximum principal amount

of $1,000,000.00, which would be secured by (i) a first-priority security interest in all assets of the

1

Debtor that constitute precious metals, regardless of form (the "Precious Metals")[1] and the proceeds of any of the Debtor's estate's causes of action with the exception of the Avoidance Action Proceeds (the "Causes of Action");[2] (ii) a second-priority security interest in all other assets of the Debtor, i.e., other than Precious Metals and the proceeds of any of the Debtor's estate's causes of action with the exception of the Avoidance Action Proceeds (the "Other Collateral" and together with the Precious Metals and the Causes of Action, the "DIP Collateral"), junior only to any perfected and non-avoidable security interest in favor of Wolfspeed, Inc. ("Wolfspeed"); and (iii) a superpriority administrative expense claim with priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code.

An initial hearing on the DIP Financing Motion was held on March 23, 2026 (the "Interim Hearing"), following which the Court entered a First Interim Order allowing the DIP Financing Motion on March 25, 2026 [DE# 56] (the "Interim Order") providing for certain post-petition financing on the terms set forth more particularly therein. The Interim Order set a further hearing on the DIP Financing Motion for April 13, 2026.

Following a further hearing on the DIP Financing Motion held by this Court on April 13, 2026 (the "Final Hearing"), and after due deliberation and consideration and good and sufficient cause appearing, the Court finds, subject to the terms hereof, that the relief requested in the DIP Financing Motion is in the best interests of the Debtor, its estate, its creditors, and other parties in

---

[1] For the avoidance of doubt, the term "Precious Metals" shall include, but not be limited to, the Debtor's finished precious-metal jewelry inventory (i.e., the Debtor's finished jewelry inventory incorporating precious metals as a whole SKU, meaning the entire finished ring/necklace/bracelet item that incorporates precious metals, including any gemstones set in those finished items, and all proceeds thereof, but excluding loose gems not incorporated into finished jewelry). The DIP Loan Documents (defined below) specify that the obligation of VLJ to make any advance under the DIP Facility is conditioned on Wolfspeed, Inc. first stipulating that VLJ has a first priority, fully perfected security interests in and liens upon the Precious Metals and all of the Debtor's rights in such property acquired post-petition (and proceeds thereof), whether now existing or hereafter acquired or arising (and such first priority security interest being reflected in the Interim Order or the Final Order, as applicable). Wolfspeed, Inc. has so stipulated, and its stipulation is reflected herein.

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Interim Order.

interest, and represents a proper exercise of the Debtor's sound business judgment and is essential for the continued operations of the Debtor's business, and that notice of the DIP Financing Motion, the relief requested therein, the Interim Hearing, and the Final Hearing was appropriate under the circumstances, and the opportunity for a hearing on the DIP Financing Motion was appropriate and no other notice need be provided with respect to the granting of final relief.

The Court hereby makes the following **FINDINGS OF FACT** and **CONCLUSIONS OF LAW**:

1. This Court has jurisdiction over this matter and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the DIP Financing Motion constitutes a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. No request has been made for the appointment of a trustee or examiner and no statutory committee ("Committee") has been appointed in this matter.

3. The Debtor filed a voluntary petition seeking relief under chapter 11 of the Bankruptcy Code on March 2, 2026 (the "Petition Date"), Case No. 26-00969-5-DMW (the "Bankruptcy Case") and, since that date, has operated as Debtor-in-Possession.

4. The events leading up to the Petition Date and the facts and circumstances supporting the relief requested in the DIP Financing Motion are set forth in the *Declaration of Michael Levin in Support of Chapter 11 Petition and First Day Pleadings* (the "Levin Declaration").

5. The Debtor is a North Carolina corporation founded in 1995 and headquartered in Morrisville, North Carolina. The Debtor was founded as C3 Diamante, Inc., and changed its name to C3, Inc. by Articles of Amendment filed on April 10, 1996. The Debtor subsequently changed

its name to Charles & Colvard, Ltd. by Articles of Amendment filed on May 17, 2000.

6.  The Debtor is a globally recognized fine jewelry company specializing in lab-created gemstones.  Its common stock is quoted on the OTC Experts Market under the symbol "CTHR."  The Debtor manufactures, markets, and distributes Charles & Colvard Created Moissanite® including its premium moissanite gemstone brand, Forever One™, as well as Caydia®, its brand of premium lab-grown diamonds.  The Debtor offers gemstones and finished jewelry featuring its proprietary moissanite jewels, premium lab-grown diamonds, created color gemstones, and most recently, lab-grown diamonds in color, for sale in the worldwide fine jewelry market through two operating segments: its Online Channels segment, which encompasses its digital properties components, comprised of its charlesandcolvard.com, moissaniteoutlet.com, charlesandcolvarddirect.com, and madenetwork.com websites; e-commerce outlets, including marketplaces, drop-ship customers, and other pure-play, exclusively e-commerce customers; and its Traditional segment, which consists of domestic and international distributors and retail customers, including end-consumers through its first Charles & Colvard Signature Showroom, which opened in October 2022.  As of the Petition Date, the Debtor had a total of 26 full-time employees and 1 part-time employee.

7.  The Debtor believes and represents that in order to maximize the value of its assets, the Debtor will be required to incur certain operating expenses.

8.  Prior to the Petition Date, Essential Lab Grown Diamonds Inc. ("Essential Diamonds") filed a UCC-1 financing statement against the Debtor with the North Carolina Secretary of State on April 4, 202123, bearing File No. 20210042326C, covering certain "[l]oose laboratory-grown diamonds . . . delivered on consignment terms by [Essential Diamonds] pursuant to Consignment Agreement, Consignment and Security Agreement, and/or Consignment

Memoranda, to or for the account of the Debtor . . . together with all products and proceeds of any nature (including insurance proceeds), and all receivables and contract rights created by the sale of the Collateral." As of the Petition Date, the outstanding balance owed to Essential Diamonds is believed to be approximately $66,024.00.

9.      Prior to the Petition Date, Wolfspeed filed a UCC-1 financing statement against the Debtor with the North Carolina Secretary of State on May 8, 2023, bearing File No. 20230058140G, in connection with an Exclusive Supply Agreement dated December 12, 2014, as amended, and a Confidential Settlement Agreement dated on or about February 7, 2025 (collectively, the "Wolfspeed Agreement", and together with the other agreements and instruments executed in connection therewith and/or otherwise evidencing Wolfspeed's claims, the "Wolfspeed Documents"). Wolfspeed's filed UCC-1 covers "All assets of the Debtor, whether now owned or hereafter acquired, together with all proceeds, products, accessions and additions with respect to each of the foregoing from time to time, including, without limitation, any insurance proceeds, but expressly excluding assets that constitute precious metals, regardless of form." (Emphasis added.) As of the Petition Date, the outstanding balance owed to Wolfspeed under the Wolfspeed Agreement is believed to be approximately $2,437,096.00.

10.     Prior to the Petition Date, Ethara filed a UCC-1 financing statement against the Debtor with the North Carolina Secretary of State on December 4, 2025, bearing File No. 20250178577F, in connection with a Convertible Secured Note Purchase Agreement dated June 24, 2025 and a Secured Convertible Note dated July 3, 2025 (the "Ethara Agreement"). Ethara's filed UCC-1 purportedly covers "All fixtures and personal property of every kind and nature". As of the Petition Date, the outstanding balance owed to Ethara under the Ethara Agreement is believed to be approximately $2.1 million.

5

11.     Prepetition, the Debtor explored and attempted to obtain credit and financing from a variety of third-party sources, both secured and unsecured.  Despite its best efforts, the Debtor was unable to secure the necessary and required credit and financing in an amount sufficient to meet the Debtor's ongoing capital needs.

12.     The Debtor has an immediate and critical need to obtain the requisite financing and credit through the DIP Loan addressed herein, to—*inter alia*: (a) Satisfy working capital, operational, and general corporate needs; (b) Pay and fund those costs and expenses related to the Bankruptcy Case; (c) Pay any applicable interest premiums, attorneys' fees, costs, expenses, penalties, and other amounts owed on account of the DIP Loan, to the extent applicable; and (d) If necessary, pay any required debt-service payments in the underlying bankruptcy proceeding of the Debtor.  The ability of the Debtor to maintain business relationships with its vendors, suppliers, and customers requires the availability of necessary capital for the payment of ongoing operating costs and expenses from the DIP Loan, the absence of which would immediately and irreparably harm the Debtor, the bankruptcy estate, creditors, and parties-in-interest.  Absent approval of the DIP Loan Transaction outlined herein, the Debtor does not have sufficient available sources of working capital and financing to continue operations. In the absence of the DIP Loan and the use thereof, the Debtor's business and bankruptcy estate would suffer immediate and irreparable harm. Access to, and use of the proceeds available from, the DIP Loan, will provide the Debtor with sufficient working capital and liquidity to continue operations.

13.     The Debtor is unable to obtain the required funds, financing and credit (i) in the form of unsecured credit or debt allowable under section 503(b)(1) of the Bankruptcy Code, an administrative expense pursuant to section 364(a) or (b) of the Bankruptcy Code, or (ii) terms more favorable than those offered by VLJ as part of the DIP Loan Transaction summarized in this Order

and any other Orders or agreements, documents, notes, or instruments delivered pursuant hereto or the DIP Financing Motion or in connection herewith or the DIP Financing Motion.

14.     The terms of the financing, as summarized in the DIP Financing Motion (as modified at the Hearing) and more particularly set forth in the DIP Loan Documents, true and correct copies of which were provided to the Court at the Final Hearing, are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties and constitute reasonably equivalent value and fair consideration.

15.     The Debtor has requested that, pursuant to the terms of the DIP Loan Transaction, VLJ be allowed and permitted to make loans and advances and provide other financial accommodations to the Debtor, to be used by the Debtor solely in accordance with the terms of the DIP Loan Documents.

16.     VLJ, as a condition for extension of credit and financing to the Debtor in the amounts set forth in the DIP Loan Transaction, is conditioned upon it receiving (i) a first-priority security interest in the Precious Metals and the Causes of Action; (ii) a second-priority security interest in the Other Collateral, junior only to any perfected and non-avoidable security interest in favor of Wolfspeed; and (iii) a superpriority administrative expense claim with priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code.

17.     Wolfspeed is entitled to receive adequate protection to the extent of any diminution in value of its interest in the prepetition collateral in exchange for their consent to the DIP Financing Transaction, including the priming of its liens on the Precious Metals.

18.     Accordingly, the relief requested in the DIP Financing Motion (as modified at the Initial Hearing and as may be further modified herein) is necessary, essential, and appropriate for

the continued operation of the Debtor's business, the management and preservation of its assets, and is in the best interests of the Debtor, the estate, and creditors.

19.    Based on the record before the Court, the terms of the DIP Loan Transaction, including the provisions of the DIP Loan Documents, pursuant to which the loan, advances and other credit and financial accommodations have been or will be made or provided to the Debtor by VLJ, have been negotiated at arms' length and in "good faith," as that term is used in § 364(e) of the Bankruptcy Code, and are in the best interests of the Debtor, its estate and creditors.  Based on the record presented to the Court by the Debtor, it appears that VLJ and its respective partners, employees, representatives, advisors, and consultants are entitled to a finding of "good faith" pursuant to § 364(e) of the Bankruptcy Code, and are entitled to the full protection and benefits of the provisions of § 364(e) of the Bankruptcy Code in the event that this Order or any provision herein is vacated, reversed or modified, on appeal or otherwise.

20.    The terms of the DIP Loan Transaction, including the provisions of the DIP Loan Documents, and this Final Order, are fair, just and reasonable under the circumstances, are ordinary and appropriate for secured financing to debtors-in-possession, reflect the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

21.    The relief requested in the DIP Financing Motion, and subject to the terms of this Final Order, is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtor, its creditors and the Estate, as its implementation will, among other things, provide the Debtor with the necessary liquidity to (1) minimize disruption to the Debtor's business and ongoing operations, (2) preserve and maximize the value of the Debtor's Estate for the benefit of all the Debtor's creditors, and (3) avoid immediate and irreparable harm to the Debtor, its creditors,

its employees, and its assets.  Good, adequate, and sufficient cause has been shown to justify the granting of the relief requested therein, and the entry of this Final Order.

22.     Proper, timely, adequate, and sufficient notice of the DIP Financing Motion, the relief requested therein, the Interim Hearing, and the Final Hearing was provided to all affected parties who are entitled to notice thereof under the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and applicable Local Rules, and no other or further notice with respect to the relief requested at the Final Hearing or the entry of this Final Order is required.

**WHEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

1.     The DIP Financing Motion (as modified at the Initial Hearing and as maybe further modified herein) is **ALLOWED**.

2.     This Order shall become effective immediately upon its entry and shall be valid and binding on all parties in interest.

3.     Except as otherwise provided in this Order, any objection to the entry of this Order that has not been withdrawn, waived, resolved or settled, is hereby denied and overruled on the merits.

4.     Subject to the terms and conditions contained in this Order and the DIP Loan Transaction, including the provisions of the DIP Loan Documents, authorized by this Final Order, the Debtor shall use the proceeds of the DIP Loan Transaction solely in accordance with the terms and conditions of the DIP Loan Transaction, including the provisions of the DIP Loan Documents, and this Final Order.

5.     The Debtor is hereby authorized and directed to take, or to continue to take, the following actions with respect to the DIP Loan Transaction:

        a.     Execute the DIP Loan Documents effectuating the DIP Loan Transaction, substantially in the form described, summarized and

detailed for the Court at the Hearing, and any other attendant loan documents that are necessary to consummate the DIP Loan Transaction;

b.    Borrow funds, incur debt, reimbursement obligations and other obligations, grant liens, make deposits, provide indemnities and perform its obligations in accordance with the terms and conditions of the DIP Loan Documents and any other measures necessary and appropriate to consummate the DIP Loan Transaction;

c.    Draw and receive distributions and credit from VLJ as permitted under the DIP Loan Documents, that are necessary and essential to continue operations and to otherwise avoid irreparable harm to the Debtor, the bankruptcy estate, creditors, and parties in interest; and

d.    Place and otherwise segregate any and all amounts received from VLJ, by virtue of execution and consummation of the DIP Loan Transaction, into an operating account, maintained at a financial institution insured by the Federal Insurance Deposit Commission (the "FDIC"), and apart from any and all monies which may constitute cash collateral, within the meaning of § 363 of the Bankruptcy Code.

6.    Upon execution and delivery of the DIP Loan Documents by the Debtor to VLJ, the DIP Loan Documents shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with their terms.  No obligation, payment, transfer or grant of security under this Order or the DIP Loan Documents shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

7.    The Debtor shall use the loans or advances made under or in connection with the DIP Loan Documents solely as provided therein.

8.    VLJ, in accordance with the DIP Loan Documents, shall receive the following security interests and superpriority administrative claim interest in the following DIP Collateral:

a.    A first-priority security interest in the Precious Metals (as defined in this Order) and the Causes of Action (the "Priming DIP Liens");

b.    A second-priority security interest in the Other Collateral, junior

only to any perfected and non-avoidable security interest in favor of Wolfspeed; and

c.      A superpriority administrative expense claim with priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code.

9.      As adequate protection for any diminution in value of its interest in its prepetition collateral resulting from its agreement to subordinate its existing liens on the Precious Metals to the Priming DIP Liens, Wolfspeed is entitled, to the extent of any diminution in value of its prepetition collateral, to (i) replacement liens to the extent of its prepetition liens, which shall be subject and subordinated only to the Priming DIP Liens (and which, for the avoidance of doubt, shall be valid and perfected without the necessity of any filing or recording), (ii) an administrative expense claim, which shall be subject and subordinate only to VLJ's superpriority administrative expense claim but shall have priority over all other administrative expenses, and (iii) monthly interest accruing at the North Carolina statutory post-judgment rate.  The receipt by Wolfspeed of the adequate protection provided herein shall not be deemed an admission that its interests are adequately protected, and Wolfspeed shall be entitled to seek further adequate protection.

10.     The Debtor admits and acknowledges that Wolfspeed's liens and security interests in the Other Collateral were valid, binding, enforceable, non-avoidable and properly perfected as of the Petition Date and that no portion thereof or the claims they secure are subject to avoidance, disallowance, disgorgement, recharacterization or subordination.  The Debtor does not admit to, and this Order does not establish, the validity, nature, extent, priority, or perfection of any security interest of Wolfspeed with respect to the Precious Metals, and the Debtor reserves the right for itself and for the bankruptcy estate to challenge, contest, and dispute any of these Precious Metal matters in the future, and Wolfspeed reserves all claims and defenses with respect thereto, except that Wolfspeed has irrevocably consented to the DIP Loan Transaction and the Priming DIP Liens.

11.     The Debtor does not admit to, and this Order does not establish, the validity, nature, extent, priority, or perfection of any security interest of Ethara, the amount of indebtedness owed to Ethara, or the characterization of any of its property as Ethara's cash collateral or otherwise, and the Debtor reserves the right for itself and for the bankruptcy estate to challenge, contest, and dispute any of these matters in the future.

12.     For the avoidance of doubt, nothing herein shall be deemed an admission or acknowledgement by Wolfspeed regarding (a) its collateral (including, without limitation, whether its collateral encompasses the Precious Metals), (b) the amount, status, or priority of its claims, (c) the validity, priority, perfection, enforceability, or extent of its liens and security interests, or (d) the adequate protection of its interests. Wolfspeed expressly reserves the right to assert all rights, claims and/or defenses in respect of the Debtor and its property, and seek any and all other relief in these cases.

13.     Pursuant to the approved DIP Loan Documents, VLJ shall have the right to credit bid (pursuant to section 363(k) of the Bankruptcy Code and/or applicable law) all amounts due under the DIP Facility in whole or in part, in connection with any sale or disposition of assets by the Debtor in the Bankruptcy Case and shall not be prohibited from making such credit bid "for cause" under section 363(k) of the Bankruptcy Code (provided that VLJ acknowledges, for the avoidance of doubt, that it must first satisfy any debt owed to Wolfspeed prior to credit bidding on any assets secured by Wolfspeed's first priority liens and security interests).

14.     Except to the extent of the Carve-Out (as defined in the DIP Loan Documents), no expenses of administration of the Bankruptcy Case or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from any DIP Collateral pursuant to section 506(c) of the

Bankruptcy Code or any similar principle of law, without the prior written consent of VLJ or Wolfspeed, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by VLJ or Wolfspeed, as applicable; and the Debtor shall irrevocably waive and shall be prohibited from asserting any claim described in this paragraph, under section 506(c) of the Bankruptcy Code or otherwise, for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by VLJ or Wolfspeed, as applicable, upon the DIP Collateral.

15.     None of the Carve-Out, the DIP Facility, the Debtor's cash collateral, or other proceeds of the DIP Collateral may be used to challenge the amount, validity, perfection, priority or enforceability of, or assert any defense, counterclaim or offset to, the DIP Facility, the DIP Loan Documents, the Wolfspeed Documents, or the security interests and liens securing any of the DIP Obligations (as defined in the DIP Loan Documents) or the obligations to Wolfspeed under the Wolfspeed Documents, or to fund prosecution or assertion of any claims, or to otherwise litigate against VLJ or Wolfspeed.

16.     This Order shall constitute the Findings of Fact and Conclusions of Law made by the Court based upon the evidence, testimony, and arguments presented and received at the Final Hearing.

17.     In the event that any provision of this Order shall conflict with any term of the DIP Loan Documents, the terms and provisions of this Order shall govern and control.

18.     The Debtor shall serve a copy of this Order on all parties entitled to receive notice hereof and file a Certificate of Service with the Court within seven (7) days of the entry of this Order.

**END OF DOCUMENT**