**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **CHARLES & COLVARD, LTD.** | ) | **Case No. 26-00969-5-DMW** |
| | ) | |
| Debtor. | ) | **Chapter 11** |
| | ) | |

**ORDER ALLOWING DEBTOR'S MOTION FOR ORDER: (I) APPROVING PRIVATE SALE OF PERSONAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (II) APPROVING STALKING HORSE BIDDER; (III) APPROVING STALKING HORSE BREAK-UP FEE; (IV) APPROVING OVERBID PROCEDURES AND AUCTION; AND (V) SCHEDULING HEARING FOR FINAL APPROVAL OF SALE OF ASSETS**

**THIS MATTER** came on before the Court upon the Debtor's Motion for Order (I) Approving Private Sale of Personal Property Free and Clear of Liens, Claims, Encumbrances, and Interests; (II) Approving Stalking Horse Bidder; (III) Approving Stalking Horse Break-Up Fee; (IV) Approving Overbid Procedures and Auction; and (V) Scheduling Hearing for Final Approval of Sale of Assets [DE# 71] (the "Sale Motion").  Having considered the Sale Motion, and it appearing that no objections and no responses were timely filed thereto, the Court finds as follows:

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      The statutory predicates for the relief requested in the Sale Motion are Bankruptcy Code Sections 105, 363, 503 and 507 and Bankruptcy Rules 2002, 4001, and 6004.

3.      The Debtor filed a voluntary petition seeking relief under Chapter 11 of the Bankruptcy Code on March 2, 2026 (the "Petition Date") and, since that date, has operated as Debtor-in-Possession.

4.      The Debtor is a North Carolina corporation founded in 1995 and headquartered in Morrisville, North Carolina.  The Debtor was founded as C3 Diamante, Inc., and changed its name to C3, Inc. by Articles of Amendment filed on April 10, 1996.  The Debtor subsequently changed its name to Charles & Colvard, Ltd. by Articles of Amendment filed on May 17, 2000.

5.      The Debtor is a globally recognized fine jewelry company specializing in lab-created gemstones.  Its common stock is quoted on the OTC Experts Market under the symbol "CTHR."   The Debtor manufactures, markets, and distributes Charles & Colvard Created Moissanite® including its premium moissanite gemstone brand, Forever One™, as well as Caydia®, its brand of premium lab-grown diamonds.  The Debtor offers gemstones and finished jewelry featuring its proprietary moissanite jewels, premium lab-grown diamonds, created color gemstones, and most recently, lab-grown diamonds in color, for sale in the worldwide fine jewelry market through two operating segments: its Online Channels segment, which encompasses its digital properties components, comprised of its charlesandcolvard.com, moissaniteoutlet.com, charlesandcolvarddirect.com, and madenetwork.com websites; e-commerce outlets, including marketplaces, drop-ship customers, and other pure-play, exclusively

e-commerce customers; and its Traditional segment, which consists of domestic and international distributors and retail customers, including end-consumers through its first Charles & Colvard Signature Showroom, which opened in October 2022.  As of the Petition Date, the Debtor had a total of 26 full-time employees and 1 part-time employee.

6.      The Debtor owns certain jewelry, precious metals, loose jewels, jewelry production equipment, office furniture and equipment, intangibles, and other personal property as detailed in Schedule A/B of its bankruptcy schedules.  The Debtor does not own any real property.  The Debtor's personal property as detailed herein is the "Property".

7.      The Debtor received an offer submitted by Van Lang Jewelry LLC (the "Purchaser" or "Stalking Horse Bidder") to purchase substantially all of the Debtor's operating assets pursuant to Section 363(f) of the Bankruptcy Code.

1.      The Debtor and Stalking Horse Bidder entered into an Asset Purchase Agreement (the "Purchase Agreement") for the Property (as defined more particularly in the Purchase Agreement), which is expressly subject to Bankruptcy Court approval in all respects.  A true and accurate copy of the Purchase Agreement (subject to Purchaser's provision of final schedules, as referenced therein) is attached hereto as **Exhibit A** and incorporated herein by reference, and can be summarized as follows:

| **Purchase Price** | $1,500,000.00 |
|---|---|
| **Earnest Money Deposit** | N/A |
| **Closing** | Three (3) business days following the later of (a) entry of the Sale Order, provided that the Sale Order is not subject to a stay, or (b) satisfaction of all of the conditions to closing as set forth in the Asset Purchase Agreement or the Overbid Purchase Agreement (as defined herein) , as applicable.  Provided, however, that in no |

| | |
|---|---|
| | event shall the Closing take place any later than July 7, 2026. |
| **Financing Contingency** | N/A |
| **Break-Up Fee; Conditional Expense Reimbursement** | Three percent (3%) of the Purchase Price, as well as conditional reimbursement of Purchaser's reasonable, documented, out of pocket fees and expenses incurred in connection with the negotiation, execution, and performance of this Agreement and participation in the sale process, in an amount not to exceed $45,000, payable in cash on or before the date that is thirty (30) days after the termination of the Purchase Agreement upon the occurrence of a termination as set forth in Section 10.1 of the Agreement. |

Any Schedules required to be provided by Purchase under the Purchase Agreement, including without limitation Schedule 2.7, shall be provided in their final form to the Debtor on or before the expiration of the Overbid Period (as defined below).

8.      Each party is responsible for its own attorneys' fees incurred in connection with the Purchase Agreement, this bankruptcy case and the transactions or other matters contemplated hereby or thereby.

9.      The Debtor, through the Sale Motion, moved to establish a procedure for the orderly sale of the Property to further maximize the recovery for the estate.  The Debtor wished to allow for the sale of the Property on the terms set forth herein, and according to the bidding procedures set forth on **Exhibit B** attached hereto (the "Bidding Procedures").

10.      The Debtor believes the Bidding Procedures allow maximum flexibility when evaluating potential competing offers or bids for the Property, thereby providing the greatest potential to further maximize value to the estate.

**THE PROPOSED STALKING HORSE BIDDER AND BREAK-UP FEE ARE**

## APPROPRIATE, REASONABLE AND SHOULD BE APPROVED

11.     In connection with the proposed Stalking Horse, the Debtor has offered a break-up fee equal to three percent (3%) of the Purchase Price (i.e., $45,000.00) in the event the Stalking Horse is outbid.

12.     The Debtor believes that the designation of Stalking Horse Bidder as the stalking horse bidder on the terms set forth herein are beneficial to the sales process and will aid the Debtor in obtaining the maximum purchase price for the Property.   Specifically, such designation: (1) discourages bidding strategies designed to hold back competitive bids until later in the process; (2) aids the Debtor in obtaining bids from other potential bidders that may be higher and/or better than the bidder would have otherwise offered; and (3) creates positive momentum going into the potential auction.  The Debtor further asserts that such designation will provide greater certainty of closing and establish a floor price for the bid deadline and process.

13.     Furthermore, the Debtor believes that the proposed break-up fee of three percent (3%), which would be paid in the event Stalking Horse Bidder is not the successful bidder, is a reasonable and appropriate amount in relation to the proposed Purchase Price.  Such break-up fee would compensate Stalking Horse Bidder for its time and professional fees and expenses incurred in negotiating the Purchase Agreement and conducting the necessary due diligence to serve as the stalking horse, as well as for its time and energy expended as a result of the attempted acquisition of the Property.

14.     The Debtor has requested that the Court approve the Purchase Agreement and the designation of Stalking Horse Bidder as the stalking horse bidder, for the proposed sale of the Property on the terms set forth in the Sale Motion.

15. In the Sale Motion, the Debtor requested approval of overbid protection for Stalking Horse Bidder in the amount of five percent (5%), resulting in a minimum overbid from other potential bidders in an amount of at least $1,575,000.00.

16. In the Sale Motion, the Debtor requested approval of the proposed break-up fee of three percent (3%) of the Purchase Price (i.e., $45,000.00) to be paid to Stalking Horse Bidder from the sales proceeds following closing, in the event Stalking Horse Bidder is not the successful bidder.

17. The Debtor sought approval of an overbid period (the "Overbid Period") following the Court's entry of an Order approving Stalking Horse Bidder as the stalking horse, to allow Qualified Bidders to submit a qualifying bid, to expire no later than June 6, 2026.

18. The Debtor requested that the Court require interested bidders to deliver the following items to Debtor's counsel before the expiration of the Overbid Period to be deemed "Qualified Bidders" and participate in the auction of the Property:

   a. An executed copy of a standard purchase agreement in the form attached hereto as **Exhibit 2** to the Bidding Procedures (**Exhibit B**) (the "Overbid Purchase Agreement");

   b. Earnest money deposit in an amount equal to five percent (5%) of the bid amount, payable by wire transfer or official bank funds as required under the Overbid Purchase Agreement; and

   c. Financials and/or a loan commitment demonstrating the interested bidder's ability to close on the purchase of the Property on an all-cash basis with immediately available funds.

19. The Debtor requested that in the event that a Qualified Bidder is the winning

bidder and fails to close on the sale of the Property, the next highest bidder shall be required to honor its next highest bid and close on the sale, and so on until a closing takes place.

20. The Debtor requested that a failure to close on the sale of the Property shall leave the nonperforming higher bidding parties with liability for breach of contract for the difference between the amount of the high bid and any future net sale proceeds received on the actual sale of the property, plus such other claims and causes of action as may be available under North Carolina and Federal law.

21. The Debtor requested that the Court establish a Final Hearing Date for June 22, 2026 (or the next available date when the Court is holding session) whereby the Property will be auctioned if one or more Qualified Bidders submit a qualifying overbid and that, following the auction, the Court conduct a hearing to approve the proposed sale and enter a final sale order ("Sale Order").

22. Upon completion of the sale of the Property, Debtor's counsel will file a subsequent motion for authority to disburse the closing proceeds, except for the items specifically authorized herein or by prior orders of this Court.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the Debtor's Sale Motion is **GRANTED** as follows:

1. Van Lang Jewelry (or its assignee) shall serve as Stalking Horse Bidder for the sale of the Property on the terms set forth in this Order, including without limitation **Exhibit A** hereto;

2. The proposed Bidding Procedures attached to this Order as **Exhibit B** are hereby approved;

3.    Payment of a break-up fee in the amount of three percent (3%) of the Purchase Price (i.e., $45,000.00) to be paid to Stalking Horse Bidder from the sales proceeds at closing, in the event Stalking Horse Bidder is not the successful bidder;

4.    The minimum overbid shall be in an amount equal to five percent (5%) of the proposed Purchase Price, resulting in a minimum overbid from other potential bidders in an amount of at least $1,575,000.00;

5.    The Purchase Agreement shall be subject to an Overbid Period through and including June 6, 2026 to allow Qualified Bidders to submit a qualifying bid to counsel for the Debtor;

6.    The Court hereby approves the proposed qualifications for Qualified Bidders, including without limitation the form of the Overbid Purchase Agreement attached as **Exhibit 2** to the Bidding Procedures which are attached hereto as **Exhibit B**;

7.    If one or more Qualified Bidders submit a qualifying overbid, the Property will be auctioned at _____ EST on June 22, 2026 in the United States Bankruptcy Court, 3rd Floor Courtroom in Raleigh, North Carolina;

8.    Regardless of whether any qualifying overbids are submitted, a Final Sale Hearing shall be held before this Court at _____ EST on June 22, 2026 in the United States Bankruptcy Court, 3rd Floor Courtroom in Raleigh, North Carolina.

**END OF DOCUMENT**