**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**Raleigh Division**

IN RE:

CHARLES & COLVARD, LTD.

     Debtor.

Chapter 11

Case No. 26-00969-5-DMW

**LIMITED OBJECTION OF SBP OFFICE OWNER, LP TO:**
**DEBTOR'S MOTION FOR ORDER: (I) APPROVING PRIVATE SALE OF PERSONAL**
**PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND**
**INTERESTS; (II) APPROVING STALKING HORSE BIDDER; (III) APPROVING**
**STALKING HORSE BREAK-UP FEE; (IV) APPROVING OVERBID PROCEDURES**
**AND AUCTION; AND (V) SCHEDULING HEARING FOR FINAL APPROVAL OF**
**SALE OF ASSETS**

SBP Office Owner, LP (the "Landlord"), by and through its undersigned counsel, hereby files this Limited Objection (the "Limited Objection") to the Debtor's Motion for Order: (i) Approving Private Sale of Personal Property Free and Clear of Liens, Claims, Encumbrances, and Interests; (ii) Approving Stalking Horse Bidder; (iii) Approving Stalking Horse Break-Up Fee; (iv) Approving Overbid Procedures and Auction; and (v) Scheduling Hearing for Final Approval of Sale of Assets [DE# 71] (the "Sale Motion"), and respectfully represents as follows:

**PRELIMINARY STATEMENT**

The Landlord does not object to the sale of the Debtor's assets or the approval of the stalking horse bidder, the break-up fee, or the overbid procedures. The Landlord supports the Debtor's efforts to maximize value for the estate and all of its creditors.

The Landlord files this Limited Objection solely to ensure that its statutory right to timely performance under 11 U.S.C. § 365(d)(3), and its administrative expense claim under 11 U.S.C.

§§ 503(b) and 507(a)(2) (approximately $139,236.46 as of May 1, 2026, plus all rent and charges accruing thereafter through rejection and surrender, exclusive of any claim for use and occupancy from March 2, 2026 through March 31, 2026), is preserved in connection with the proposed sale. As currently filed, the Sale Motion does not identify a distribution waterfall, establish a reserve for the Landlord's administrative rent, or include sale-order language preserving the Landlord's rights after a free-and-clear sale and credit bid.

The Landlord therefore seeks narrowly tailored sale-order conditions, including payment or reservation of the Administrative Rent Claim, preservation of the Landlord's statutory rights, and notice before any distribution of proceeds that would impair recovery.

## FACTUAL BACKGROUND

1. On March 2, 2026 (the "Petition Date"), the Debtor filed a voluntary petition seeking relief under Chapter 11 of the Bankruptcy Code and has since operated as a Debtor-in-Possession.

2. At all relevant times, the Debtor has occupied premises owned by the Landlord at 170 Southport Drive in Morrisville, North Carolina (the "Premises"), pursuant to a commercial lease dated December 9, 2013 (as amended, the "Lease"). The Lease term runs through October 31, 2026, with monthly base rent of $79,331.68 and operating expenses of $7,777.04, totaling approximately $87,108.72 per month. The Debtor continues to use the Premises for business operations and the sale process.

3. As of May 1, 2026, the outstanding post-petition balance is approximately $139,236.46 (the "Administrative Rent Claim"), net of a prior-year CAM credit and a $20,000.00 payment. At the current monthly rate, this amount will increase by approximately $87,108.72 for each additional month of occupancy prior to rejection and surrender.

4.      The Debtor, through counsel, has informally acknowledged the Landlord's entitlement to an administrative expense claim under § 503(b) for post-petition rent. The Landlord's claim arises under § 365(d)(3), which mandates timely performance of all lease obligations from the order for relief until assumption or rejection, independent of the § 503(b)(1) standard. Alternatively, the Landlord asserts an administrative expense claim under § 503(b)(1)(A) for any charges falling outside § 365(d)(3).

5.      The Lease will likely be rejected, not assumed or assigned to the Purchaser, as Debtor's counsel has informally confirmed. If so, the Purchaser will have no obligation to the Landlord, and the Landlord's recourse for unpaid rent will remain against the estate and sale proceeds. Any Sale Order should preserve the Landlord's rights without constituting an assumption, assignment, rejection, or cure determination, absent further notice and hearing.

6.      On April 15, 2026, the Debtor filed the Sale Motion [DE# 71], seeking Court approval to sell substantially all of the Debtor's operating assets to Van Lang Jewelry LLC ("VLJ") or its assigns, as the Stalking Horse Bidder, pursuant to 11 U.S.C. § 363(f), free and clear of liens, claims, encumbrances, and interests, for a purchase price of $1,500,000.00.

7.      The Sale Motion provides, in Paragraph 26, that counsel will file a subsequent motion to disburse closing proceeds. However, the Sale Motion contains no provision for treatment or protection of administrative expense claims from sale proceeds.

8.      Under the APA, VLJ will credit bid all outstanding DIP obligations (up to $1,000,000 in principal, plus interest, fees, and expenses) against the $1,500,000 Purchase Price. The Cash Purchase Price, which is the actual cash flowing to the estate, is the remainder. Because the Credit Bid Amount depends on DIP obligations at closing, the Cash Purchase Price remains uncertain.

9. The DIP Financing Order [DE# 69] grants VLJ a superpriority administrative expense claim senior to all § 503(b) and § 507(b) expenses, and grants Wolfspeed, Inc. a subordinate adequate-protection claim. The Order also contains a § 506(c) waiver precluding surcharge of DIP Collateral without VLJ's or Wolfspeed's consent, preventing the Landlord from surcharging collateral to satisfy its claim. Without a court-ordered reserve, the Landlord would be forced to look to unencumbered sale proceeds, if any remain.

10. The Cash Collateral Order [DE# 68] provides a carve-out for professional fees but not for the Landlord's administrative rent. The attached May 2026 budget allocates only $20,000 for rent (less than one-quarter of the $87,108.72 monthly obligation) and projects a $273,468 monthly deficit to be covered by the DIP loan.

11. The 120-day deadline under § 365(d)(4) expires on or about June 30, 2026, but the sale process extends through a possible closing on July 7, 2026. This timing raises the risk that the Sale Order could affect the Lease's treatment before the Landlord has an opportunity to be heard on rejection and surrender.

## BASIS FOR LIMITED OBJECTION

I. <u>The Sale Motion Fails to Preserve and Provide for the Debtor's Mandatory Lease Obligations Under 11 U.S.C. § 365(d)(3) and the Landlord's Related Administrative Expense Claim</u>.

12. A sale order approving a free-and-clear sale under 11 U.S.C. § 363(f) should not monetize substantially all of the Debtor's assets while leaving mandatory post-petition lease obligations unreserved. Section 363(f) permits a sale free and clear of liens, claims, encumbrances, and interests, with such interests attaching to net proceeds. However, nothing in § 363(f) authorizes a sale order silent as to administrative expense claims. Here, the Sale Motion contains no distribution waterfall, no provision for payment of administrative claims, no reserve, and no language preserving administrative creditors' rights against proceeds.

13.     The Landlord's claim arises from a mandatory statutory obligation. Section 365(d)(3) provides that the debtor-in-possession "shall timely perform" all obligations under an unexpired nonresidential real property lease until assumption or rejection, "notwithstanding section 503(b)(1)." 11 U.S.C. § 365(d)(3). The Bankruptcy Court for the Western District of North Carolina has held that "shall" makes this duty mandatory. In re CSVA, Inc., 140 B.R. 116 (Bankr. W.D.N.C. 1992). Here, the Debtor has occupied the Premises continuously since the Petition Date and owes approximately $139,236.46 in post-petition rent as of May 1, 2026, with additional amounts accruing monthly.

14.     This Court has applied the same principle. In In re Aguado, this Court held that if a trustee fails to timely perform under § 365(d)(3), the lessor is entitled to a post-petition administrative rent claim, exempt from the benefit-to-the-estate standard. No. 21-00679-5-DMW, 2021 Bankr. LEXIS 3379 (Bankr. E.D.N.C. Dec. 10, 2021). Similarly, In re Eastern Agri-Systems held that the claim arises directly under § 365(d) regardless of whether the property benefits the estate. 258 B.R. 352, 354-55 (Bankr. E.D.N.C. 2000). Here, the Debtor has not only occupied but actively used the Premises, satisfying any benefit standard that might otherwise apply.

15.     The Fourth Circuit has confirmed that lease obligations under § 365(d) are recoverable as administrative expenses without limitation to actual-use value. In re Midway Airlines Corp., 406 F.3d 229, 236-41 (4th Cir. 2005) (holding lessor may recover all payments due under the lease and recognizing the Court's discretion over payment timing). This supports the Landlord's request for sale-order conditions or a reserve. Even under § 503(b)(1)(A), the Fourth Circuit's test is satisfied: the claim arises post-petition, and the Debtor's continued use of the Premises has benefited the estate. In re Merry-Go-Round Enters., 180 F.3d 149, 157 (4th Cir. 1999).

16.     The Landlord's claim is entitled to priority under § 507(a)(2), subject only to valid senior liens and superpriority claims. See Adventure Resources v. Holland, 137 F.3d 786, 789 (4th Cir. 1998). The Landlord does not ask the Court to disregard prior orders; rather, it asks that the Sale Order preserve its rights and require payment, a reserve, or a noticed distribution process before proceeds are disbursed.

II.     The Sale Structure Creates a Material Risk That the Landlord's Claim Will Go Unpaid.

17.     The Landlord does not challenge the priority of secured and superpriority claims already recognized by the Court. Rather, it seeks procedural safeguards for residual proceeds. The Credit Bid will consume a significant portion of the Purchase Price, and VLJ and Wolfspeed hold superpriority claims senior to ordinary administrative expenses. The Cash Collateral Order carves out professional fees but not landlord rent. Without transparency regarding allocation of proceeds, the Landlord cannot verify whether its claim will receive lawful priority. The Sale Order should therefore provide for payment, a reserve, or a noticed distribution process.

18.     The estate's operating budget confirms this risk. The May 2026 budget projects a monthly deficit of $273,468 to be covered by the DIP Facility and allocates only $20,000 for rent, less than one quarter of the monthly obligation. Unpaid rent will continue to accrue while DIP obligations increase, further reducing cash available at closing. If outbid, VLJ may receive up to $90,000 in break-up fees and expense reimbursement.

19.     Courts have recognized the propriety of conditioning sales on reserves when administrative insolvency is a material risk. See In re Circuit City Stores, Inc., 447 B.R. 475 (Bankr. E.D. Va. 2009) (according administrative expense priority to landlord post-petition rent claims under § 365(d)(3)). Here, the absence of a final waterfall and landlord reserve justifies sale-order protections.

20.     The Landlord's claim warrants protection equivalent to the professional-fee carve-out already in place. Unlike professional fees, which require court approval and benefit-to-the-estate analysis, the Landlord's claim arises from a mandatory statutory obligation. If the estate can protect professional fees, it should extend the same protection to the Landlord's claim through a reserve from unencumbered proceeds.

III.     <u>The Court Should Condition the Sale Order to Preserve Lease and Administrative Claim Rights and Prevent Prejudicial Disbursement of Cash Proceeds.</u>

21.     The Court has authority to condition the Sale Order to protect the Landlord's claim. Section 365(d)(3) mandates timely performance independent of § 503(b)(1). Section 363(e) requires the Court to condition a sale "as is necessary to provide adequate protection" of an entity's interest. Section 363(f) permits a free-and-clear sale only under enumerated conditions. Section 105(a) authorizes orders necessary to carry out the Bankruptcy Code. Here, the Debtor continues to occupy the Premises, and the Landlord is entitled to adequate protection.

22.     The Landlord's claim is not speculative and can be addressed now. The Debtor has occupied the Premises continuously since the Petition Date and has acknowledged the claim's administrative nature. The claim is readily calculable from Lease terms and the period of occupancy. The Court need not finally liquidate the claim; it can preserve the Landlord's rights, require payment or a reserve, and mandate notice before proceeds are distributed.

23.     The Sale Order should expressly preserve rights not being adjudicated. It should not constitute an assumption, assignment, rejection, cure determination, or adjudication of administrative claims. If the Lease is not assumed and assigned, the Landlord's rights against the estate should pass through unaffected. Any assets or records remaining at the Premises after closing should not remain without the Landlord's consent or further Court order providing for use and occupancy.

**RELIEF REQUESTED**

WHEREFORE, the Landlord respectfully requests that any order approving the Sale Motion include the following protections:

(a) Requiring payment of the Landlord's administrative expense claim at or before closing from Cash Purchase Price, unencumbered proceeds, or a consensual carve-out;

(b) Establishing a reserve of not less than $139,236.46 (plus amounts accruing after May 1, 2026 through rejection and surrender) from Cash Purchase Price, unencumbered proceeds, or a consensual carve-out, to be held pending final allowance and not disbursed except by agreement or Court order;

(c) Including Sale Order language providing that (i) the Landlord's right to assert an administrative expense claim under §§ 365(d)(3), 503(b), and 507(a)(2) is not impaired, (ii) the claim attaches to net sale proceeds, (iii) the credit bid does not satisfy or release the claim, and (iv) the Sale Order does not constitute an assumption, assignment, rejection, or cure determination;

(d) If no payment or reserve is ordered, prohibiting disbursement of cash proceeds unless the Debtor files a noticed motion identifying treatment of the Administrative Rent Claim;

(e) Prohibiting use or storage of property at the Premises after closing without the Landlord's consent or Court order providing for use-and-occupancy charges;

(f) Requiring further notice and hearing for any assumption, assignment, rejection, cure determination, or claim adjudication; and

(g) Granting such other and further relief as is just and proper.

Dated: April 27, 2026.

<div style="margin-left:40%;">

ALEXANDER RICKS, PLLC

/s/ Louis G. Spencer
Louis G. Spencer (NC Bar No. 36019)
louis@alexanderricks.com
1420 E. 7th Street, Suite 100
Charlotte, North Carolina 28204
Telephone: (980) 335-0711
Facsimile: (704) 365-3676
*Counsel for SBP Office Owner, LP*

</div>