**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **CHARLES & COLVARD, LTD.** | ) | **Case No. 26-00969-5-DMW** |
| | ) | |
| **Debtor.** | ) | **Chapter 11** |
| | ) | |

# PLAN OF REORGANIZATION
**August 31, 2026**

**HENDREN, REDWINE & MALONE, PLLC**

s/ Rebecca Redwine Grow
Jason L. Hendren (NC State Bar No. 26869)
Rebecca Redwine Grow (NC State Bar No. 37012)
Benjamin E.F.B. Waller (NC State Bar No. 27680)
Lydia C. Carpenter (NC State Bar No. 56697)
4600 Marriott Drive, Suite 150
Raleigh, NC 27612
Telephone: (919) 573-1422
Facsimile: (919) 420-0475
Email: jhendren@hendrenmalone.com
rredwine@hendrenmalone.com
bwaller@hendrenmalone.com
lcarpenter@hendrenmalone.com
COUNSEL FOR THE DEBTOR

# TABLE OF CONTENTS


I. Summary of Plan....3

II Definitions....5

III. Treatment of Administrative and Priority Tax Claims....11
a. Administrative Claims....11
b. Priority Tax Claims....11

IV. Classification and Treatment of Claims and Interests....12
Class I – Priority Non-Tax Claims....12
Class II – Van Lang Jewelry LLC ("VLJ")....12
Class III – Wolfspeed, Inc. ("Wolfspeed")....13
Class IV –Ethara Capital LLC ("Ethara")....14
Class V – Essential Lab Grown Diamonds Inc. ("Essential Lab Grown")....14
Class VI – General Unsecured Claims....15
Class VII –Equity Security Holders....15

V. Allowance and Disallowance of Claims....15

VI. Means for Implementation and Execution....16

VII. Preservation of Claims and Avoidance Actions....22

VIII. Provisions Governing Distributions....23

IX. Treatment of Executory Contracts and Unexpired Leases....23

X. Acceptance or Rejection of Plan; Effect of Rejection by Impaired Class....23

XI. "Cramdown" for Impaired Creditors Not Accepting the Plan....24

XII. Effect of Confirmation....25

XIII. Application of Plan Payments....25

XIV. Retention of Jurisdiction....25

XV. Miscellaneous Provisions....26

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **CHARLES & COLVARD, LTD.** | ) | **Case No. 26-00969-5-DMW** |
| | ) | |
| **Debtor.** | ) | **Chapter 11** |
| | ) | |

# PLAN OF REORGANIZATION

Pursuant to the provisions of Section 1123 of the Bankruptcy Code (11 U.S.C. § 1123), the Debtor, Charles & Colvard, Ltd., hereby submits the following Plan of Reorganization:

## I. SUMMARY OF PLAN

The Debtor is a North Carolina corporation founded in 1995 and headquartered in Morrisville, North Carolina. The Debtor was founded as C3 Diamante, Inc., and changed its name to C3, Inc. by Articles of Amendment filed on April 10, 1996. The Debtor subsequently changed its name to Charles & Colvard, Ltd. by Articles of Amendment filed on May 17, 2000.

At all relevant times, the Debtor was a globally recognized fine jewelry company specializing in lab-created gemstones. Its common stock was quoted on the OTC Experts Market under the symbol "CTHR." The Debtor manufactured, marketed, and distributed Charles & Colvard Created Moissanite® including its premium moissanite gemstone brand, Forever One™, as well as Caydia®, its brand of premium lab-grown diamonds. The Debtor offered gemstones and finished jewelry featuring its proprietary moissanite jewels, premium lab-grown diamonds, created color gemstones, and most recently, lab-grown diamonds in color, for sale in the worldwide fine jewelry market through two operating segments: its Online Channels segment, which encompassed its digital properties components, comprised of its charlesandcolvard.com, moissaniteoutlet.com, charlesandcolvarddirect.com, and madenetwork.com websites; e-commerce outlets, including marketplaces, drop-ship customers, and other pure-play, exclusively e-commerce customers; and its Traditional segment, which consisted of domestic and international distributors and retail customers, including end-consumers through its first Charles & Colvard Signature Showroom, which opened in October 2022. As of the Petition Date, the Debtor had a total of 26 full-time employees and 1 part-time employee.

On April 15, 2026, the Debtor filed a Motion for Order (I) Approving Private Sale of Personal Property Free and Clear of Liens, Claims, Encumbrances, and Interests; (II) Approving Stalking Horse Bidder; (III) Approving Stalking Horse Break-Up Fee; (IV) Approving Overbid Procedures and Auction; and (V) Scheduling Hearing for Final Approval of Sale of Assets filed on April 15, 2026 [DE# 71] (the "Stalking Horse Motion").

The Stalking Horse Motion was initially allowed by Order entered on April 29, 2026 [DE# 86] (the "Stalking Horse Order"), which scheduled an auction sale as well as a final sale hearing for June 22, 2026. On June 22, 2026, the Court held a final hearing on the Stalking Horse Motion (the "Final Sale Hearing") in Raleigh, North Carolina to approve and confirm the sale of the Assets to the Successful Bidder.

Following the Final Sale Hearing, the Court entered a Final Order: (I) Approving Private Sale of Personal Property Free and Clear of Liens, Claims, Encumbrances, and Interests; and (II) Approving Successful Bidder [DE# 114] (the "Final Sale Order"), whereby AJS Creations, Inc. ("AJS") was approved as the Successful Bidder (as defined in the Stalking Horse Order) with a winning bid in the amount of $2,700,000.00 for the Assets (as defined in the Final Sale Order). The Debtor received the balance of the $2,700,000.00 purchase price (less the required deposit previously received) from AJS on July 1, 2026 (the "Liquidation Proceeds").

On August 10, 2026, the Debtor filed a Motion for Order Authorizing Disbursement of Sale Proceeds [DE# 134] seeking authorization to disburse the Liquidation Proceeds (the "Disbursement Motion"). The Disbursement Motion remains pending.

The Debtor's Plan of Reorganization ("Plan") provides for payments to its creditors from cash on hand, the Liquidation Proceeds, and net recoveries from chapter 5 actions.

The Debtor will pay the administrative costs from cash on hand and the Liquidation Proceeds upon such mutually acceptable terms as the parties may agree and as set forth more fully herein.

Any and all priority taxes due and owing to the Internal Revenue Service, N.C. Department of Revenue, or any county or city taxing authority shall be paid as set forth more fully herein.

The Debtor will treat secured claims as outlined more fully herein. In accordance with the liquidation analysis attached to the Disclosure Statement as Exhibit "C", the Debtor will make distributions to allowed unsecured claims as outlined more fully herein.

The Debtor's liabilities will be paid according to the priorities of the Bankruptcy Code and the Orders of this Court. The specific amounts and terms of payment will be made according to the treatment of each respective creditor.

## II. DEFINITIONS

1. "ADMINISTRATIVE CLAIM" or "ADMINISTRATIVE EXPENSE CLAIM" shall mean any Claim allowed under 11 U.S.C. § 503(b) and entitled to priority pursuant to 11 U.S.C. § 507(a)(2) that has not been paid by the Debtor.

2. "AJS" shall mean AJS Creations, Inc.

3. "ALLOWED" shall mean (a) any Claim against the Debtor, proof of which was timely filed or, by order of the Court, was not required to be filed; or (b) any Claim that has been listed in the Debtor's Schedules as liquidated in an amount and not disputed or contingent; and in each case in (a) or (b) above, as to which either (1) no objection to the allowance thereof or other similar pleading has been filed within the applicable period set forth in Section VII below, or (2) an objection or other similar pleading has been filed and the Claim has been allowed by a Final Order of the Court, but only to the extent so allowed; or (c) the treatment of a claim as set forth in the Plan.

4. "ASSETS" shall have the meaning ascribed to it in the Final Order: (I) Approving Private Sale of Personal Property Free and Clear of Liens, Claims, Encumbrances, and Interests; and (II) Approving Successful Bidder entered by the Court on June 25, 2026 [DE# 114].

5. "BANKRUPTCY CODE" shall mean the United States Bankruptcy Code, Title 11 of the United States Code, as enacted in 1978 and thereafter amended. References to "§ ___" herein shall refer to a section of the Bankruptcy Code, 11 U.S.C. §§ 101, et seq.

6. "BANKRUPTCY RULES" shall mean the Federal Rules of Bankruptcy Procedure, as well as the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of North Carolina, as amended from time to time, as applicable to Chapter 11 cases.

7. "BENEFICIARY" shall mean a "Beneficiary" as defined in the Litigation Trust Agreement.

8. "CAUSES OF ACTION" shall mean any and all causes of action, grievances, arbitrations, suits, demands, demand letters, claims, complaints, notices of non-compliance or violation, enforcement actions, investigations or proceedings that belong to the Debtor and/or the Estate that are or may be pending on the Effective Date or that may be instituted or prosecuted by the Litigation Trustee on behalf of the Estate against any Person or Entity, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the Effective Date including,

without limitation: (i) the right to object to Claims; (ii) all avoidance powers, actions (including all claims and causes of action arising under Chapter 5 of the Bankruptcy Code), rights, remedies or affirmative defenses under the Bankruptcy Code and state law; (iii) all claims under insurance policies applicable to the Debtor; and (iv) all D&O Claims, if any. Except as otherwise expressly provided in the Plan, any and all Causes of Action are preserved under the Plan.

9. "CHAPTER 5 ACTIONS" means any and all claims arising under chapter 5 of the Bankruptcy Code and any and all fraudulent conveyance, voidable preference, or avoidable transfer claims that, in any instance, could be brought under state or federal law. The term "Chapter 5 Actions" shall include, but not be limited to, all causes of action under chapter 5 of the Bankruptcy Code and any similar state or federal law against all persons and entities identified as recipients of transfers from the Debtor prior to the Petition Date.

10. "CLAIM" shall mean a duly listed or a timely filed claim which is allowed in order to be paid by the Court. Claim shall also mean the treatment in the Plan to be provided to a creditor. If a conflict arises between a filed claim and the treatment of the claim set forth in the Plan, the treatment set forth in the Plan shall control.

11. "CLAIMS BAR DATE" shall mean, as applicable, (a) July 13, 2026 for nongovernmental creditors, or (b) such other period of limitation as may be specifically fixed by an Order of the Court for the filing of certain Claims.

12. "CLASS" shall mean any one of the Classes of Claims or Interests designated in Section IV of the Plan.

13. "CONFIRMATION DATE" shall mean the date of entry by the Court of an order confirming the Plan at or after a hearing pursuant to 11 U.S.C. § 1129.

14. "CONFIRMATION HEARING" shall mean the hearing conducted by the Court regarding confirmation of the Plan pursuant to 11 U.S.C. § 1129.

15. "CONFIRMATION ORDER" shall mean the order of the Court confirming the Plan.

16. "COURT" shall mean the United States Bankruptcy Court for the Eastern District of North Carolina, including the United States Bankruptcy Judge presiding in the Chapter 11 case of the Debtor.

17. "CREDITORS" shall mean all creditors of the Debtor holding claims for unsecured debts, liabilities, demands or claims of any character whatsoever.

18. "D&O CLAIMS" shall mean all rights and claims against the Debtor's former

directors and officers for, *inter alia*, breach of fiduciary duty, breach of the implied duty of good faith and fair dealing, and the proceeds of any such claims, including from any insurance policies associated therewith.

19. "DEBTOR" shall mean Charles & Colvard, Ltd.

20. "DISALLOWED" shall mean, with respect to any Claim, a Claim (i) proof of which is not filed prior to the applicable Claims Bar Date (as defined herein), or (ii) which is not listed on the Debtor's Schedules, or (iii) which is listed on the Debtor's Schedules as disputed, contingent, or unliquidated, or (iv) which is listed on the Debtor's Schedules as having a value of $0.00. Any Disallowed Claim shall not be entitled to any distribution under this Plan on account of such Claim, and such Disallowed Claim shall be disregarded for all purposes.

21. "DISBURSING AGENT" shall mean Jason L. Hendren, attorney, or that person selected by the Court who shall perform the duties and have the rights and obligations described herein.

22. "DISBURSEMENT MOTION" shall mean that certain Motion for Order Authorizing Disbursement of Sale Proceeds filed by the Debtor on August 10, 2026 [DE# 134].

23. "DISCLOSURE STATEMENT" shall mean the Disclosure Statement describing this Plan prepared in accordance with § 1125 and approved by order of the Court, to be distributed to the holders of Claims whose votes with respect to this Plan are to be solicited.

24. "DISPUTED CLAIM" shall mean any claim (a) that is scheduled by the Debtor as disputed, contingent, unliquidated, or for an "unknown" or $0.00 amount, or (b) that is scheduled by the Debtor, or proof of which has been filed with the Court and with respect to which a timely objection to allowance, in whole or in part, has been filed and which objections have not been (i) withdrawn or settled, or (ii) determined by a Final Order. For the avoidance of doubt, if no proof of Claim has been filed by the applicable Claims Bar Date and the Claim (i) is not listed on the Debtor's Schedules, or (ii) has been or is hereafter listed on the Debtor's Schedules as disputed, contingent, unliquidated, or having a value of $0.00, then such Claim shall be Disallowed and shall be disregarded for all purposes.

25. "DISTRIBUTION DATE" shall mean the date on which distributions are to be made under the Plan.

26. "EFFECTIVE DATE" shall be the date that is fifteen (15) days following entry of the Confirmation Order.

27. "FINAL DECREE" shall mean the order of this Court pursuant to Bankruptcy Rule 3022 closing this case.

28. "FINAL DIP ORDER" shall mean that certain Final Order Approving Debtor-in-Possession Financing entered by this Court on April 13, 2026 [DE# 69].

29. "FINAL DISTRIBUTION DATE" shall mean the date on which the distribution is made from the Litigation Trust that finally and fully exhausts the assets of the Litigation Trust.

30. "FINAL ORDER" shall mean an order of the Court that has been entered and either (a) the time for appeal from such entered order has expired, or (b) any appeal that has been time filed has been dismissed or otherwise finally determined.

31. "FINAL SALE ORDER" shall mean that certain Final Order: (I) Approving Private Sale of Personal Property Free and Clear of Liens, Claims, Encumbrances, and Interests; and (II) Approving Successful Bidder entered on June 25, 2026 [DE# 114].

32. "GENERAL UNSECURED CLAIM" shall mean any claim, whether or not liquidated or contingent, other than a tax claim, administrative claim, or secured claim. General Unsecured Claim shall not include claims that were not filed by creditors with the claim of that creditor being listed in the Debtor's Schedules as disputed. General Unsecured Claim shall include any under-secured portions of a secured claim as may be specified in the Plan.

33. "GUC LITIGATION TRUST ASSETS" shall mean all Assets and other corpus of the Litigation Trust Estate available for distribution to holders of Allowed General Unsecured Claims (Class VI) after payment of all other amounts required by this Plan, including, but not limited to (i) payments to holders of Allowed unclassified Claims, Allowed Priority non-tax Claims (Class I), Allowed Secured Claims (including, to the extent Allowed, the Wolfspeed Claim and the Secured Claims of any other lienholders); (ii) all required statutory fees; and (iii) all costs and expenses of administration of the Litigation Trust, including all Post-Effective Date Expenses.

34. "IMPAIRED" classes of creditors are those whose claims or interests are altered by the Plan, or who will not receive under the Plan the allowed amount of their claims in cash as of the "Effective Date" (as defined in the Plan).

35. "LIQUIDATION PROCEEDS" shall mean the $2,700,000.00 received by the Debtor from AJS from the Debtor's sale of the Assets as set forth herein.

36. "LITIGATION TRUST" means the trust to be established pursuant to this Plan and

the Litigation Trust Agreement that will (a) pursue various Causes of Action, whether arising before or after the Petition Date of the Debtor, to enable further recoveries to Creditors of the Estate and (b) effectuate the wind down of the Debtor and make distributions pursuant to the terms of the Plan and Litigation Trust Agreement. With respect to any action required or permitted to be taken by the Litigation Trust, the term includes the Litigation Trustee or any other Person authorized to take such action in accordance with the Litigation Trust Agreement. In the event of any conflict between the terms of this Plan and the terms of the Litigation Trust Agreement, the terms of this Plan shall govern.

37. "LITIGATION TRUST AGREEMENT" shall mean that certain agreement which will be entered into prior to the Effective Date by the Debtor and the Litigation Trustee pursuant to Section VI of the Plan, will be subject to approval by the Bankruptcy Court, and will become part of the Plan pursuant to the Confirmation Order. The Litigation Trust Agreement will be filed with Bankruptcy Court fifteen (15) days prior to the date that ballots are due to be filed.

38. "LITIGATION TRUST ESTATE" shall mean collectively, (i) all assets transferred to the Litigation Trust pursuant to this Plan on the Effective Date or at any time thereafter pursuant to this Plan, and (ii) such additional or different corpus as the Litigation Trustee may from time to time acquire and hold in trust pursuant to the Litigation Trust Agreement.

39. "LITIGATION TRUST EXPENSE RESERVE" shall mean that certain reserve established by the Litigation Trustee to pay the Post-Effective Date Expenses.

40. "LITIGATION TRUSTEE" shall mean John C. Bircher III or such other person that is identified in a Plan supplement to be filed prior to confirmation, who shall serve as the trustee of the Litigation Trust as of the date of execution of the Litigation Trust Agreement, and any successor Litigation Trustee appointed as provided in the Litigation Trust Agreement. Any changes to the identity of the Litigation Trustee will be subject to approval of the Bankruptcy Court and will become part of the Plan pursuant to the Confirmation Order.

41. "PETITION DATE" shall mean the date upon which the Debtor filed the voluntary Chapter 11 petition, to wit, March 2, 2026.

42. "PLAN" shall mean this Plan of Reorganization in its present form or as it may be amended or modified.

43. "POST-EFFECTIVE DATE EXPENSES" shall mean all voluntary and involuntary costs, expenses, charges, obligations, or liabilities of any kind or nature, whether unmatured, contingent, or unliquidated, incurred by the Litigation Trust after the Effective Date until the Litigation Trust is dissolved, including, but not limited to,

those expenses described in Section VI(J) of this Plan.

44. "PRIORITY CLAIM" shall mean any claim to the extent entitled to priority in payment under § 507.

45. "PRIORITY TAX CLAIM" shall mean any claim entitled to priority in treatment pursuant to § 507(a)(7).

46. "PROFESSIONAL" shall mean any person or entity employed pursuant to a Bankruptcy Court order in accordance with Sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered or reimbursed for expenses incurred pursuant to Sections 327, 328, 329, 330 or 331 of the Bankruptcy Code.

47. "PROFESSIONAL FEE CLAIMS" shall mean all Administrative Claims for the compensation of and/or reimbursement of expenses incurred by Professionals to the extent such fees and expenses have not been previously paid.

48. "PRO-RATA" shall mean the amount of cash or property to be paid or distributed to a claimant with respect to an Allowed Claim on a particular date, in accordance with the ratio, as of such date, of the dollar amount of the Allowed Claim of such person in the indicated class to the aggregate dollar amount of Claims in the indicated class (including, in each such calculation, the full amount of Disputed Claims in the class which have been asserted or are otherwise pending and which have not yet been allowed or otherwise disposed of).

49. "REMAINING ASSETS" shall mean the Debtor's and the estate's assets other than the Assets, including without limitation all Retained Causes of Action.

50. "RETAINED CAUSES OF ACTION" shall mean all causes of action of the Debtor which are Remaining Assets, including without limitation Chapter 5 Actions.

51. "SECURED CLAIM" shall mean a Claim (a) secured by a lien, security interest, or other encumbrance on property in which the estate of the Debtor against which the Claim is asserted has an interest, which lien, security interest, or other encumbrance is valid, perfected and enforceable pursuant to applicable law or by reason of a Final Order entered by the Court, to the extent of the value of the Creditor's interest in the estate's interest in such property as determined pursuant to 11 U.S.C. § 506(a) and not subject to subordination; (b) subject to setoff pursuant to 11 U.S.C. § 553, to the extent of the value of the property subject to setoff; or (c) otherwise Allowed pursuant to the Plan as a Secured Claim. Secured Claim does not include that portion of the Creditor's Claim exceeding the value of the collateral or the Creditor's interest in the Debtor's interest in the collateral and does not include the value of any avoidable portion of such lien.

52. "SECURED CREDITOR" shall mean any Creditor that holds a Secured Claim against the Debtor or the Assets. The Claim of such Creditor exceeding the value of the collateral, or exceeding the Creditor's interest in the Debtor's interest in the collateral, and the Claim of such Creditor to the extent of the present amount of any avoidable lien, shall be an Unsecured Claim.

53. "SUBSTANTIAL CONSUMMATION" shall mean the time the Reorganized Debtor has commenced the distribution of initial Plan payments to all creditor classes.

54. "UNIMPAIRED" shall mean any Claim or Interest that is not designated as Impaired.

55. "UNSECURED CLAIM" shall mean the debt or Claim of a Creditor: (a) that is unsecured or is not secured by the Debtor's Assets, (b) that is secured by a lien or security interest against the Debtor's Assets, which lien or security interest is invalid, unenforceable, or avoidable due to the provisions of the Bankruptcy Code, the Debtor's exemptions, or for any other reason, (c) the Claim of a Creditor to the extent that the Claim exceeds the value of the collateral held by such Creditor, or the Creditor's interest in the Debtor's interest in the collateral, or (d) the Claim of a Creditor to the extent of the present amount of any invalid, improperly perfected, or avoided lien or any lien which is not immediately enforceable against the Debtor.

## III. TREATMENT OF ADMINISTRATIVE AND PRIORITY TAX CLAIMS

a. Administrative Claims. Except to the extent the holder of an allowed Administrative claim agrees otherwise, each holder of an allowed Administrative claim shall be paid in cash (or such other form as is agreed upon by any holder of an allowed Administrative claim) and in full as soon as practicable after the later of (a) the Effective Date or (b) the date on which such claim becomes an allowed administrative claim, except that allowed administrative claims arising in the ordinary course of business shall, if due at a later date pursuant to its terms, be paid when otherwise due.

EXCEPT FOR COURT-APPROVED PROFESSIONALS, ALL OTHER ADMINISTRATIVE CLAIMS AGAINST THE ESTATE MUST BE FILED WITHIN THIRTY DAYS (60) OF THE DATE OF THE CONFIRMATION ORDER. OTHERWISE, SUCH CLAIMS SHALL BE WAIVED AND SHALL NOT BE ASSERTED AGAINST THE ESTATE AT ANY TIME. AS TO COURT-APPROVED APPROVED PROFESSIONALS, ALL TIME AND EXPENSES THAT REMAIN UNPAID AS OF CONFIRMATION MUST FILED WITHIN NINETY (90) DAYS OF THE CONFIRMATION ORDER. OTHERWISE, SUCH CLAIMS SHALL BE WAIVED AND SHALL NOT BE ASSERTED AGAINST THE ESTATE AT ANY TIME.

b. Priority Tax Claims. Except to the extent that a holder of a Priority Tax Claim and the Debtor agree to less favorable treatment, Priority Tax Claims shall be paid in full from distribution

of the Liquidation Proceeds and from net recoveries in any Chapter 5 Actions. These claims shall be reduced by any post-petition payments paid on the pre-petition claims. Any Claim or demand for a penalty relating to any Priority Tax Claim (other than a penalty of the type specified in § 507(a)(8)(G) of the Bankruptcy Code) shall be included in the class of, and shall be treated as, General Unsecured Claims as set forth below. Except as provided in the Plan, any holder of a Priority Tax Claim shall not assess or attempt to collect such penalty from the Debtor, the Estate, or the Debtor's assets and property. Unsecured Claims of taxing authorities not entitled to priority under § 507(a)(8) of the Bankruptcy Code are included in the class of, and shall be treated as, General Unsecured Claims as set forth below.

## IV. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and are excluded from the following Classes. Section III above describes the treatment of Administrative Claims and Priority Tax Claims. For the purposes of this Plan, Holders of Claims against, or Equity Interests in, the Debtor are classified as follows in accordance with section 1122(a) of the Bankruptcy Code:

**A. Class I – Priority Non-Tax Claims**. Holders of Allowed Claims in Class I shall receive distributions from available Liquidation Proceeds prior to distributions to general unsecured creditors in Class VI.

(1) Classification. This Class consists of all Allowed Priority Claims that have not been paid by the Debtor, other than Priority Tax Claims and Administrative Claims.

(2) Impairment. This Class is Impaired by the Plan.

(3) Treatment. The holders of Allowed Claims in this Class shall be paid in full from distribution of the Liquidation Proceeds and from net recoveries in any Chapter 5 Actions and shall receive (a) all amounts to which such holder is entitled on account of such Allowed Claim on the later of (i) the Effective Date (to the extent funds are available after considering all senior in priority allowed claims and costs of administration) or (ii) the date when such Allowed Claim becomes due and payable according to its terms and conditions, or (b) such other, less favorable treatment as is agreed upon by the Debtor and the holder of such Allowed Priority Non-Tax Claim.

**B. Class II – Van Lang Jewelry LLC ("VLJ").**

(1) Classification. Pursuant to the Final DIP Order Approving Debtor-in-Possession Financing entered by the Court on April 13, 2026 [DE# 69] (the "Final DIP Order"), Van Lang Jewelry LLC ("VLJ") was granted a first-priority security interest in the Debtor's Precious Metals as security for a debtor-in-possession loan from VLJ to the Debtor (the "DIP Loan"). Following the sale of the Debtor's Assets to AJS Creations, Inc. pursuant to the Final Order: (I) Approving Private Sale of Personal Property Free and Clear of Liens, Claims, Encumbrances, and Interests; and (II) Approving Successful Bidder entered on June 25, 2026 [DE#

114] (the "Final Sale Order"), the Debtor distributed $45,000.00 to VLJ for its approved Break-Up Fee pursuant to the Stalking Horse Order on July 9, 2026 Thereafter, on July 14, 2026, the Debtor distributed $638,693.00 of the Liquidation Proceeds to VLJ in full repayment of all amounts owing under the DIP Loan, with the exception of attorneys' fees and expenses in the asserted amount of $82,350.00. The Debtor and VLJ have been in discussions regarding the amount of the asserted attorneys' fees and expenses, and which attorneys' fees and expenses are recoverable under the DIP Loan. Class II shall consist of VLJ's claim for reimbursement of attorneys' fees and expenses pursuant to the DIP Loan.

(2) Impairment. This Class will be impaired.

(3) Treatment. This obligation shall be treated as a secured obligation of the Debtor and paid in full from the Liquidation Proceeds in an amount to be agreed upon by the parties or otherwise determined by the Court. VLJ shall retain its liens pursuant to Section 1129(b)(2)(A)(i)(1) of the Bankruptcy Code until the secured claim is paid.

**C. Class III – Wolfspeed, Inc. ("Wolfspeed")**

(1) Classification. The Debtor is indebted to Wolfspeed, Inc. ("Wolfspeed") pursuant to an Exclusive Supply Agreement dated December 12, 2014, as amended, and a Confidential Settlement Agreement between the parties dated on or about February 7, 2025. On May 8, 2023, Wolfspeed filed a UCC-1 financing statement against the Debtor with the North Carolina Secretary of State, bearing File No. 20230058140G (the "Wolfspeed UCC"). The Wolfspeed UCC covers "All assets of the Debtor, whether now owned or hereafter acquired, together with all proceeds, products, accessions and additions with respect to each of the foregoing from time to time, including, without limitation, any insurance proceeds, but expressly excluding assets that constitute precious metals, regardless of form." (Emphasis added.) According to Wolfspeed's filed proof of claim (Claim No. 29) (the "Wolfspeed Claim"), as of the Petition Date the outstanding balance owed to Wolfspeed was $2,437,095.89. In the Disbursement Motion, the Debtor has proposed to pay $475,000.00 of the Liquidation Proceeds toward the Wolfspeed Claim and Wolfspeed has agreed to accept such payment in full satisfaction of its secured claim against the Estate.

(2) Impairment. This Class will be impaired.

(3) Treatment. Consistent with the Disbursement Motion, this obligation shall be treated as a secured obligation of the Debtor in the amount of $475,000.00 and shall be paid from the Liquidation Proceeds upon approval of the Disbursement Motion. Wolfspeed shall retain its liens pursuant to Section 1129(b)(2)(A)(i)(1) of the Bankruptcy Code until the secured claim is paid. The balance of the Wolfspeed claim, in the amount of $1,962,095.89, shall be treated in Class VI, General Unsecured Claims, hereunder.

**D. Class IV – Ethara Capital LLC (“Ethara”)**

(1) Classification. The Debtor is indebted to Ethara Capital LLC (“Ethara”) pursuant to a Convertible Secured Note Purchase Agreement dated June 24, 2025 and a Secured Convertible Note dated July 3, 2025. On December 4, 2025, Ethara filed a UCC-1 financing statement against the Debtor with the North Carolina Secretary of State, bearing File No. 20250178577F (the “Ethara UCC”). The Ethara UCC purportedly covers “All fixtures and personal property of every kind and nature”. According to Ethara’s filed proof of claim (Claim No. 23) (the “Ethara Claim”), as of the Petition Date the outstanding balance owed to Ethara was $2,143,432.52. The Ethara Claim is disputed and is the subject of a pending adversary proceeding seeking to avoid Ethara’s purported lien (Adv. Proc. No. 26-00017-5-DMW) (the “Ethara AP”). On July 31, 2026, the Debtor filed a Motion for Summary Judgment in the Ethara AP [AP DE# 13] together with a brief in support thereof [AP DE# 14]. Ethara did not oppose the Debtor’s Motion for Summary Judgment.

(2) Impairment. This Class will be impaired.

(3) Treatment. The purported lien of Ethara shall be avoided. The Ethara Claim shall be treated in Class VI, General Unsecured Claims, hereunder. Within thirty (30) days of the Effective Date, Ethara shall terminate the Ethara UCC. If Ethara fails to timely terminate the Ethara UCC, then the Debtor shall be authorized and entitled to terminate the Ethara UCC on behalf of Ethara.

**E. Class V – Essential Lab Grown Diamonds Inc. (“Essential Lab Grown”)**

(1) Classification. The Debtor is purportedly indebted to Essential Lab Grown Diamonds Inc. (“Essential Lab Grown”) pursuant to a Consignment Agreement, Consignment and Security Agreement, and/or Consignment Memoranda. On April 4, 2021, Essential Lab Grown filed a UCC-1 financing statement against the Debtor with the North Carolina Secretary of State, bearing File No. 20210042326C (the “Essential Lab Grown UCC”). The Essential Lab Grown UCC purportedly covers certain “[l]oose laboratory-grown diamonds . . . delivered on consignment terms by [Essential Diamonds] pursuant to Consignment Agreement, Consignment and Security Agreement, and/or Consignment Memoranda, to or for the account of the Debtor . . . together with all products and proceeds of any nature (including insurance proceeds), and all receivables and contract rights created by the sale of the Collateral.” Essential Lab Grown has not yet filed a proof of claim. As of the Petition Date, the outstanding balance owed to Essential Lab Grown is believed to be approximately $66,024.00 (the “Essential Lab Grown Claim”). Importantly, the Essential Lab Grown UCC was not continued and therefore lapsed on April 4, 2026.

(2) Impairment. This Class will be impaired.

(3) Treatment. Any purported lien of Essential Lab Grown shall be avoided. The Essential Lab Grown Claim, if any, shall be treated in Class VI, General Unsecured Claims, hereunder. Within thirty (30) days of the Effective Date, Essential Lab Grown shall terminate the

Essential Lab Grown UCC. If Essential Lab Grown fails to timely terminate the Essential Lab Grown UCC, then the Debtor shall be authorized and entitled to terminate the Essential Lab Grown UCC on behalf of Essential Lab Grown.

**F. <u>Class VI –General Unsecured Claims</u>.**

(1) <u>Classification</u>. This Class shall consist of all Allowed General Unsecured Claims listed in the Debtor's Schedules or as otherwise approved by the Court.

(2) <u>Impairment</u>. This Class will be impaired.

(3) <u>Treatment</u>. The total of Allowed General Unsecured Claims is shown on **Exhibit B** to the Disclosure Statement. Claimants in this Class will receive pro-rata distributions from the net proceeds of the GUC Litigation Trust Assets, after payment to creditors in all senior classes in accordance with the various treatments set forth herein.

**G. <u>Class VII –Equity Security Holders</u>.**

(1) <u>Classification.</u> This class consists of all shareholders of the Debtor.

(2) <u>Impairment</u>. This class will be impaired.

(3) <u>Treatment</u>. All classes of equity in the Debtor shall be deemed cancelled as of the Effective Date. The equity security holders shall not receive any distributions or retain any value on account of their respective interests in the Debtor unless and until all senior classes of creditors are paid in full. The Debtor does not anticipate any distribution to equity security holders.

## V. <u>ALLOWANCE AND DISALLOWANCE OF CLAIMS</u>

### A. Claims Subject to Objection

All Claims and security interests listed herein are, unless expressly accepted or consented to herein, subject to objections by the Litigation Trustee or any party in interest. All Disputed Claims shall be litigated to final order, settled, or withdrawn. The Litigation Trustee shall have authority to settle Disputed Claims without approval of the Court.

### B. Claims Objection Bar Date

Unless a different date is set by order of the Court, all objections to Claims shall be filed (i) 180 days after the Effective Date; or, (ii) such later date as the Court may establish upon a motion by the Debtor, which may be approved without notice to any party-in-interest or hearing, provided however, that the Debtor may object or otherwise pursue any claims against Secured Creditors relating to the payoff and/or satisfaction of their Secured Claims at any time.

**C. No Distributions on Disputed Claims**

Except as may be otherwise agreed with respect to any Disputed Claim, no distribution under this Plan shall be made with respect to any portion of a Disputed Claim until such Disputed Claim shall have become an Allowed Claim or settled by the Debtor or Litigation Trustee. Notwithstanding any date specified earlier in this Plan for the commencement of payments under this Plan on any particular Claim, if an objection to a Claim has been filed but not resolved at the time distribution on such Claim would otherwise commence if such Claim were an Allowed Claim, the first payment on such Claim under this Plan shall commence on the first day of the second month following the allowance of the Claim by Final Order, withdrawal of objection, or other resolution or compromise. If commencement of payments on any Claim are delayed under this Section, any payments subsequent to the first payment otherwise due under this Plan before the delayed commencement date shall, at the option of the Litigation Trustee in its sole discretion, be deferred to the end of the payment term and the payment term shall be extended so as to allow such payment to be made on the same periodic basis as the immediately preceding payments under the Plan.

## VI. MEANS FOR IMPLEMENTATION AND EXECUTION

A. **Overview**. This Plan provides for payments to creditors consistent with the priority provisions of the Bankruptcy Code. The Debtor shall make payments under the Plan from cash on hand, from Litigation Proceeds, and from the net proceeds from the sale, liquidation, or other disposition of the Remaining Assets (including the litigation of Retained Causes of Action). This Plan also creates a mechanism for the Litigation Trustee to pursue claims and Causes of Action, including Chapter 5 Actions and D&O Claims to enable recoveries to Creditors herein.

B. **Establishment of Litigation Trust; Appointment of Litigation Trustee**. Prior to the Effective Date, the Debtor shall execute the Litigation Trust Agreement. The Litigation Trust Agreement is hereby incorporated into this Plan in its entirety as if set forth in full. The Litigation Trust Agreement contains provisions customary to trust agreements utilized in comparable circumstances, including, but not limited to, provisions necessary to ensure the continued treatment of the Litigation Trust as a grantor trust.

On the Effective Date, and in accordance with the Confirmation Order, the Estate's title to all the Assets shall automatically pass to the Litigation Trust, free and clear of all Claims and Equity Interests in accordance with Section 1141 of the Bankruptcy Code. Notwithstanding the foregoing, the Debtor reserves the right to modify the Plan to exclude certain Assets from transfer to the Litigation Trust. The Confirmation Order shall constitute a determination that the transfers of the Assets to the Litigation Trust are legal and valid and consistent with the laws of the State of North Carolina.

All parties shall execute any documents or other instruments as necessary to cause title to the applicable Assets to be transferred to the Litigation Trust. The Assets will be held in trust for the benefit of all holders of Allowed Claims pursuant to the terms of the Plan and the Litigation Trust Agreement.

The Litigation Trustee shall be John C. Bircher III or such other person that may be identified in a Plan supplement to be filed prior to confirmation. The Litigation Trustee will pay or otherwise make distributions on account of all Allowed Claims against the Debtor in accordance with the terms of the Plan.

**This Plan shall be interpreted so as to afford, for the benefit of all holders of Allowed Claims, the greatest opportunity for maximum recovery by the Litigation Trustee on the Assets, Chapter 5 Actions, D&O Claims, and rights in and to proceeds of any insurance policies. The proceeds of all Causes of Action will potentially increase recoveries to Creditors herein**.

C. **Income Tax Status of Litigation Trust**. For federal income tax purposes, all parties (including, without limitation, the Debtor, the Litigation Trustee, and the Beneficiaries of the Litigation Trust Estate) shall treat the Litigation Trust as a liquidating trust within the meaning of Treasury Income Tax Regulation section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124. For federal income tax purposes, the transfer of Assets to the Litigation Trust under the Plan shall be treated as a deemed transfer to the Beneficiaries of the Litigation Trust Estate in satisfaction of their Claims followed by a deemed transfer of the Assets by the Beneficiaries to the Litigation Trust. For federal income tax purposes, the Beneficiaries will be deemed to be the grantors and owners of the Litigation Trust and its Assets. For federal income tax purposes, the Litigation Trust will be taxed as a grantor trust within the meaning of Internal Revenue Code ("IRC") sections 671-677 (a non-taxable passthrough tax entity) owned by the Beneficiaries. The Litigation Trust will file federal income tax returns as a grantor trust under IRC section 671 and Treasury Income Tax Regulation section 1.671-4 and report, but not pay tax on, the Litigation Trust's tax items of income, gain, loss deductions, and credits ("Tax Items"). The Beneficiaries will report such Tax Items on their federal income tax returns and pay any resulting federal income tax liability. All parties will use consistent valuations of the Assets transferred to the Litigation Trust for all federal income tax purposes. The Assets shall be valued based on the Litigation Trustee's good faith determination of their fair market value.

D. **Powers and Authority of the Litigation Trustee**. The powers of the Litigation Trustee are set forth in full in the Litigation Trust Agreement and shall include, among other things: (a) the power to sell, lease, license, abandon, or otherwise dispose of all remaining Assets of the Litigation Trust Estate subject to the terms of this Plan; (b) the power to effect distributions under this Plan to the holders of Allowed Claims; (c) the authority to pay all costs and expenses of administering the Litigation Trust Estate after the Effective Date (including the Post-Effective Date Expenses), including the power to employ and compensate persons or professionals to assist the Litigation Trustee in carrying out any of his duties hereunder, and to obtain and pay premiums

for insurance and any other powers necessary or incidental thereto; (d) the power to implement this Plan including any other powers necessary or incidental thereto; (e) the authority to prosecute all Causes of Action on behalf of the Debtor and the Litigation Trust Estate, including Chapter 5 Actions and D&O Claims; (f) the authority to settle Claims, applicable Causes of Action, or disputes as to amounts owing to the Estate in his sole discretion; (g) the authority to participate in any post-Effective Date motions to amend or modify this Plan or the Litigation Trust Agreement, or appeals from the Confirmation Order; (h) the authority to participate in actions to enforce or interpret this Plan; (i) the authority to manage the Litigation Trust Estate; and (j) the power to bind the Litigation Trust. Each of the foregoing powers may be exercised by the Litigation Trustee without further order of the Bankruptcy Court. Notwithstanding any of the foregoing, the Litigation Trustee may not materially amend or alter the terms and provisions of this Plan.

E. **Funding of the Litigation Trust**. The funding of the Litigation Trust for the payments to be made to holders of Allowed Claims under the Plan and the payment of Post-Effective Date Expenses will be from (i) the Litigation Trust Expense Reserve, (ii) the Debtor's cash on hand as of the Effective Date, which will be transferred to the Litigation Trust as of the Effective Date and proceeds from any investment of such cash, and (iii) the proceeds of the liquidation of the Assets, including, without limitation, any claims or Causes of Action.

F. **Litigation Trust's Post-Effective Date Expenses**. All expenses related to implementation of the Plan incurred from and after the Effective Date through the date on which the Litigation Trust is dissolved will be expenses of the Litigation Trust, and the Litigation Trustee will disburse funds from the Litigation Trust Expense Reserve, as appropriate, for purposes of paying the Post-Effective Date Expenses of the Litigation Trust without the need for any further Order of the Court and in his sole discretion. The Post-Effective Date Expenses shall include, but are not limited to, the fees and expenses of the Litigation Trustee, the fees and expenses of the Professionals employed by the Litigation Trustee, fees and expenses of the current board members to assist the Litigation Trustee, and other costs, expenses and obligations of the Litigation Trust until the date the Litigation Trust is terminated in accordance with section VI(J) hereof and the Litigation Trust Agreement.

Prior to making a distribution to any holders of Allowed Claims under the Plan, the Litigation Trustee may place in reserve and/or in a separate account any funds that may be needed to pay Claims that are subject to dispute and Claims that have otherwise not been Allowed in the event that all or a portion of such Claims become Allowed Claims (the **"Distribution Reserve"**). When a Claim is Allowed or Disallowed (and thus becomes an Allowed Claim or a Disallowed Claim, in whole or in part), the funds set aside on account of such Claim shall be released from the Distribution Reserve and shall be available for distribution in accordance with the terms of this Plan to either (i) the Holder of the Claim that has become an Allowed Claim, or (ii) if Disallowed, the Holders of Allowed Claims. Consistent with the terms of this Plan, the Litigation Trustee, in his sole discretion, on and after the Effective Date, shall have authority to increase or decrease the Distribution Reserve, as reasonably necessary and appropriate, and upon satisfaction of all Allowed Claims required to be paid from the Distribution Reserve, to transfer amounts held therein for distribution pursuant to the Plan.

G. **Use of Existing Accounts**. The Litigation Trustee may use the Debtor's existing bank accounts (as of the Effective Date) for the purposes set forth herein, to the extent possible and desired. The Litigation Trustee also may close the Debtor's existing bank accounts, at his discretion, and transfer all amounts therein to one or more accounts, in accordance with the terms of this Plan. Alternatively, notwithstanding any provisions to the contrary in this Plan, the Litigation Trustee may invest some or all the funds that would otherwise be deposited into the accounts established pursuant to the Plan in allowed investments under applicable non-bankruptcy law.

H. **Employment and Compensation**. The Litigation Trustee shall be bonded and shall receive compensation for serving as Litigation Trustee as set forth in the Litigation Trust Agreement. At any time after the Effective Date and without further Order of the Bankruptcy Court, the Litigation Trustee may employ Persons or Entities, including Professionals (which may, but need not, include Professionals previously or currently employed in the Chapter 11 Case) reasonably necessary to assist the Litigation Trustee in the performance of his duties under the Litigation Trust Agreement and this Plan. Such Persons or Entities shall be compensated and reimbursed by the Litigation Trustee for their reasonable and necessary fees and out of pocket expenses on a monthly basis in arrears.

I. **Litigation Trustee as Successor in Interest to the Debtor**. The Litigation Trustee is the successor in interest to the Debtor, and thus, after the Effective Date, to the extent this Plan requires an action by the Debtor, the action shall be taken by the Litigation Trustee. For federal and applicable state income tax purposes, all parties (including, without limitation, the Debtor, the Litigation Trustee, and the Beneficiaries of the Litigation Trust Estate) shall treat the transfer of Assets to the Litigation Trust as a sale by the Debtor of such Assets to the Litigation Trust Estate at a selling price equal to the fair market value of such Assets on the Effective Date. The Litigation Trust shall be treated as the owner of all Assets that it holds.

J. **Termination of the Litigation Trust Estate**. The existence of the Litigation Trust and the authority of the Litigation Trustee will commence as of the Effective Date and will remain and continue in full force and effect until the earlier of (a) the date on which all of the Assets are liquidated in accordance with the Plan, the funds in the Litigation Trust have been completely distributed in accordance with the Plan, all tax returns and any other filings or reports have been filed with the appropriate state or federal regulatory authorities and the Order closing the Chapter 11 Case is a Final Order; or (b) seven (7) years after the date of creation of the Litigation Trust, unless extended by the Bankruptcy Court as provided in the Litigation Trust Agreement.

At such time as the Litigation Trust has been fully administered (*i.e.*, when all things requiring action by the Litigation Trustee have been done, and the Plan has been substantially consummated) and in all events within sixty (60) days after the Final Distribution Date, the Litigation Trustee will file an application for approval of his final report and the entry of the final decree by the Bankruptcy Court.

K. The Debtor or Litigation Trustee, as appropriate, will execute and deliver all documentation to the Court and to all parties in interest who are entitled to receive the same as required by the terms of the Plan and the Code.

L. The Debtor or Litigation Trustee, as appropriate, shall take such other action as necessary to satisfy the other terms and requirements of the Plan and the Code.

M. Default. If not otherwise specified within each class treatment, the Litigation Trustee shall have thirty (30) days to cure any payment default upon written notice from the creditor to the Litigation Trustee.

N. Confirmation of the Plan shall constitute a finding that the Debtor (or Litigation Trustee, as appropriate) does not waive, release or discharge, but rather retains and reserves any and all pre-petition claims and any and all post-petition claims that it could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and ,any and all violations arising out of rights or claims provided for by Title 11 of the United States Code, by the Federal Rules of Bankruptcy Procedure, or by the Local Rules of this Court, including all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to 11 U.S.C. §§ 545, 546, 547, 548, 549 and 550, except to the extent such avoidance actions, preference actions, or other actions were assigned to a creditor(s) as part of this Plan. Further, the Litigation Trustee shall have the right to assert and pursue all claims under 11 U.S.C. § 542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

O. Administrative claims unpaid on the Effective Date will be paid from funds on hand, from Liquidation Proceeds or as the parties may otherwise agree.

P. All objections to claims, fee applications and adversary proceedings will be filed with the Court within ninety (90) days of the Effective Date; provided however, that the Litigation Trustee shall retain the right to object or otherwise pursue any claims against secured creditors relating to the payoff and/or satisfaction of their secured claims. Further, no professional shall be required to seek Court approval for fees incurred following the entry of the Order Confirming Plan.

Q. Injunction. From and after the Confirmation Date, in accordance with Section 1141 of the Bankruptcy Code, all holders of "Claims" (including, without limitation, Secured Claims, Priority Claims, General Unsecured Claims, and Claims on account of asserted Interests) against the Debtor and the Debtor in Possession are permanently restrained and enjoined (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Debtor (or Litigation Trustee, as appropriate), its officers, directors, employees, and agents, (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Purchaser, the Debtor (or Litigation Trustee, as appropriate) and its officers, directors, employees, and agents, or the Assets, (c) from creating, perfecting, or enforcing any encumbrance of any kind against the Debtor (or Litigation Trustee, as appropriate) and its officers, directors, employees, and agents, or the Assets, (d) from

asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor, and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; provided, however, that each holder of a contested Claim may continue to prosecute its proof of Claim in accordance with the Plan and all holders of Clams shall be entitled to enforce their rights under the Plan.

R. Revocation of Plan. The Debtor has reserved the right to revoke and withdraw the Plan before the entry of the Confirmation order. If the Debtor revokes or withdraws the Plan, or if confirmation of the Plan does not occur, then, with respect to the Debtor, the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor, as the case may be, or any other Person or to prejudice in any manner the rights of such Debtor, as the case may be, or Person in any further proceedings involving such Debtor.

S. Authority of the Debtor. The Debtor, consistent with the direction of its voting board members, shall have the authority to implement any term or provisions of the Plan. To the extent that any right is granted to the Debtor under the Plan, then the Debtor shall have authority for so long as the corporation is in existence to carry out any and all acts necessary to fulfill the terms of the Plan. Any authority granted to the Debtor-in-Possession pursuant to the Plan, shall be construed as authority granted to the Debtor.

T. Exemption from stamp tax or transfer tax. Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under the Plan, the creation of any mortgage, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, deeds, or bills of sale or assignments of personal property executed in connection with any of the transactions contemplated under the Plan, will not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax. All sale transactions consummated by the Debtor and approved by the Bankruptcy Court on and after the Petition Date through and including the Effective Date, including, without limitation, the sale by the Debtor of owned property pursuant to Section 363(f) of the Bankruptcy Code and the assumption, assignment and sale by the Debtor of unexpired leases of non-residential property pursuant to Section 365(a) of the Bankruptcy Code, will be deemed to have been made under, in furtherance of, or in connection with the Plan and, thus, will not be subject to any stamp, real estate transfer, mortgage recording or other similar tax. In addition, each of the relevant state or local governmental officials or agents will forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment consistent with the applicable provisions of this Plan.

U. Except as expressly stated in the Plan, or allowed by a Final Order of the Court, no interest, penalty, or late charge shall be allowed on any claim subsequent to the Petition Date, unless otherwise required by the Code. No attorney’s fees or expenses shall be paid with respect to any claim except as specified herein or as allowed by a final Order of the Court.

V. Unclaimed Property. If any distribution remains unclaimed for a period of ninety (90) days after it has been delivered, or attempted to be delivered, such unclaimed property shall be forfeited by such holder of the claim and the Disbursing Agent as defined in the Plan shall not attempt to make any further distribution of such holder of the claim. Undistributed property shall be returned to the Debtor for further distribution in accordance with the Plan.

## VII. PRESERVATION OF CLAIMS AND AVOIDANCE ACTIONS

A. Preservation of Claims and Avoidance Actions Generally. Notwithstanding anything to the contrary in the Plan, the provisions of the Plan and/or Confirmation Order are not intended to have, and shall not have, any *res judicata* or collateral estoppel effect with respect to any Bankruptcy Causes of Action that the Debtor or Litigation Trustee may assert, regardless of whether and to what extent such Bankruptcy Causes of Action are specifically described in the Plan or any Disclosure Statement. Unless any Bankruptcy Causes of Action are expressly waived, relinquished, released, compromised, or settled in the Plan or by Final Order of the Court, all such Bankruptcy Causes of Action are expressly reserved and preserved for later adjudication and, therefore, no preclusion doctrine, including without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel, or laches shall apply to such Bankruptcy Causes of Action upon or after confirmation of the Plan. Furthermore, notwithstanding any provision or interpretation to the contrary, nothing in the Plan or Confirmation Order, including the entry thereof, shall be deemed to constitute a release, waiver, impediment, relinquishment, or bar, in whole or in part, of or to any recovery or any other claim, right, or cause of action possessed by the Debtor prior to the Effective Date. This shall include, without limitation, all pre-petition claims and any and all post-petition claims that the Debtor could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or claims provided for by the Bankruptcy Code, by the Bankruptcy Rules, or by the Local Rules of the Court, including all rights to assert and pursue any Bankruptcy Causes of Action. Finally, the Debtor retains (subject to transfer to the Litigation Trust as provided herein) all rights to assert and pursue all claims under 11 U.S.C. § 542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

B. Preservation of Avoided Transactions for the Benefit of the Estate. All transactions avoided or otherwise set aside pursuant to §§ 510(c), 544, 547, 548, and/or 549, if any, shall be preserved for the benefit of the estate pursuant to § 551 and applicable case law. All litigation costs, fees, and expenses incurred in litigating or collecting on such recoveries shall be treated as an Administrative Claim under Section III above.

C. Preservation of § 506(c) Claims. Notwithstanding confirmation of the Plan and the occurrence of the Effective Date, the Litigation Trustee shall have the right to seek recovery of the cost of maintaining and preserving any collateral or property.

## VIII. PROVISIONS GOVERNING DISTRIBUTIONS

A. Delivery of Distributions in General. Distributions to holders of Allowed claims shall be made: (i) at the addresses set forth in the proofs of claim filed by such holders; (ii) at the addresses set forth in any written notices of address change submitted to the Court or Attorney for the Debtor after the date on which any related proof of claim was filed; or, if the information described in clauses (i) or (ii) is not available, (iii) at the addresses reflected in the Debtor's schedules of liabilities.

B. Distribution Dates. It is the intent of this Plan that the distribution shall occur as early as practicable following the Effective Date, unless otherwise stated herein.

## IX. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Except as specified in the Plan or as otherwise set forth in separate Motions before this Court, all contracts which exist between the Debtor and any individual or entity, whether such contract be in writing or oral, which have not heretofore been rejected or otherwise approved by Orders of the Court are hereby specifically rejected. For avoidance of doubt, as of confirmation, the Debtor shall have no liability under any contracts between the Debtor and any third party.

## X. ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY AN IMPAIRED CLASS

A. Each Impaired Class Entitled to Vote Separately. Each impaired class of claims shall be entitled to have the holders of Claims therein vote separately as a class to accept or reject the Plan.

B. Acceptance by a Class of Creditors. Consistent with § 1126(c) of the Bankruptcy Code, and except as provided in § 1126(e) of the Bankruptcy Code, a class of claims shall have accepted the Plan if the Plan is accepted by holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the allowed claims of that class that have timely and properly voted to accept or reject the Plan.

C. Claimants Entitled to Vote. Holders of impaired claims shall be entitled to vote if:

(1) Such claim has been filed against the Debtor in a liquidated amount or has been listed on the Debtor's schedules other than as contingent, unliquidated or disputed, and as to which no proof of claim has been filed. The claim shall be allowed solely for the purpose of voting on the Plan in the amount in which such claim has been filed or listed on the Debtor's schedules.

(2) Such claim has been filed against the Debtor or listed on the Debtor's schedules and is the subject of an existing objection filed by the Debtor, and is temporarily allowed for voting purposes by order of the Court in accordance with

Bankruptcy Rule 3018.

(3) Such claim has been filed in an undetermined amount, in which case the creditor shall not be entitled to vote unless the Debtor and the holder of the claim agree on an amount for voting purposes or the Court enters an order setting the amount of the claim that the creditor may ballot.

(4) Any entity holding two or more duplicate claims shall be entitled to vote only one claim.

D. Confirmation Hearing. The Court will set a hearing on the confirmation of the Plan to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied.

E. Acceptances Necessary to Confirm the Plan. At the hearing of confirmation of the Plan, the Court shall determine, among other things, whether the Plan has been accepted by each impaired class. Under § 1126 of the Bankruptcy Code, an impaired class of Creditors is deemed to accept the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number vote to accept the Plan. Further, unless there is unanimous acceptance of the Plan by an impaired class, the Court must also determine that class members will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such class member would receive or retain if the Debtor were liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

F. Confirmation of Plan Without Necessary Acceptances. The Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all impaired Classes. In order to be confirmed without the requisite number of acceptances of each impaired class, the Court must find that at least one impaired class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to such impaired class. In the event that any class votes against the plan, the Debtor hereby requests and moves the Court under the provisions of this Plan outlined in Section IX herein, for confirmation pursuant to the "cramdown" provisions of §1129(b) of the Bankruptcy Code. In connection therewith, the Debtor shall be allowed to modify the proposed treatment of the allowed claims in any class that votes against the Plan consistent with §1129(b)(2).

## XI. "CRAMDOWN" FOR IMPAIRED CREDITORS NOT ACCEPTING THE PLAN

With respect to any class of creditors impaired but not accepting the Plan by the requisite majority in number or two-thirds in amount, the proponent of this Plan requests the Court to find that the Plan does not discriminate unfairly and is fair and equitable in respect to each class of claims or interests that are impaired under the Plan and that the Court confirm the Plan without such acceptances by the said impaired classes. The Debtor will also request that the Court establish a value for any assets, the value of which is in dispute between the Debtor and any secured creditor,

at a valuation hearing under Section 506 of the Bankruptcy Code, to be scheduled at the same time as the hearing on confirmation of the Plan.

## XII. EFFECT OF CONFIRMATION

A. Except as otherwise provided in the Plan, confirmation of the Plan vests all assets and property of the estate in the Reorganized Debtor.

B. Injunction. From and after the Confirmation Date, except as otherwise provided in Sections 1141(d)(3), the Plan, or the Confirmation Order, all holders of "Claims" (including without limitation Secured Claims, General Unsecured Claims, all Priority Claims and any other claim, equity interest, or other debt or liability) against the Debtor and the Debtor-in-Possession are permanently restrained and enjoined (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Debtor, (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Debtor, or the Debtor's assets, (c) from creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or the Debtor's assets, (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor, and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; provided, however, that each holder of a contested Claim may continue to prosecute its proof of Claim in accordance with the Plan and all holders of Claims shall be entitled to enforce their rights under the Plan. Notwithstanding the foregoing, except as otherwise expressly provided in the Plan, the Plan does not release or waive any claims the Debtor may have against any party in interest.

## XIII. APPLICATION OF PLAN PAYMENTS

All payments made by the Debtor or Litigation Trustee hereunder shall be applied as indicated in the respective treatment for each creditor, or if no such application of payments is specified, then payments shall be applied to principal and interest on a monthly basis according to the amortization schedule proposed for each creditor. In the event that a creditor is entitled to costs and/or attorney's fees post-petition under § 506(b) of the Bankruptcy Code, such creditor must file an application in accordance with the Bankruptcy Code and/or Bankruptcy Rules pertaining to approval of costs and/or attorney fees prior to such costs and/or attorney's fees becoming part of the creditor's allowed claim. Confirmation of the Plan shall impose an affirmative duty and legal obligation on the holders and/or the servicers of any claims secured by liens, mortgages and/or deeds of trust to apply payments in the manner set forth in the Plan in accordance with § 524(i).

## XIV. RETENTION OF JURISDICTION

The Court shall retain jurisdiction of these proceedings pursuant to and for the purposes of Sections 105(a) and 1127 of the Code and for, without limitation, the following purposes, inter alia:

1. to determine any and all objections to the allowance of claims and/or interests;

2. to determine any and all applications for allowance of compensation for periods prior to the Confirmation Date;

3. to determine any and all applications pending on the Confirmation Date for the rejection and disaffirmance or assumption or assignment of executory contracts and the allowance of any claim resulting therefrom;

4. to determine all controversies and disputes arising under or in connection with the Plan and the Sale Motion;

5. to determine all applications, adversary proceedings and litigated matters pending on the Confirmation Date;

6. to effectuate payments under, and performance of, the provisions of the Plan, including, but not limited to, future sales of personal and/or real property retained by the estate;

7. to determine such other matters and for such other purposes as may be provided for in the Confirmation Order;

8. to determine all disputes regarding property of the estate;

9. to establish and adjust procedures for the orderly administration of the estate;

10. to determine matters that are subject to proceedings duly removed to the Court; and

11. to replace the Debtor-in-Possession with a Trustee for good cause shown.

## XV. MISCELLANEOUS PROVISIONS

A. Survival of Terms. The covenants, representations and agreements made in this Plan shall survive the Confirmation Date and the transactions contemplated herein.

B. Severability. If any provision of this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

C. Captions. The headings and captions contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

D. Successors Bound. This Plan shall on the Consummation Date be binding upon and inure to the benefit of the respective heirs, successors and assigns of the Debtor, and the holders of claims and interests.

E. Controlling Law. This Plan shall be read and construed and take effect in all respects in accordance with the law as set forth in the United States Bankruptcy Code and the Rules promulgated thereunder.

F. Further Assurance. If at any time, the Debtor shall consider, or be advised, that any further releases, assurances or documents are reasonably necessary or desirable to carry out the provisions hereof, and the transactions contemplated herein, the holders of claims and the holders of interest shall, upon reasonable request, execute and deliver any and all documents and assurances, and do all things necessary or appropriate to carry out fully the provisions hereof.

(this space intentionally left blank)

Respectfully submitted, this the 31st day of August, 2026.

**HENDREN, REDWINE & MALONE, PLLC**

s/ Rebeca Redwine Grow
Jason L. Hendren (NC State Bar No. 26869)
Rebecca Redwine Grow (NC State Bar No. 37012)
Benjamin E.F.B. Waller (NC State Bar No. 27680)
Lydia C. Carpenter (NC State Bar No. 56697
4600 Marriott Drive, Suite 150
Raleigh, NC 27612
Telephone: (919) 573-1422
Facsimile: (919) 420-0475
Email: jhendren@hendrenmalone.com
rredwine@hendrenmalone.com
bwaller@hendrenmalone.com
lcarpenter@hendrenmalone.com
*Counsel for the Debtor*

**CHARLES & COLVARD, LTD.**

s/Michael Levin

Michael Levin, Board Chair

CERTIFICATE OF SERVICE

I, Rebecca Redwine Grow, of 4600 Marriott Drive, Suite 150, Raleigh, North Carolina 27612, hereby certify:

That I am, and at all times hereinafter mentioned was, more than eighteen (18) years of age;

That on the this day I served copies of the foregoing document on the parties listed below, either electronically or by depositing a copy of the same in the United States mail bearing sufficient postage.

I certify under penalty of perjury that the foregoing is true and correct.

This the 31st day of August, 2026.

**HENDREN, REDWINE & MALONE, PLLC**

s/ Rebeca Redwine Grow
Jason L. Hendren (NC State Bar No. 26869)
Rebecca Redwine Grow (NC State Bar No. 37012)
Benjamin E.F.B. Waller (NC State Bar No. 27680)
Lydia C. Carpenter (NC State Bar No. 56697
4600 Marriott Drive, Suite 150
Raleigh, NC 27612
Telephone: (919) 573-1422
Facsimile: (919) 420-0475
Email: jhendren@hendrenmalone.com
rredwine@hendrenmalone.com
bwaller@hendrenmalone.com
lcarpenter@hendrenmalone.com
*Counsel for the Debtor*

TO:

Brian Behr **(via CM/ECF)**
Office of the Bankruptcy Administrator

Charles & Colvard, Ltd.
170 Southport Drive
Morrisville, NC 27560